IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| YOUNG ADVOCATES FOR FAIR EDUCATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| | ) | **Complaint for a Civil Case** |
| ANDREW CUOMO, in his official capacity as Governor of the State of New York, | ) | Case No. 18 CV 4167 |
| BETTY ROSA, in her official capacity as Chancellor of the Board of Regents of the State of New York, | | Jury Trial Demanded |
| MARYELLEN ELIA, in her official capacity as Commissioner of the New York State Education Department, | | |
| Defendants. | | |

Plaintiff Young Advocates for Fair Education ("YAFFED"), as and for their Complaint against Defendants Andrew Cuomo, Betty Rosa, and MaryEllen Elia in their capacity as New York State officials who administer the New York State educational system, (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      On April 12, 2018, New York Governor Andrew Cuomo signed into law a budget that included an amendment to New York Education Law, Section 3204, section 2 that created a carve-out for the benefit of certain ultra-Orthodox Jewish non-public schools, giving them special treatment under the law (the "Felder Amendment").  The text of the Felder Amendment, Part SSS of N.Y. Senate Bill S7509C (Mar. 30, 2018) is attached as Exhibit 1.

2.      New York State Education Law, Section 3204, mandates that children in non-public schools receive instruction that is "substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  This statute requires these non-public schools to meet certain minimum educational standards and applies to non-public religious schools as well as independent secular schools.

3.      The Felder Amendment creates a dual oversight regime to determine whether a non-public school provides a "substantially equivalent" education for the nearly 1,700 non-public schools in New York:  one set of considerations applying to ultra-Orthodox Jewish schools—known as yeshivas and sometimes referred to as *mosdos*—as determined by the New York State Education Department ("NYSED") Commissioner; and another set of considerations for all other non-public schools, including independent schools and other religious schools, as determined by local school districts and boards.

4.      Upon information and belief, many of the nearly 115,000 children who are currently educated in ultra-Orthodox Jewish non-public schools in New York State attend schools that do not provide sufficient instruction in secular subjects as required by the law.

5.      Plaintiff YAFFED was formed in 2012 with a mission to ensure that all students receive the critical tools and skill sets needed for long-term personal growth and self-sufficient futures.   It has been pressing New York City Department of Education ("NYCDoE") and NYSED to enforce the standards in Section 3204 for ultra-Orthodox non-public schools in New York.

6.      As a result of YAFFED's work, NYCDoE announced in July 2015 that it would investigate a number of yeshivas in New York City identified by YAFFED as not meeting state standards.   On information and belief that investigation is ongoing, although the NYCDoE has yet to release any information or report of its investigation.   YAFFED continues to press for information to be released regarding NYCDoE's investigation.

7.      On information and belief, as recently as December 2017, NYSED has been revising the existing guidelines for determining substantial equivalency under the Education Law to clarify how the substantial equivalence requirement should be enforced by local school districts.

8.      The Felder Amendment describes the schools that fall within the newly created carve-out in very specific terms:   non-profit schools with a bi-lingual education program that extends from 9:00 a.m. until 4:00 p.m. for grades 1 through 3; until 5:30 p.m. for grades 4 through 8; and until 6:00 p.m. for high school.   The requirements for high school only extend to programs established for children who have graduated from a middle school that meets this

criteria, i.e., elementary-school yeshiva graduates.  Upon information and belief, only ultra-Orthodox Jewish schools, including Hasidic yeshivas, meet this criteria.

9.      Furthermore, the new standards created by the carve-out in the Felder Amendment are vague and impose new considerations only for ultra-Orthodox non-public schools that appear substantially relaxed as compared to the guidelines issued by NYSED for all non-public schools.

10.     Guidelines issued or used by relevant governmental agencies, such as NYSED or NYCDoE, based on Section 3204 as amended will require additional and different advocacy, strategies, and methods by YAFFED to combat the relaxed standards now recited in the Felder Amendment.

11.     The Felder Amendment is the brain child of State Senator Simcha Felder, a New York State Senator for the 17th District,[1] and certain ultra-Orthodox Jewish community leaders who oppose oversight, including Grand Rabbi Aaron Teitelbaum, the chief rabbi and spiritual leader of the Satmar ultra-Orthodox community in Kiryas Joel, New York.  Upon information and belief, Rabbi Teitelbaum has been and is the chief authority in ultra-Orthodox parochial schools in Kiryas Joel.  Rather than go through the normal legislative process, the Felder Amendment is the result of a deliberately timed plan to hijack the negotiations for the New York state budget at the end of March 2018 and maximize the leverage held by Senator Felder as a critical vote in order for the Republicans in the New York Senate to pass the budget.

12.     On information and belief, there is no secular legislative purpose for the Felder Amendment and its principal effect promotes the religious beliefs of the ultra-Orthodox Jewish community with respect to education.  On information and belief, the intent of this amendment

---

[1] The 17th Senate District encompasses the Brooklyn neighborhoods of Midwood, Flatbush, Borough Park, Kensington, Sunset Park, Madison, and Bensonhurst.

was to inoculate the ultra-Orthodox Jewish non-public schools from scrutiny.  On information and belief, the Felder Amendment was written such that only ultra-Orthodox Jewish non-public schools fit the recited criteria for this carve-out.

13.     Certain influential leaders of the New York ultra-Orthodox community have admitted in the press that the purpose of this amendment is to expressly carve out and benefit these ultra-Orthodox Jewish non-public schools.

14.     On information and belief, legislators have confirmed in public statements the purpose of the Amendment, including John Flanagan, the Majority Leader in the New York State Senate, who has stated that Section 3204, as amended, benefits yeshivas; and Senator Felder, who has stated that his intent was to have the law benefit these yeshivas.

15.     The Felder Amendment, if allowed to stand, frustrates the mission of YAFFED, which is to ensure that all students within the ultra-Orthodox community receive the critical tools and skill sets needed for long-term personal growth and self-sufficient futures.  For example, on information and belief, the state and local agencies tasked with enforcing Section 3204 will pause, halt, or abandon their investigations because of this Amendment.  Upon information and belief, state and local agencies will need time to evaluate whether schools they investigate are covered by the carve-out and the question of who can determine whether yeshivas within the State are providing substantially equivalent instruction.  And even if the NYSED were to issue revised guidelines, its guidelines will either take into account the new standards prescribed by the Felder Amendment, or, if not, will be subject to challenge based on the Felder Amendment.

16.     The Felder Amendment violates the Establishment Clause of the first amendment to the U.S. Constitution.

17.     YAFFED seeks a declaration that the Felder Amendment is unconstitutional and an injunction preventing Defendants Cuomo, Rosa, and Elia, in their official capacity as Governor of New York, Chancellor of the New York State Board of Regents ("Board of Regents"), and NYSED Commissioner, from taking actions consistent with the Felder Amendment and to maintain the *status quo*.

## PARTIES

18.     Plaintiff YAFFED is a nonprofit organization based in New York City, New York, with offices at 25 West 45 Street, New York, New York.  YAFFED is an advocacy group committed to improving educational curricula within ultra-Orthodox schools.  YAFFED believes that every child is entitled to a fair and equitable education that is in compliance with the law.  YAFFED's mission is to ensure that all students receive the critical tools and skillsets needed for long-term personal growth and self-sufficient futures.

