# EXHIBIT 1

S T A T E   O F   N E W   Y O R K

_____

S. 7509--C                                                    A. 9509--C

S E N A T E - A S S E M B L Y

January 18, 2018
_____

IN SENATE -- A BUDGET BILL, submitted by the Governor pursuant to article seven of the Constitution -- read twice and ordered printed, and when printed to be committed to the Committee on Finance -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee

IN ASSEMBLY -- A BUDGET BILL, submitted by the Governor pursuant to article seven of the Constitution -- read once and referred to the Committee on Ways and Means -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee -- again reported from said committee with amendments, ordered reprinted as amended and recommitted to said committee -- again reported from said committee with amendments, ordered reprinted as amended and recommitted to said committee

AN ACT intentionally omitted (Part A); to amend the real property tax law, in relation to making the STAR income verification program mandatory; to amend the tax law, in relation to the calculation of income for basic STAR purposes; to repeal subparagraphs (v) and (vi) of paragraph (b) of subdivision 4, paragraphs (b) and (c) of subdivision 5 and paragraph (c) of subdivision 6 of section 425 of the real property tax law relating to the school tax relief (STAR) exemption; and to repeal section 171-o of the tax law relating to income verification for a city with a population of one million or more (Part B); intentionally omitted (Part C); intentionally omitted (Part D); to amend the general municipal law, the education law, the state finance law, the real property tax law and the tax law, in relation to making technical corrections to various statutes impacting property taxes; and to repeal subsection (bbb) of section 606 of the tax law, section 3-d of the general municipal law and section 2023-b of the education law, relating thereto (Part E); intentionally omitted (Part F); to amend the real property tax law, in relation to assessment ceilings; and to amend chapter 475 of the laws of 2013, amending the real property tax law relating to assessment ceilings for local public utility mass real property, in relation to the effectiveness thereof (Part G); to amend

EXPLANATION--Matter in ITALICS (underscored) is new; matter in brackets
                      [ ] is old law to be omitted.
                                                              LBD12674-08-8