19.     YAFFED's work involves raising awareness about the importance of general studies education and encouraging elected officials, state and local agency officials, and the leadership of the ultra-Orthodox world to act responsibly in preparing their youth for economic sufficiency and for broad access to the resources of the modern world.  YAFFED encourages compliance with relevant state guidelines for education while maintaining respect for the primacy of Judaic studies and the unique cultural and religious values of the ultra-Orthodox community.

20.     The State of New York (the "State") is responsible for the operation, financing, and administration of the New York State public school system.  Defendant Andrew Cuomo is the Governor of the State of New York and has among his responsibilities the presentation of budget bills for consideration by the New York legislature and signing laws, as well as the

enforcement of existing law.  Plaintiff brings this action against Governor Cuomo in his official capacity.

21.     The Board of Regents is a governmental agency responsible for determining the educational policies of the State of New York and establishing "rules for carrying into effect the laws and policies of the state, relating to education."  N.Y. Educ. Law § 207.  The Board of Regents serves as the head of NYSED and must appoint a Commissioner of Education to be the chief administrative officer of the department.  N.Y. Const. art. V, § 4; *see also* N.Y. Educ. Law § 101.  The Board of Regents also has the power to remove the Commissioner.  N.Y. Const. art. V, § 4.  Defendant Betty A. Rosa is the Chancellor of the Board of Regents.  Chancellor Rosa is responsible for the general supervision of all educational activities within the state, including determining the educational policies of the state and carrying into effect the educational law and policies of the state.  *See* N.Y. Educ. Law § 207; N.Y. Educ. Dep't Bd. Of Regents (2015), http:www.regents.nysed.gov.  Chancellor Rosa also "may visit, examine into and inspect, any institution in the university and any school or institution under the educational supervision of the state, and may require, as often as desired, duly verified reports therefrom giving such information and in such form as the regents or the commissioner of education shall prescribe." N.Y. Educ. Law § 215.  Plaintiff brings this action against Chancellor Rosa in her official capacity.  She is located at the Board of Regents, State Education Building, 89 Washington Avenue, Room 110, Albany, New York 12234.

22.     The New York State Education Department ("NYSED") is a governmental agency responsible for the "general management and supervision of all public schools and all of the educational work of the state."  N.Y. Educ. Law § 101.  NYSED implements the policies of the Board of Regents under the direction of the Commissioner of Education.  NYSED is also

responsible for supervising New York state's nonpublic schools.  N.Y. Comp. Codes R. & Regs. tit. 8, § 100.2 (2016).   Defendant MaryEllen Elia is the New York State Commissioner of Education and President of the University of the State of New York.  As the chief executive of NYSED, Commissioner Elia is responsible for enforcing all "laws relating to the educational system of the state" and executing "all educational policies determined upon by the board of regents."  N.Y. Educ. Law § 305.  Commissioner Elia has the duty and power to supervise "the enforcement of part one of this article [Article 65]" which includes New York state education law section 3204.  *Id.* § 3234.  Commissioner Elia is also responsible for identifying failing and persistently failing New York schools.  N.Y. Comp. Codes R. & Regs. Tit. 8, § 100.19(b) (2016). Plaintiff brings this action against Commissioner Elia in her official capacity.  She is located at NYSED, State Education Building, 89 Washington Avenue, Room 110, Albany, New York 12234.

## JURISDICTION AND VENUE

23.   This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the U.S. Constitution and the laws of the United States.

24.   Jurisdiction is also proper over Plaintiff's claims under 28 U.S.C. §§ 2201-2202 because Plaintiff seeks a declaration that the Felder Amendment is unconstitutional, permitting Plaintiff to continue its mission without diverting resources to address the unconstitutional Felder Amendment.

25.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the judicial district.

**FACTUAL BACKGROUND**

A.     Education of Minors in New York

26.     The "Education Clause" in Article XI, section 1 of the New York State Constitution, provides that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated."  N.Y. Const. art. XI, § 1.  This provision is not a mere platitude or an abstract ambition that the State has no obligation to fulfill.  It is a mandate the State is constitutionally obligated to execute and accomplish for all New York children.  It ensures the availability of a "sound basic education" to all children in the State.  *Board Of Education v. Nyquist*, 57 N.Y.2d 27 (1982).  It is a "constitutional floor with respect to educational adequacy."  *Campaign for Fiscal Equity, Inc. v. State of New York*, 86 N.Y.2d 307 (1995).  In *Campaign for Fiscal Equity*, the N.Y. Court of Appeals upheld the basic rights of children to obtain "the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury."  *Id.* at 316.

27.     New York's Compulsory Education Law requires every child in the state between the ages of 6 and 16 attend school or receive home instruction.  Although it compels instruction, the law permits instruction in non-public schools, such as independent secular schools or religious schools.  N.Y. Educ. Law § 3205.  The requirements of the New York Compulsory Education Law apply regardless of where a child receives instruction, at a public school, non-public school or at home.

28.     Section 3204 of the New York Compulsory Education Law dictates the "Instruction Required" of all students, with Subsection 2 specifying the quality and language of instruction.  For example, it requires instruction by a competent teacher.  *Id.* § 3204(2).  It requires instruction using English and sets forth accommodations for bi-lingual instruction.  *Id.*

29.     Of particular relevance here, Section 3204 subsection 2 states in relevant part: "Instruction given to a minor elsewhere than at a public school ***shall be at least substantially equivalent to*** the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  *Id.* § 3204(2) (emphasis added).  The requirement of "substantial equivalence" recited in the law existed prior to the Felder Amendment and applied to all instruction "elsewhere than at a public school."  *Id.*

30.     NYSED has stated in its Guidelines for Determining Equivalency of Instruction in Nonpublic Schools[2] that:

> The object of the compulsory attendance law is to see that children are not left in ignorance, that they receive from some source the instruction that will prepare them for their place in society.  If a child attends a nonpublic school or is being educated at home, the board of education of the school district in which the child resides must be assured that the child is receiving instruction which is substantially equivalent to that provided in the public schools.  Thus, the board's responsibility is to the children living in the district; it has no direct authority over a nonpublic school.

31.     For public schools, the curriculum for grades one through eight must include instruction in the subject areas of arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene, physical training, the history of New York State, and science.  N.Y. Educ. Law § 3204(3).

32.     Beyond the first eight years, *i.e.*, in high school, academic instruction must include instruction in the English language and its use, civics, hygiene, physical training, and American history including the Declaration of Independence and the Constitution of the United States.  *Id.*

---

[2] Available online at http://www.p12.nysed.gov/nonpub/guidelinesequivofinstruction.html and excerpt attached as Exhibit 2.

33.     Public schools are also required to offer instruction in patriotism and citizenship and in certain historic documents.  N.Y. Educ. Law § 801(1)-(2).  Similar instruction is required in private schools.  *Id.*  "If such courses are not so established and maintained in a private school, attendance upon instruction in such school shall not be deemed substantially equivalent to instruction given to pupils in the public schools of the city or district in which such pupils reside." *Id.*

34.     The Education Law also requires instruction in health and hygiene but provides exceptions where instruction may conflict with religious beliefs.   N.Y. Educ. Law § 804, 3204(5).  No such exceptions exist for the instruction set forth in Section 3204(3).  Other areas of instruction required in public school include physical education, N.Y. Comp. Codes R. & Regs. tit. 8, § 135.4 (2015), fire and arson prevention, N.Y. Educ. Law § 808, highway safety and traffic regulations, N.Y. Educ. Law § 806(1).