S. 7509--C                              193                            A. 9509--C

```
 1  interfere with, restrain or coerce public employees in the  exercise  of
 2  the   rights   granted in section two hundred two, or to cause, or attempt
 3  to cause, a public employer to do so PROVIDED, HOWEVER, THAT AN EMPLOYEE
 4  ORGANIZATION  DOES NOT INTERFERE WITH, RESTRAIN OR COERCE PUBLIC EMPLOY-
 5  EES WHEN IT LIMITS ITS SERVICES TO AND REPRESENTATION OF NON-MEMBERS  IN
 6  ACCORDANCE WITH THIS SUBDIVISION; (b) to refuse to negotiate collective-
 7  ly  in good faith with a public employer, provided it is the duly recog-
 8  nized or certified representative of the employees of such employer;  or
 9  (c)  to breach its duty of fair representation to public employees under
10  this article. NOTWITHSTANDING ANY LAW, RULE OR REGULATION TO THE CONTRA-
11  RY, AN EMPLOYEE ORGANIZATION'S DUTY OF FAIR REPRESENTATION TO  A  PUBLIC
12  EMPLOYEE IT REPRESENTS BUT WHO IS NOT A MEMBER OF THE EMPLOYEE ORGANIZA-
13  TION  SHALL BE LIMITED TO THE NEGOTIATION OR ENFORCEMENT OF THE TERMS OF
14  AN AGREEMENT WITH THE PUBLIC EMPLOYER.  NO  PROVISION  OF  THIS  ARTICLE
15  SHALL BE CONSTRUED TO REQUIRE AN EMPLOYEE ORGANIZATION TO PROVIDE REPRE-
16  SENTATION  TO  A NON-MEMBER (I) DURING QUESTIONING BY THE EMPLOYER, (II)
17  IN STATUTORY OR ADMINISTRATIVE PROCEEDINGS OR TO  ENFORCE  STATUTORY  OR
18  REGULATORY  RIGHTS,  OR (III) IN ANY STAGE OF A GRIEVANCE, ARBITRATION OR
19  OTHER CONTRACTUAL PROCESS CONCERNING THE EVALUATION OR DISCIPLINE  OF  A
20  PUBLIC EMPLOYEE WHERE THE NON-MEMBER IS PERMITTED TO PROCEED WITHOUT THE
21  EMPLOYEE  ORGANIZATION  AND BE REPRESENTED BY HIS OR HER OWN ADVOCATE. NOR
22  SHALL  ANY  PROVISION  OF THIS ARTICLE PROHIBIT AN EMPLOYEE ORGANIZATION
23  FROM PROVIDING LEGAL,  ECONOMIC  OR  JOB-RELATED  SERVICES  OR  BENEFITS
24  BEYOND  THOSE  PROVIDED  IN THE AGREEMENT WITH A PUBLIC EMPLOYER ONLY TO
25  ITS MEMBERS.
26    S 5. Nothing in this act shall be construed  to  impede,  infringe  or
27  diminish  the  rights and benefits which accrue to an employee organiza-
28  tion through a bonafide collective bargaining agreement.
29    S 6. This act shall take effect immediately.

30                                  PART SSS

31    Section 1. Subdivision 2 of section 3204  of  the  education  law,  as
32  amended  by  chapter  827  of  the  laws  of 1982, is amended to read as
33  follows:
34    2. Quality and language of instruction;  text-books.  (I)  Instruction
35  may  be  given  only  by  a  competent  teacher.  In the teaching of the
36  subjects of instruction prescribed by this section, English shall be the
37  language  of  instruction,  and  text-books  used  shall  be  written  in
38  English,  except  that  for a period of three years, which period may be
39  extended by the commissioner with respect  to  individual  pupils,  upon
40  application  therefor by the appropriate school authorities, to a period
41  not in excess of six years, from  the  date  of  enrollment  in  school,
42  pupils  who,  by reason of foreign birth or ancestry have limited English
43  proficiency, shall be provided with instructional programs as  specified
44  in  subdivision two-a of this section and the regulations of the commis-
45  sioner. The purpose of providing such pupils with instruction  shall  be
46  to enable them to develop academically while achieving competence in the
47  English  language.  Instruction  given  to  a  minor elsewhere than at a
48  public school shall be at least substantially equivalent to the instruc-
49  tion given to minors of like age and attainments at the  public  schools
50  of the city or district where the minor resides.
51    (II)  FOR  PURPOSES OF CONSIDERING SUBSTANTIAL EQUIVALENCE PURSUANT TO
52  THIS SUBDIVISION FOR NONPUBLIC ELEMENTARY AND MIDDLE SCHOOLS  THAT  ARE:
53  (1) NON-PROFIT CORPORATIONS, (2) HAVE A BI-LINGUAL PROGRAM, AND (3) HAVE
54  AN  EDUCATIONAL  PROGRAM THAT EXTENDS FROM NO LATER THAN NINE A.M. UNTIL
```

```
 1  NO EARLIER THAN FOUR P.M. FOR GRADES ONE THROUGH THREE, AND  NO  EARLIER
 2  THAN  FIVE THIRTY P.M. FOR GRADES FOUR THROUGH EIGHT, ON THE MAJORITY OF
 3  WEEKDAYS, THE DEPARTMENT SHALL CONSIDER THE FOLLOWING, BUT  NOT  LIMITED
 4  TO:  IF  THE  CURRICULUM PROVIDES ACADEMICALLY RIGOROUS INSTRUCTION THAT
 5  DEVELOPS CRITICAL THINKING SKILLS IN THE SCHOOL'S STUDENTS, TAKING  INTO
 6  ACCOUNT  THE  ENTIRETY  OF THE CURRICULUM, OVER THE COURSE OF ELEMENTARY
 7  AND MIDDLE SCHOOL, INCLUDING INSTRUCTION IN ENGLISH  THAT  WILL  PREPARE
 8  PUPILS  TO  READ  FICTION AND NONFICTION TEXT FOR INFORMATION AND TO USE
 9  THAT INFORMATION TO CONSTRUCT WRITTEN ESSAYS THAT STATE A POINT OF  VIEW
10  OR  SUPPORT  AN  ARGUMENT;  INSTRUCTION IN MATHEMATICS THAT WILL PREPARE
11  PUPILS TO SOLVE REAL WORLD PROBLEMS USING BOTH NUMBER SENSE AND  FLUENCY
12  WITH  MATHEMATICAL  FUNCTIONS  AND OPERATIONS; INSTRUCTION IN HISTORY BY
13  BEING ABLE TO INTERPRET AND ANALYZE PRIMARY TEXT TO IDENTIFY AND EXPLORE
14  IMPORTANT EVENTS IN HISTORY, TO CONSTRUCT WRITTEN  ARGUMENTS  USING  THE