35.     Upon information and belief, the Felder Amendment does not change any of the required instruction in public schools in the Compulsory Education Law.

B.      Education in Ultra-Orthodox Yeshivas in New York

36.     Orthodox Judaism is a general term for the most strictly traditional denominations of Judaism.  A sub-sect of Orthodox Judaism are the "haredim," who are Jews who continue to maintain traditional practices without regard to the modern world.  In this complaint, we will refer to haredim as "ultra-Orthodox."  The largest sub-group of haredim are known as Hasidim or Hasidic Jews.

37.     A large number of haredim reside in Brooklyn, in this district.  Another large number of Hasidic haredim reside in the village of Kiryas Joel, in Orange County, New York. As the U.S. Supreme Court described the community:

> The residents of Kiryas Joel are vigorously religious people who make few concessions to the modern world and go to great lengths to avoid assimilation into it. They interpret the Torah strictly; segregate the sexes outside the home; speak Yiddish as their primary language; eschew television, radio, and English-language publications; and dress in distinctive ways that include head coverings and special garments for boys and modest dresses for girls. Children are educated in private religious schools, most boys at the United Talmudic Academy where they receive a thorough grounding in the Torah and limited exposure to secular subjects, and most girls at Bais Rochel, an affiliated school with a curriculum designed to prepare girls for their roles as wives and mothers. *See generally* W. Kephart & W. Zellner, Extraordinary Groups (4th ed. 1991); I. Rubin, Satmar, An Island in the City (1972).

*Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 691 (1994).

38.     According to a report from the Avi Chai Foundation,[3] as of 2013, more than 52,000 children were enrolled in Hasidic schools in New York City. According to a 2011 report on the New York Jewish community by the UJA Federation of New York, approximately 94% of Hasidic residents in the eight counties in the New York City area (New York, Kings, Queens, Richmond, Bronx, Westchester, Nassau and Suffolk) live in Brooklyn. *See* Steven M. Cohen, et al*., Jewish Community Study of New York:  2011 Comprehensive Report*, UJA Federation of N.Y. (June 2012).[4] On information and belief, that population has been growing and continues to grow.

39.     Hasidic parents typically send their children to parochial non-public schools, where they can ensure their children's social and cultural interactions are consistent with ultra-Orthodox norms.

---

[3] *See* Marvin Schick, *A Census of Jewish Day Schools in the United States 2013-2014*, Avi Chai Foundation (October 2014), at 31, excerpts attached as Exhibit 3.

[4] Excerpts of the Report are attached as Exhibit 4 and the full report is available at http://www.jewishdatabank.org/Studies/downloadFile.cfm?FileID=2852.

40.     As of June 2018, there are 273 Orthodox yeshivas registered on the NYSED Directory of Non-public School Administrators.[5]   211 of these yeshivas are located in Kings County.

41.     Although non-public schools are required by state law to provide a substantially equivalent secular education, on information and belief, almost no secular education is provided at most Hasidic ultra-Orthodox Jewish non-public schools, particularly to male students.   The language of instruction is almost exclusively Yiddish, the same language the students speak at home, and sometimes includes some Hebrew and/or Aramaic texts.   From age 7 to age 12, on information and belief, the average Hasidic boy receives instruction in basic English reading, writing, and arithmetic, for at most 90 minutes a day (at the end of the school day), four days a week.   Often the period of time set aside for secular studies is treated as free time for restless students.   Textbooks are heavily censored, when they are used at all.   Teachers in Hasidic yeshivas are often unqualified to teach secular studies, as they barely know English themselves. Even English classes may be taught primarily in Yiddish.

42.     Once a male student in the Hasidic community enters high school, he typically spends twelve to fourteen hours a day receiving instruction only in Judaic studies, but receives no secular education in school.

43.     In a recent survey conducted by plaintiff of yeshiva graduates and parents of current students, including those who attended Hasidic yeshivas in New York City, not a single respondent said that their school provided instruction in every subject required by the state.   Only about 65% of elementary school aged children who attended Hasidic yeshivas in New York City reported having received some education in English reading, in English writing, or in arithmetic.

---

[5] The data is available at http://www.nysed.gov/admin/bedsdata.html.   The numbers reflect the number of entries with Institution Type 22 (Jewish-Orthodox).

Less than a quarter reported learning U.S. History, and only a few learned New York history. Very few Hasidic boys in the survey received instruction in science or geography.  None recalled any education in art or music.  Of the respondents who attended elementary-level yeshivas for boys in New York City, just over a quarter said they received no secular education at all in elementary school.  At the high school level, only a quarter of respondents said they received any secular education, which was typically optional and often discouraged by the school.  Thus a substantial majority of high school aged respondents received no secular education of any kind.

44.      These results are confirmed by anecdotal evidence from the community.  In a recent news article, three former students recounted the lack of education and the resulting struggles to catch up after high school.  In one case, the former student was also a parent of three children enrolled in ultra-Orthodox schools.  Yoel Falkowitz, a member of the Satmar ultra-Orthodox community in Monsey, New York states in the article that "I never heard the word 'algebra' until I was an adult.  I only know addition, subtraction, and multiplication."  He states that he had to teach himself reading and writing in English.  He states in the article that his son's experience at a yeshiva in Monsey is worse than his experience.  While he acknowledges that secular instruction at his son's school is provided for one hour, he complains that the yeshiva hires unqualified former students as teachers who "can't string a decent sentence together."[6]

45.      Notably, as discussed below, even Hasidic ultra-Orthodox community leaders have conceded that many Hasidic ultra-Orthodox Jewish yeshivas are not substantially equivalent to the required instruction in public schools under New York law as it existed prior to the Felder Amendment.

---

[6] Doree Lewak, *These Taxpayer-Funded Jewish Schools Are Dooming Young Men to Poverty*, N.Y. Post (May 12, 2018), attached as Exhibit 5.

46.     The unavailability of adequate secular instruction for these students in certain Hasidic ultra-Orthodox Jewish yeshivas results in poor performance on New York standardized tests, known as Regents tests (to the extent tests are taken by these students).  Many of these schools do not administer Regents tests nor provide diplomas.  As a result, upon information and belief, graduates find it extremely challenging to pursue post-secondary education to attain the skills they need.

47.     This puts Hasidic families at high risk for poverty and reliance upon government assistance.  In a 2011 study on poverty published by the UJA-Federation of New York analyzing an eight-county New York area that includes New York City, approximately 45% of Hasidic households in New York were classified as poor and another 18% were classified as near poor. *See* Jacob B. Ukeles, et al., *Jewish Community Study of New York:  2011 Special Report on Poverty*, UJA Federation of N.Y. (revised ed. June 2013), at 47.[7]  The study noted "a very strong relationship between secular educational attainment and poverty" and that "[l]evels of educational attainment have decreased significantly for poor Jewish households since 2002," as of the report's issuance in 2011.  *Id.* at 38.  Upon information and belief, those levels have not improved since 2011.