15  SUPPORTING  INFORMATION  THEY  GET  FROM PRIMARY SOURCE MATERIAL, DEMON-
16  STRATE AN UNDERSTATING OF THE ROLE OF GEOGRAPHY  AND  ECONOMICS  IN  THE
17  ACTIONS  OF  WORLD CIVILIZATIONS, AND AN UNDERSTANDING OF CIVICS AND THE
18  RESPONSIBILITIES OF CITIZENS IN WORLD COMMUNITIES;  AND  INSTRUCTION  IN
19  SCIENCE BY LEARNING HOW TO GATHER, ANALYZE AND INTERPRET OBSERVABLE DATA
20  TO  MAKE  INFORMED  DECISIONS  AND  SOLVE PROBLEMS MATHEMATICALLY, USING
21  DEDUCTIVE AND INDUCTIVE REASONING TO SUPPORT A HYPOTHESIS,  AND  HOW  TO
22  DIFFERENTIATE BETWEEN CORRELATIONAL AND CAUSAL RELATIONSHIPS.
23    (III)  FOR  PURPOSES  OF CONSIDERING SUBSTANTIAL EQUIVALENCE PURSUANT TO
24  THIS SUBDIVISION FOR NONPUBLIC HIGH SCHOOLS THAT:  (1)  ARE  ESTABLISHED
25  FOR  PUPILS  IN HIGH SCHOOL WHO HAVE GRADUATED FROM AN ELEMENTARY SCHOOL
26  THAT PROVIDES INSTRUCTION AS  DESCRIBED  IN  THIS  SECTION,  (2)  ARE  A
27  NON-PROFIT  CORPORATION,  (3) HAVE A BI-LINGUAL PROGRAM, AND (4) HAVE AN
28  EDUCATIONAL PROGRAM THAT EXTENDS FROM NO LATER THAN NINE A.M.  UNTIL  NO
29  EARLIER  THAN  SIX P.M. ON THE MAJORITY OF WEEKDAYS THE DEPARTMENT SHALL
30  CONSIDER THE FOLLOWING BUT NOT LIMITED TO: IF  THE  CURRICULUM  PROVIDES
31  ACADEMICALLY RIGOROUS INSTRUCTION THAT DEVELOPS CRITICAL THINKING SKILLS
32  IN THE SCHOOL'S STUDENTS, THE OUTCOMES OF WHICH, TAKING INTO ACCOUNT THE
33  ENTIRETY OF THE CURRICULUM, RESULT IN A SOUND BASIC EDUCATION.
34    (IV) NOTHING HEREIN SHALL BE CONSTRUED TO ENTITLE OR PERMIT ANY SCHOOL
35  TO  RECEIVE AN INCREASE IN MANDATED SERVICES AID PURSUANT TO 8 NYCRR 176
36  ON ACCOUNT OF PROVIDING A LONGER SCHOOL DAY.
37    (V) THE COMMISSIONER SHALL  BE  THE  ENTITY  THAT  DETERMINES  WHETHER
38  NONPUBLIC  ELEMENTARY  AND  SECONDARY SCHOOLS ARE IN COMPLIANCE WITH THE
39  ACADEMIC REQUIREMENTS SET FORTH IN PARAGRAPHS (II)  AND  (III)  OF  THIS
40  SUBDIVISION.
41    S 2. This act shall take effect immediately.

42                                  PART TTT

43                             Intentionally Omitted

44                                  PART UUU

45    Section  1.  Subdivision 3 of section 2825-f of the public health law,
46  as added by section 1 of part Q of a chapter of the laws of 2018  amend-
47  ing the public health law relating to the health care facility transfor-
48  mation  program,  as  proposed  in legislative bill numbers S.7507-C and
49  A.9507-C, is amended to read as follows:
50    3. Notwithstanding  section  one  hundred  sixty-three  of  the  state
51  finance  law or any inconsistent provision of law to the contrary, up to
52  [four hundred seventy-five] FIVE HUNDRED TWENTY-FIVE million dollars  of
```

```
 1  the funds appropriated for this program shall be awarded without a
 2  competitive bid or request for proposal process for grants to health
 3  care providers (hereafter "applicants"). Provided, however, that a mini-
 4  mum of: (a) sixty million dollars of total awarded funds shall be made
 5  to community-based health care providers, which for purposes of this
 6  section shall be defined as a diagnostic and treatment center licensed
 7  or granted an operating certificate under this article; a mental health
 8  clinic licensed or granted an operating certificate under article thir-
 9  ty-one of the mental hygiene law; a substance use disorder treatment
10  clinic licensed or granted an operating certificate under article thir-
11  ty-two of the mental hygiene law; a primary care provider; a clinic
12  licensed or granted an operating certificate under article sixteen of
13  the mental hygiene law; a home care provider certified or licensed
14  pursuant to article thirty-six of this chapter; or hospices licensed or
15  granted an operating certificate pursuant to article forty of this chap-
16  ter and (b) forty-five million dollars of the total awarded funds shall
17  be made to residential health care facilities.
18    S 2. This act shall take effect on the same date and in the same
19  manner as Part Q of a chapter of the laws of 2018, amending the public
20  health law relating to the health care facility transformation program,
21  as proposed in legislative bill numbers S.7507-C and A.9507-C, takes
22  effect.
23    S 2. Severability clause. If any clause, sentence, paragraph, subdivi-
24  sion, section or part of this act shall be adjudged by any court of
25  competent jurisdiction to be invalid, such judgment shall not affect,
26  impair, or invalidate the remainder thereof, but shall be confined in
27  its operation to the clause, sentence, paragraph, subdivision, section
28  or part thereof directly involved in the controversy in which such judg-
29  ment shall have been rendered. It is hereby declared to be the intent of
30  the legislature that this act would have been enacted even if such
31  invalid provisions had not been included herein.
32    S 3. This act shall take effect immediately, provided, however, that
33  the applicable effective date of Parts A through UUU of this act shall
34  be as specifically set forth in the last section of such Parts.
```