48.     Upon information and belief, Hasidic communities in Brooklyn have a greater percentage of families receiving cash assistance, food stamps, public health care coverage, and Section 8 housing vouchers, as compared to Brooklyn and New York City as a whole.  Upon information and belief, the percentage of people in a heavily Hasidic district of Brooklyn utilizing public income support, such as cash assistance (TANF), Supplemental Security Income (SSI), and Medicaid, has increased in the last decade as the Hasidic population grew rapidly.

---

[7]     Excerpts of the Report are attached as Exhibit 6 and available at https://www.ujafedny.org/assets/785329.

49.     Upon information and belief, the Hasidic population in New York City is expected to continue to grow rapidly, with especially high growth among children and young people, so that by 2030 up to one-eighth of the city's schoolchildren, and up to one-third of Brooklyn's, may be Hasidic.

50.     Upon information and belief, yeshivas benefit from hundreds of millions of taxpayer dollars annually.   Upon information and belief, in addition to federal funds, state funding is provided to yeshivas through, among other programs, Academic Intervention Services (AIS), Nonpublic School Safety Equipment (NPSE), Mandated Services Aid (MSA), and the Comprehensive Attendance Program (CAP).   Upon information and belief, many if not most Hasidic ultra-Orthodox yeshivas in this District receive significant funding from the state-funded, city-run Child Care Block Grant Subsidy Program.

51.     The lack of secular education in Hasidic yeshivas has been public knowledge for decades.  In 1994, the *New York Times* published an article on Hasidic yeshiva Olohei Torah that pointed out that the school "spurns all secular studies for its 340 young men, ages 13 to 20," and "boys are expected to learn any science, mathematics or history on their own."[8]

C.     YAFFED's Work Prior to the Felder Amendment

52.     Over the past 6 years, YAFFED has zealously advocated for yeshiva students' right to education.  YAFFED's work includes advocacy aimed at both New York State and New York City officials, outreach efforts aimed at the Hasidic community, and education efforts aimed at raising awareness of the issue with the general public.

53.     For the first few years, YAFFED's advocacy efforts went ignored by NYSED and the NYCDoE.   YAFFED's attempts to reach out through direct contacts and letter writing in

---

[8] Joseph Berger, *So Far From the Brooklyn Bridge: Yeshiva Spurns the Secular World*, N.Y. Times, Mar. 6, 1994, at 33, 39, attached as Exhibit 7 and available at https://nyti.ms/2mfdMAf.

2013 and 2014 went unanswered.  In July 2015, however, YAFFED's advocacy began to bear fruit.  YAFFED that month publicly issued a letter to the NYCDoE and New York City Superintendents identifying 39 yeshivas that did not meet New York educational standards.  This letter, which was signed by 52 yeshiva graduates, parents, and teachers, urged an investigation into the quality of secular education at these schools and asked that the NYCDoE take steps to ensure that the students receive the education to which they are entitled.  Shortly afterward, according to public news reports, the NYCDoE confirmed that they would launch an investigation into those 39 yeshivas.[9]

54.     In December 2015, the NYCDoE doubled down on its promise.  At a meeting between NYCDoE officials and YAFFED, the NYCDoE stated that it would interview complainants and that a report on the investigation would be released in Spring 2016.  No such report was issued in Spring 2016, prompting YAFFED to hold a press conference on the steps of New York City Hall, to educate the public on the City's efforts to stall and avoid an investigation.[10]

---

[9] *See* Amy Sara Clark, *NYC to Investigate 39 Yeshivas*, New York Jewish Week (July 29, 2015), http://jewishweek.timesofisrael.com/nyc-to-investigate-39-yeshivas/; Sam Sokol, *New York to Investigate Haredi Schools for Lack of Secular Studies*, Jerusalem Post (July 29, 2015), https://www.jpost.com/Diaspora/New-York-to-investigate-haredi-schools-for-lack-of-secular-studies-410505; Simone Wilson, *NYC Investigating 40 Ultra-Orthodox Schools in  Brooklyn*, Windsor Terrace Patch (July 29, 2015), https://patch.com/new-york/windsorterrace/nyc-investigating-40-ultra-orthodox-schools-brooklyn, collectively attached as Exhibit 8.

[10] *See* Kate Taylor, *Group Says Politics Are Stalling New York City's Inquiry of Yeshivas*, N.Y. Times (April 6, 2016), https://www.nytimes.com/2016/04/07/nyregion/group-says-politics-are-stalling-new-york-citys-inquiry-of-yeshivas.html; John V. Santore, *Advocates for Brooklyn Yeshiva Reform Threaten to Sue Mayor*, Williamsburg Patch (April 7, 2016), https://patch.com/new-york/williamsburg/advocates-brooklyn-yeshiva-reform-threaten-sue-mayor, collectively attached as Exhibit 9.  *See also* Ben Chapman, *Progressive Jewish Group Slams City Education Department Over Lack of Secular-Study Enforcement at Yeshivas*, N.Y. Daily News (Apr. 8, 2016),  http://www.nydailynews.com/new-york/education/jewish-group-blasts-ed-dept-yeshiva-secular-study-probe-article-1.2593486…

55.     In response to this, and other press conferences, public statements, and reports issued by YAFFED, the NYCDoE regularly issued public statements that it was investigating the yeshivas with a report forthcoming.  No report was ever issued however, and according to news reports, in the three years since the initiation of the investigation, fewer than half of the yeshivas included in YAFFED's July 2015 letter were visited by NYCDoE investigators.

56.     YAFFED's advocacy extended beyond New York City; YAFFED has also educated State officials regarding the sub-standard secular education provided by ultra-Orthodox yeshivas and advocated for laws or regulations which would provide more tools for regulators to ensure that the yeshiva students were receiving a substantially equivalent education.  As noted by the Jewish news website *The Forward* in April 2016, YAFFED's advocacy efforts resulted in two bills filed in the New York State Legislature which "seek to give teeth to existing legislation that already requires nonpublic schools to teach subjects similar to those taught in public schools."[11]  The article further noted that Hasidic leaders opposed the bills, quoting Grand Rabbi Aaron Teitelbaum, the leader of the Satmar Hasidic sect based in Kiryas Joel, as stating that "If New York passes this proposed law, Lord have mercy over what will happen."

57.     Upon information and belief, YAFFED's advocacy also resulted in plans at NYSED in late 2017 to revise the state's guidelines to ensure that children in non-public schools receive a "substantially equivalent" education.  Upon information and belief, Elia and Rosa organized this effort to revise the guidelines in part due to YAFFED's work educating state officials regarding the failure of the ultra-Orthodox yeshivas to provide a substantially equivalent education.  Rosa reportedly acknowledged that "[s]ome of the [yeshivas] do fall in the category

---

[11] *See* Josh Nathan-Kazis, *Satmar Rebbe Rails Against Secular Education Bill; Moderate Groups Stay Silent*, Forward (May 12, 2016), https://forward.com/news/340568/satmar-rebbe-rails-against-secular-education-bill-moderate-groups-stay-sile/, attached as Exhibit 10.

of not fulfilling that obligation" to provide a substantially equivalent secular education.[12] According to the press accounts, the chancellor of the Board of Regents, Defendant Betty Rosa, stated that she would like a draft ready in February 2018.

58.     In addition to advocating at the state and local government level, YAFFED works to reach out to both the Hasidic community and the public community to educate and serve as a source of information about the issue of non-compliant Hasidic yeshivas.  This education and community outreach work ranges from putting up billboards in the Hasidic community regarding the requirements that the yeshivas are supposed to—but do not—provide, to communicating regularly with members of the Hasidic community who are dissatisfied with the secular education that they received or that their children are currently receiving, to holding press conferences and releasing press statements about the failure of ultra-Orthodox yeshivas to provide a substantially equivalent education and the failure of the state and local governments to enforce its laws.

59.     YAFFED's most ambitious effort at educating the general public regarding non-compliant yeshivas was the September 2017 release of an 80-plus page report entitled *The State of Education in New York City's Hasidic Yeshivas*.[13]  This report sought to explain the problems present in ultra-Orthodox yeshivas in New York City and contained:  a primer on the Hasidic community; explanations of the New York law requiring the yeshivas to provide substantially equivalent education; information regarding the current state of education at the yeshivas and their lack of secular education; a summary of YAFFED's advocacy and the politics underlying the city and state's hesitance to enforce the law; and recommendations that YAFFED suggests

---

[12] *See* Leslie Brody, *New York State Revising Private Schools Guidelines*, Wall Street Journal (Dec. 17, 2017), https://www.wsj.com/articles/new-york-state-revising-private-schools-guidelines-1513546538.

[13]   Available at https://www.yaffed.org/report.

should be made going forward.  This report was widely reported on and served to further educate the general public.[14]

60.    YAFFED's many attempts at educating and advocating to fix sub-standard education at Hasidic yeshivas have been time consuming and costly.  From its founding in 2012 through April 2018, YAFFED has spent significant resources in furtherance of its advocacy efforts.

D.    The Effort to Exempt Ultra-Orthodox Jewish Yeshivas from Enforcement of Section 3204

61.    By 2018, upon information and belief, leaders within the ultra-Orthodox community in New York State, including Grand Rabbi Aaron Teitelbaum, who leads the Satmar Hasidic sect in Kiryas Joel and oversees the Hasidic yeshivas in Kiryas Joel as well as some Hasidic yeshivas in Brooklyn, grew more concerned that the state and city would soon begin actually overseeing ultra-Orthodox yeshivas, revealing that many are not offering a "substantially equivalent" education.  These efforts resulted ultimately in the unconstitutional Felder Amendment to Section 3204 of the Education Law.

62.    In an interview published in April 2018, after the Felder Amendment had passed, Rabbi Teitelbaum acknowledged the motivation behind efforts to amend Section 3204 and recounted the events leading to the passing of the Felder Amendment.  *See* Rabbi Ytzchak

---

[14] *See* Selim Algar, *De Blasio, DOE Are Ignoring Subpar Education at Yeshivas: Advocacy Group*, New York Post (Sept. 6, 2017), https://nypost.com/2017/09/06/de-blasio-doe-are-ignoring-subpar-education-at-yeshivas-advocacy-group/; Ben Chapman & Reuven Blau, *Yeshivas Are Breaking the Law by Skimping on English Instruction, Secular School Supporter Says*, N.Y. Daily News (Sept. 6, 2017), http://www.nydailynews.com/new-york/yeshivas-break-law-english-instruction-opponents-article-1.3474862; Kate Taylor, *Critics Say City Has Not Investigated Yeshivas, Breaking Pledge*, N.Y. Times (Sept. 6, 2017), https://www.nytimes.com/2017/09/06/nyregion/critics-say-city-has-not-investigated-yeshivas-breaking-pledge.html?_r=0; Leslie Brody, *Concerns Persist About Curriculum Standards at Orthodox Yeshivas*, Wall St. J. (Sept. 7, 2017, 6:36 PM), https://www.wsj.com/articles/concerns-persist-about-curricular-standards-at-orthodox-yeshivas-1504823785.

Frankfurter, *Securing Jewish Education:  A conversation with Satmar Rebbe Rav Aharon Teitelbaum, Shlita*, Ami Magazine, Apr. 11, 2018, at 66–79 (hereinafter "Ami"), attached as Exhibit 11.  Upon information and belief, Rabbi Teitelbaum has made similar statements in public speeches (in Yiddish).

63.    Rabbi Teitelbaum acknowledged that the ultra-Orthodox yeshivas in his community do not provide "substantially equivalent" education as required under Section 3204 as it existed prior to April 2018:

> "All of the *mevinim*[15] know the *gevaldike*[16] thing that took place over here for all of the *talmidim*[17] of every single *Talmud Torah*.[18]  In the past, every child violated the law, and if it would have ended up in court there wouldn't have been an answer as to why the law wasn't adhered to." [Ami at 69]

> "Eventually, the City sent out letters to 39 *mosdos* in New York City.  For those who got it, it was *choshech*.[19]  What could they do?  These letters meant investigations, and there's no way to lie or get around it either." [Ami at 74].

64.    Rabbi Teitelbaum also acknowledged that the efforts of NYSED to investigate complaints about instruction at the ultra-Orthodox yeshivas were causing distress within the community:

> "But then these people decided to take it higher and they went to the State.  The New York State Department of Education [sic] took their complaints very seriously and they started working on ways to force the *mosdos* to comply with the laws.  They were working on setting up an inspection system and a mechanism to make it work.  We were able to see that it was getting worse and worse." [Ami at 74.]

---

[15] On information and belief, "mevinim" is understood to mean "those in the know" or "experts" in Yiddish.

[16] On information and belief, "gevaldike" is understood to mean "amazing" in Yiddish.

[17] On information and belief, "talmidim" is understood to mean "students" in Hebrew.

[18] On information and belief, "Talmud Torah" is understood in Yiddish to mean ultra-Orthodox schools for boys who are high school age.  *Talmud Torah* are sometimes also referred to as *mosdos* or yeshiva.

[19] On information and belief, "*choshech*" is understood to mean "darkness" in Hebrew.

"It was very disconcerting, because the Education Department was expected to release its guidelines to the *Talmud Torahs* any day, declaring what they have to teach and what would happen if they wouldn't comply.  Every day that passed without it, I said, '*Baruch Hashem*,[20] another day passed.'  The *Eibershter*[21] helped and it was held up."  [Ami at 75.]

65.     Upon information and belief, the leaders within the ultra-Orthodox community who opposed oversight by the State determined that changing the law was the only way to avoid oversight, a path that they recognized was difficult under the normal legislative process.  Rabbi Teitelbaum acknowledged this in his interview:

"They knew that there was a way out—by passing a new law that will amend the existing law—but they didn't see how they could make that happen.  A law has to be submitted to the Assembly and to the Senate, it has to pass both chambers, and then it has to be signed by the governor.  In order for such a law to even begin the process of being voted on, it must first be passed by a committee in the Assembly, which is controlled by the Democrats, while the Senate is controlled by the Republicans.  The Democrats are liberals, and the liberal charge is that everyone must learn all of these subjects.

"Everyone said that any efforts to produce such a law would fail because it would never pass the committee.  They would leave it on the table and it would never get anywhere, because the Democrats would never allow such a law to pass.  It was a big problem.  In the Senate it would have a chance, but not in the Assembly." [Ami at 74.]

66.     Upon information and belief, community activists within the Hasidic ultra-Orthodox community, certain leaders of the community, and Felder planned to amend the law by circumventing the normal legislative process and having it passed as part of the state budget, which was required to be passed by April 1, 2018.  This was made possible because Felder, as a

---

[20] On information and belief, "*Baruch Hashem*" is understood to mean "Thank God" in Hebrew.

[21] On information and belief, "*Eibershter*" is understood to mean "the one above" and is a common reference to "God" in Yiddish.

Democrat who has caucused since 2012 with Republicans in a state Senate that is almost evenly split between the two parties, holds immense influence.[22]

67.     Rabbi Teitelbaum confirmed these facts:

"Then the idea came up to tie into the budget.  This was something that came up months ago."

"This was the Rebbe's idea?" [asked Rabbi Frankfurter.]

"No.  It was Reb Yaakov Sofer's idea.  The plan was to use the political situation for our benefit.  Reb Yaakov made a *cheshbon*[23] that the budget has to be passed by April 1, and it's of paramount importance to the governor to have it passed, because his prestige is at stake if it isn't passed on time.  Therefore, he told Simcha Felder that if he would block the budget, the governor would have to get involved, and then it would be possible to have the law changed for our benefit.

"I spoke to Simcha Felder then and I told him to keep it secret and wait until the last minute, because otherwise it would have to go through the Assembly and it wouldn't even make it past the committee stage, *v'sham tikaveir*.[24]  He managed to keep it secret from Chanukah-time, when we had this conversation, until now.  The Senate majority agreed to go along with it, because they were very willing to fight with the State Assembly."  [Ami at 74-75.]

68.     On January 18, 2018, Defendant Governor Andrew Cuomo submitted his Executive Budget to the New York state legislature, along with any related appropriation, revenue, and budget bills.  Part of the budget submitted that day was Budget Bill S7509.  That bill did not include any amendments to Section 3204 of the Education law.

69.     On February 16, 2018, an amended/substituted version of S7509 was submitted.  This amended/substituted bill did not include any amendments to Section 3204 of the Education

---

[22] Senator Felder is a registered Democrat who has caucused with Republicans, helping them maintain control of the Senate.  Currently in New York State, there are thirty-one Democratic senators and thirty-one Republican senators – making Senator Felder's vote a powerful swing vote.

[23] On information and belief, "*cheshbon*" is understood to mean "calculation" in Hebrew.

[24] On information and belief, "*v'sham tikaveir*" is understood to mean "and it would be buried there" in Hebrew.

law.  Likewise, a month later on March 13, 2018, another amended/substitution version of S7509 was submitted which again proposed no amendments to Section 3204 of the Education law.

70.    Instead of seeking revision of Section 3204 either through normal order or through earlier versions of S7509, on information and belief, Senator Felder waited until he knew that minimal discussion over his amendment could occur.  Knowing that the State's budget had to be passed by April 1, 2018, in the days leading up to the deadline, Senator Felder demanded the inclusion of an amendment to Section 3204 of the Education law into S7509.  Word soon spread that the budget was being held hostage.  As reported by Politico, Senator Felder "was pushing for yeshivas to be exempted from review by education officials" which caused "[b]udget negotiations [to] stumble" starting on March 26.[25]

71.    Upon information and belief, in an effort to solve the gridlock, Defendant Cuomo reached out to Senator Felder and, as a result, discussed with Rabbi Teitelbaum the potential amendment.[26]  Senator Felder's plan was ultimately successful.  Senate Budget bill S7509 was amended on March 30, 2018 to include part SSS, which reflected the Felder Amendment creating the carve-out for ultra-Orthodox Jewish yeshivas for determining substantial equivalence in instruction.  The Felder Amendment was not debated on the floor nor evaluated by the Finance Committee, nor provided to the public with an opportunity to comment.  Instead the Felder Amendment was included in the budget bill such that the legislature was forced to either accept the carve-out or reject wholesale the state's budget.

---

[25] *See* Eliza Shapiro, *Yeshivas in the Budget*, Politico (Mar. 28, 2018), https://www.politico.com/states/new-york/newsletters/politico-new-york-education/2018/03/28/yeshivas-in-the-budget-048427.

[26] *See* Zach Fink, *Departure Lounge*, State of Politics (Jul. 10, 2018, 1:54 PM), http://www.nystateofpolitics.com/2018/07/departure-lounge-2/, attached as Exhibit 12.

72.     Some members of the legislature expressed their displeasure with these tactics. Assemblymember Charles Barron noted that the "Yeshiva schools was a big issue that held up" the budget, arguing that "they should be held to the same standard as every other private school that's getting money from th[e] state no matter what one Senator says."[27]   Another Assemblymember, Deborah Glick, noted that the Felder Amendment would lead to a "less vigorous education for some students."[28]

73.     On March 30, 2018, the amended bill S7509C passed the Senate and was delivered to the Assembly where it was passed as assembly bill A9509C.  The Governor signed the budget bill on April 12, 2018, thereby enacting the Felder Amendment.

E.     The Felder Amendment to Section 3204

74.     The Felder Amendment added language to Section 3204 that defined "substantially equivalent" as it applied to certain non-public schools and charged the Commissioner of NYSED with enforcing Section 3204 for those schools.  A copy of the text of Part SSS of budget bill S7509C reflecting the Felder Amendment is attached to this complaint as Exhibit 1.[29]

75.     The Felder Amendment has three basic parts:

a) It adds criteria for substantial equivalence for certain schools for grades 1 through 8.  Educ. Law § 3204(2)(ii) (as amended April 12, 2018).

b) It adds criteria for substantial equivalence for certain high schools for students who have graduated from elementary schools covered by 3204(2)(ii).  Educ. Law § 3204(2)(iii) (as amended April 12, 2018).

---

[27] Videotape: New York State Assembly, March 30, 2018 Session Part 4, *available at* http://nystateassembly.granicus.com/MediaPlayer.php?view_id=7&clip_id=4655&meta_id=48701, at 21:30-21:50.

[28] *Id.* at 33:45-43:10.

[29] Available at https://www.nysenate.gov/legislation/bills/2017/s7509.

     c)  It provides the Commissioner with the authority to determine if schools meet subsection (ii) and (iii) as amended.  Educ. Law § 3204(2)(v).

76.     Under the Felder Amendment, subsection (ii) applies to non-public elementary and middle schools that are non-profit corporations, have a bi-lingual program, and have an education program that extends from 9:00 a.m. to no earlier than 4:00 p.m. for grades 1-3 and to no earlier than 5:30 p.m. for grades 4-8.  Upon information and belief, no non-public schools in New York state meet this description other than ultra-Orthodox Jewish elementary and middle school yeshivas.

77.     Under the Felder Amendment, NYSED's evaluation of "substantial equivalence" under Section 3204 of the non-public elementary and middle schools subject to subsection (ii) shall include consideration of:

> if the curriculum provides academically rigorous instruction that develops critical thinking skills in the school's students, taking into account the entirety of the curriculum, over the course of elementary and middle school, including
>
> instruction in ***English*** that will prepare pupils to read fiction and nonfiction text for information and to use that information to construct written essays that state a point of view or support an argument;
>
> instruction in ***mathematics*** that will prepare pupils to solve real world problems using both number sense and fluency with mathematical functions and operations;
>
> instruction in ***history*** by being able to interpret and analyze primary text to identify and explore important events in history, to construct written arguments using the supporting information they get from primary source material, demonstrate an understanding of the role of geography and economics in the actions of world civilizations, and an understanding of civics and the responsibilities of citizens in world communities; and
>
> instruction in ***science*** by learning how to gather, analyze and interpret observable data to make informed decisions and solve problems mathematically, using deductive and inductive reasoning to support a hypothesis, and how to differentiate between correlational and causal relationships.

Section 3204(2)(ii) (as amended) (emphasis and format added).

78.     Subsection (ii) of the Felder Amendment provides a more limited list of subjects for which instruction is considered to determine substantial equivalence, as compared to the current NYSED Guidelines, which also require instruction in spelling, music, health education, physical education, visual arts, practical arts, home and career skills, and library and information skills.

79.     Under the Felder Amendment, subsection (iii) applies to non-public high schools established for pupils who have graduated from schools that meet subsection (ii) that are non-profit corporations, have a bi-lingual program, and have an education program that extends from 9:00 a.m. to no earlier than 6:00 p.m.

80.     Upon information and belief, no non-public high schools in New York meet this description other than ultra-Orthodox Jewish yeshivas for high school.

81.     Under the Felder Amendment, evaluation of "substantial equivalence" under Section 3204 of the non-public high schools subject to subsection (iii) by NYSED shall consider: "if the curriculum provides academically rigorous instruction that develops critical thinking skills in the school's students, the outcomes of which, taking into account the entirety of the curriculum, result in a sound basic education."

82.     Notably, subsection (iii) does not require instruction in English or any subjects required by the current NYSED guidelines for substantial equivalence in non-public schools. Upon information and belief, subsection (iii) is intended to allow the use of instruction in Judaic studies during high school to help determine whether instruction is "substantially equivalent" even if the subject areas required for public schools are not taught.

83.     The Felder Amendment is unclear as to whether the enumerated subjects and areas for consideration therein are intended to replace or supersede existing NYSED guidelines.

Upon information and belief, this lack of clarity will be used by those opposed to reform to argue that any guidelines or requirements of subjects other than those enumerated in the Felder Amendment need not be met.

84.    Leaders in the ultra-Orthodox Jewish communities in which these schools were established as well as legislators like Senator Felder and Senate Majority Leader John Flanagan[30] have all admitted in public statements that the Felder Amendment is meant to apply only to the specific parochial non-public ultra-Orthodox yeshivas.

85.    For example, Senator Flanagan sponsored a bill on June 11, 2018 that attempted to further amend Section 3204 to remove responsibility for oversight from the Commissioner and place it instead on a yet to be named accreditation agency.  *See* Senate Bill No. S8992 (June 11, 2018).[31]  In a statement issued the next day, Senator Flanagan described the proposed change ***to the language added by the Felder Amendment*** by making clear that the amended section expressly benefited yeshivas:

> In addition, we are protecting students whose parents are making a choice to send their children to a yeshiva.  We recognize that SED is not equipped to regulate these schools, and therefore we do not require them to do so, but we do ensure that SED maintains oversight of these schools.  And, to address concerns raised by some that there are no repercussions for noncompliance, we have added new transparency and accountability measures.

*See* Statement From Senate Majority Leader John J. Flanagan Regarding Education Issues (Jun. 12, 2018).[32]  The bill did not pass the Assembly and was not enacted.

---

[30] Senator Flanagan is a New York State Senator for the 2d Senate District, which includes the Town of Smithtown and portions of the Towns of Brookhaven and Huntington.  He is the Majority Leader and Temporary President of the New York Senate.

[31] Attached as Exhibit 13 and available at https://www.nysenate.gov/legislation/bills/2017/s8992.

[32] Attached as Exhibit 14 and available at https://www.nysenate.gov/newsroom/press-releases/john-j-flanagan/statement-senate-majority-leader-john-j-flanagan-regarding-2.

86.     The public commentary further establishes that the apparent purpose and effect of the Felder Amendment was to advance a specific religion.  For example, the *New York Jewish Week* wrote that "[t]he measure appears to be written specifically to lower the bar on curriculum requirements for chasidic yeshivas."[33]  Commentary in the *New York Sun* agreed that the Felder Amendment could "end[] the controversy over the private religious schools" and prevent yeshivas from being "pressured to change their curriculum."[34]  No less an authority than the *Yeshiva World News* wrote that the Felder Amendment "recognized the unique nature of a yeshiva education," and would prevent the government from taking action to enforce compliance with the "substantial equivalent" standard.[35]  Hasidicnews.com characterized the passage as coming just in time to protect yeshivas from YAFFED's "advocacy bearing fruit in the form of new regulations that were to be issued by the state," and said the Felder Amendment would allow New York City to "legally absolve itself from fielding any complaints relating to the inadequacy of parochial school curricula—something it has been itching to do for years so as not to alienate its large haredi constituency."[36]  A *USA Today* affiliate published an opinion article

---

[33] Amy Sara Clark, *Questions Over Felder's 'Yeshiva' Amendment*, New York Jewish Week (Apr. 3, 2018), http://jewishweek.timesofisrael.com/questions-over-felders-yeshiva-amendment/, attached as Exhibit 15.

[34] Seth Lipsky, *New York Compromise On Yeshiva Education Could Yet Be A Beacon*, New Yok Sun (April 12, 2018), https://www.nysun.com/new-york/new-york-compromise-on-yeshiva-education-could-be/90235/.

[35] Yeshiva World, *New N.Y. Budget Includes Historic Yeshiva Provision*(April 11, 2018), https://www.theyeshivaworld.com/news/general/1504727/new-n-y-budget-includes-historic-yeshiva-provision.html, attached as Exhibit 16.

[36] Jacob Gluck, *Haredim in New York Celebrate Legal Victory regarding their K-12 Curriculum*, Hasidicnews.com (April 5, 2018), http://hasidicnews.com/?p=948, attached as Exhibit 17.

noting that the law was "a thinly veiled attempt to shield only certain yeshivas from the current process."[37]

87.     As discussed above, shortly after the Felder Amendment passed, Rabbi Aaron Teitelbaum explained that Senator Felder should "block the budget, [and] the governor would have to get involved, and then it would be possible to have the law changed for our benefit." Ami at 74-75.

88.     Upon information and belief, the Felder Amendment is viewed as an endorsement by the state of the religious education choices made by ultra-Orthodox communities.   For example, upon information and belief, David Zweibel, the leader of Agaduth Israel, an Orthodox Jewish advocacy group that has taken a position against state oversight of ultra-Orthodox schools, stated in an interview, delivered in Yiddish, available on a telephone hotline called *Kol Mevaser*, (212) 444-1100, on or after April 2, 2018, just after the Passover holiday:[38]

> And the main thing is to understand that this is a battle for the Torah institutions across the entire state of New York, in Brooklyn, in Monsey, in Kiryas Joel, in the entire State of New York.  Which—I don't know the exact number—tens of thousands of children are educated in these institutions, and yeshivas.  And the situation is very serious.  We just hope that what Senator Felder has done, according to the instructions of the sages, and together with all the other activists, we hope that—we speak now of "Our Time of Freedom" [the Passover holiday], which is apropos of the world today, and we should remember that the night of Passover was a time that the law was changed of New York.  A new law was passed, which for the first time recognizes that the education we receive in yeshiva is a rigorous academic education, which sharpens the mind.  And a child that goes through the yeshiva system is a child that has had a good education.  We hope, with G-d's help, that this will at least be part of the salvation that we need.

---

[37] Ken Zebrowski, *'Yeshiva Clause' in New York Budget Plays Politics with Children's Education: Assemblyman*, Lohud (Apr. 9, 2018), https://www.lohud.com/story/opinion/contributors/2018/04/09/yeshiva-clause-new-york-budget/497084002/

[38] "Kol Mevaser" is understood in Yiddish to mean "the voice that reports/announces."  On information and belief, the telephone hotline is widely used to disseminate information to the interested public and in particular those in the Hasidic ultra-Orthodox Jewish community.

89. As such, the Felder Amendment has the effect of privileging a particular religion, specifically ultra-Orthodox groups such as the Hasidic sect, and subjecting schools of that particular religion to lower educational standards—unsurprisingly, given that the public statements and circumstances surrounding its passage demonstrate that privileging ultra-Orthodox Jewish yeshivas was the purpose of the Amendment.

90. Finally, the Felder Amendment's vague standard for high school requiring "academically rigorous instruction that develops critical thinking skills in the schools' students, the outcomes of which, taking into account the entirety of the curriculum, result in a sound basic education," will excessively entangle New York State and local governments with the religious decisions of these ultra-Orthodox Jewish yeshivas.

91. The Felder Amendment has and will impact YAFFED's advocacy, potentially rendering moot some of its work over the past six years. Upon information and belief, there is a significant risk that NYCDoE will delay, halt, or curb its investigation of yeshivas identified by YAFFED as failing because of the Felder Amendment. Upon information and belief, other investigations pursued by other local boards of education may also be delayed, halted, or curbed because of the Felder Amendment. Upon information and belief, NYSED's revised guidelines on substantial equivalence may be affected by the Felder Amendment.

92. The Felder Amendment has also significantly impaired YAFFED's work and forced YAFFED to shift valuable resources away from its traditional advocacy and education efforts. Instead of advocating that the state and city enforce the laws requiring a substantially equivalent education, YAFFED has had to focus now on advocating in opposition to the Felder Amendment and to have the Felder Amendment declared unconstitutional. Likewise, instead of educating the general public on how yeshivas do not provide a "substantially equivalent"

education as required under the law, YAFFED has had to shift some of its resources to informing the public about the Felder Amendment and the impact that it will have on the NYCDoE's oversight.

93.     YAFFED has devoted significant resources to combating the Felder Amendment.

## FIRST CAUSE OF ACTION

(For Declaratory Relief)

94.     Plaintiff incorporates by reference herein paragraphs 1-93.

95.     The Felder Amendment and Defendants' enforcement of the Felder Amendment violate the Establishment Clause of the First Amendment to the United States Constitution as applied to the States and their political subdivisions under the Fourteenth Amendment and by 42 U.S.C. § 1983.

96.     The Felder Amendment impermissibly aids religion and entangles the government with religion in violation of the Establishment Clause through the relaxation of educational standards for ultra-Orthodox Jewish non-public schools.

97.     As corroborated by the circumstances of and public statements surrounding its passage, the purpose of the Felder Amendment is non-secular and intended to benefit the ultra-Orthodox Jewish non-public schools by exempting only these schools from the state standards required of all other non-public schools.

98.     In addition, the Felder Amendment has the purpose and effect of privileging one religion over others and over secular entities.  Because the Felder Amendment language applies only to ultra-Orthodox Jewish non-public schools, Defendants, through the passage and enforcement of the Felder Amendment, have favored one type of religious school over schools based in other religions and over secular non-private schools.

32

99.     Finally, the Felder Amendment and Defendants' enforcement of the Felder Amendment excessively entangle the government with religion.  Because the Felder Amendment exempts only ultra-Orthodox Jewish non-public schools from the state standards and puts in place vague standards which will require significant government interpretation, the Felder Amendment requires specific supervision and interpretation of these standards only as applied to ultra-Orthodox Jewish non-public schools, resulting in excessive government entanglement. Consequently, the Felder Amendment will result in delayed investigations and frustrated oversight of only ultra-Orthodox Jewish non-public schools.

100.    An actual controversy exists between Plaintiff and Defendants regarding whether the Felder Amendment violates the Establishment Clause of the United States Constitution. Additionally, a declaratory judgment will serve a useful purpose in clarifying and settling the legal conflict at issue, and will provide relief from the uncertainty giving rise to this proceeding.

101.    Plaintiff has suffered and will continue to suffer immediate and irreparable harm if Defendants are permitted to continue enforcing the Felder Amendment.  It will be required to permanently shift focus of their advocacy and completely recreate their reform efforts.  There is no adequate remedy at law for redress of Defendants' Constitutional violations.

102.    Plaintiff is entitled to a declaration, pursuant to 28 U.S.C. § 2201 and in accordance with Federal Rules of Civil Procedure Rule 57, that the Felder Amendment violates the Establishment Clause of the United States Constitution, and an injunction, pursuant to Federal Rules of Civil Procedure Rule 65, preventing Defendants from enforcing the Felder Amendment.

### SECOND CAUSE OF ACTION

(For Injunctive Relief)

103.    Plaintiff incorporates by reference herein paragraphs 1-102.

33

104.     Prior to passage of the Felder Amendment, NYSED had been working and was set to release guidelines detailing methods for oversight of underperforming yeshivas.   On information and belief, NYSED has delayed release of those guidelines because of the Felder Amendment.   On information and belief, NYSED may either delay action indefinitely or issue guidelines that comport with Section 3204 as amended.

105.     Defendants' release of revised guidelines issued pursuant to an unconstitutional law will harm YAFFED, which has been required to expend time and money to lobby Defendants to enforce the law.   This harm is immediate, ongoing, and irreparable.

106.     Plaintiff is entitled to an injunction, pursuant to Federal Rules of Civil Procedure Rule 65, requiring Defendants to maintain the status quo prior to the Felder Amendment and perform its duties accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter an order:

a.     Declaring that the Felder Amendment violates the Establishment Clause of the United States Constitution;

b.     Enjoining Defendants, temporarily, preliminarily, and permanently, from enforcing or promulgating guidelines in compliance with the Felder Amendment;

c.     Ordering that Defendants enforce and promulgate guidelines pursuant to the previous version of NY Education Law Sec. 3204 which require all applicable non-public schools to provide a "substantially equivalent" education to all of their students;

d.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees; and

e.     Granting such other relief as the Court deems just and proper.

Dated:  July 23, 2018                    By: _____ /s/ Eric Hui-chieh Huang _____

                                         Eric Hui-chieh Huang
                                         Samuel C. Kitchens
                                         Thomas A. Bridges
                                         QUINN EMANUEL URQUHART
                                            & SULLIVAN, LLP
                                         51 Madison Avenue, 22nd Floor
                                         New York, New York 10010
                                         Tel: (212) 849-7000
                                         Fax: (212) 849-7100
                                         Email: erichuang@quinnemanuel.com

                                         *Pro-bono Counsel for Plaintiff Young Advocates*
                                         *for Fair Education ("YAFFED")*