UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
YOUNG ADVOCATES FOR FAIR EDUCATION,   :
                                                                  :
                                       Plaintiff,    :            18-cv-04167 (ILG) (JO)
                                                                  :
            - against -                               :
                                                                  :
ANDREW CUOMO, in his official capacity, *et al.*,   :
                                                                  :
                                       Defendants.   :
-------------------------------------------------------------- X


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
# OF THEIR MOTION TO DISMISS


                                        BARBARA D. UNDERWOOD
                                        Attorney General State of New York
                                        28 Liberty Street
                                        New York, NY  10005

                                        *Attorney for Defendants*



Andrew Amer
  Special Litigation Counsel
Yan Fu
  Assistant Attorney General
      *of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 4

    A.    The Board of Regents and State Education Department ........................................... 4

    B.    Relevant Education Law Provisions ......................................................................... 5

    C.    YAFFED's Complaint ............................................................................................... 7

STANDARD OF REVIEW ..................................................................................................... 8

ARGUMENT ......................................................................................................................... 9

    I.    YAFFED LACKS STANDING TO BRING THIS ACTION BECAUSE IT HAS NOT SUFFERED ANY INJURY IN FACT ................................................................. 9

    II.    YAFFED'S CHALLENGE TO THE AMENDMENT IS NOT RIPE FOR ADJUDICATION BECAUSE SED HAS NOT YET ISSUED ITS REVISED GUIDELINES ........................................................................................................... 15

        A.    The Issue Raised By YAFFED Is Not Fit For Judicial Review ............................. 16

        B.    YAFFED Faces No Hardship Without Judicial Review ......................................... 18

    III.    IN ANY EVENT, THE GOVERNOR AND CHANCELLOR ARE NOT PROPER PARTIES BECAUSE THEY HAVE NO ENFORCEMENT ROLE UNDER THE AMENDMENT ......................................................................................................... 18

CONCLUSION .................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ...................................................................... 15, 16

*Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273 (E.D.N.Y. 2013) ........................................... 9

*Appeal of Brown*, 34 Ed. Dep't Rep. 33, Decision No. 13,225 (1994) ......................................... 5

*Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y. 2014) ................................................................ 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 9

*Atik v. Welch Foods, Inc.*, No. 15 CV 5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ................................................................................................................................ 9

*Beaulieu v. Vermont*, 807 F3d 481 (2d Cir. 2015) ...................................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 9

*Blackwelder v. Safnauer*, 689 F. Supp. 106, 122 (N.D.N.Y. 1988) ............................................. 5

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017) ...................................................................................................... 12

*Citizens Union of the City of New York, v. Attorney General of New York*, No. 16-CV-9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017) ....................................................... 19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................................ 10, 11, 15

*Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309 (2d Cir. 2009) ............................................... 8

*Doe v. Jindal*, No. 15-1283, 2015 WL 7300506 (E.D. La. Nov. 18, 2015) ................................. 20

*Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520 (S.D.N.Y. 2006) ........................................... 14

*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................................... 19

*Fed. Election Comm'n v. Cent. Long Island Reform Immediately Comm.*, 616 F.2d 45 (2d Cir. 1980) ...................................................................................................... 15

*Hans v. Louisiana*, 134 U.S. 1 (1890) ........................................................................................ 18

*In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367 (2d Cir. 2005) ................................... 19

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998) ........................................... 10

*Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326 (2d Cir. 1997) .............................................. 8

*Kelly v. New York State Civil Service Commission*, 632 F. App'x 17 (2d Cir. 2016) ........................................................................................................... 19

*Kentucky v. Graham*, 473 U.S. 159 (1985) ................................................................... 19

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ..................................... 10, 15

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155 (2d Cir. 1984) ................................................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 9, 10, 11

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................ 9

*Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469 (2d Cir. 1999) ....................... 16, 18

*Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997) ............................................................ 19

*Matson v. Bd. of Educ.*, 631 F.3d 57 (2d Cir. 2011) ..................................................... 8

*Matter of Adam D.*, 132 Misc. 2d 797 (Fam. Ct. Schoharie Co. 1986) ........................ 5

*Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714 (2d Cir. 2013) ....................................................................................................... 12

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) ...... 12

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ...................... 15

*New York Civil Liberties Union v. Grandeau*, 528 F.3d 122 (2d Cir. 2008) ............... 16

*Nichols v. Brown*, 859 F. Supp. 2d 1118 (C.D. Cal. 2012) ........................................ 20

*Nnebe v. Davis*, 644 F.3d 147 (2d Cir. 2011) .................................................. 10, 13, 14

*Papasan v. Allain*, 478 U.S. 265 (1986) ..................................................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .............................. 19

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013) ................................ 9

*Simmonds v. I.N.S.*, 326 F.3d 351 (2d Cir. 2003) ....................................................... 18

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .................................. 10

*Spann v. Colonial Vill., Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ...................................... 14

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .................................................... 10, 11

*State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71 (2d Cir. 2007) ................................................................................................................. 19

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ......................................... 14

*Texas v. United States*, 523 U.S. 296 (1998) ...................................................... 16, 17

*Tsirelman v. Daines*, 794 F.3d 310 (2d Cir. 2015) ......................................................... 8

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ........................................................................................ 11

*Wang v. Pataki*, 164 F. Supp. 2d 406 (S.D.N.Y. 2001) ............................................... 20

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................... 10

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .............................................................. 12

**Statutes**

42 U.S.C. § 1983 ....................................................................................................... 2, 10

N.Y. Education Law § 2(12) .......................................................................................... 6

N.Y. Education Law § 201 ............................................................................................. 4

N.Y. Education Law § 202 ............................................................................................. 4

N.Y. Education Law § 207 ............................................................................................. 4

N.Y. Education Law § 305(1) ..................................................................................... 4, 5

N.Y. Education Law § 305(2) ........................................................................................ 5

N.Y. Education Law § 3204 .................................................................................. passim

N.Y. Education Law § 3205(1) ...................................................................................... 5

N.Y. Education Law § 3205(3) ...................................................................................... 5

N.Y. Education Law § 3210(2)(d) ................................................................................. 6

**Constitutional Provisions**

N.Y.S. Constitution, Art. V, § 4 .................................................................................... 4

U.S. Const. amend. XI ................................................................................................. 18

**Regulations**

8 N.Y.C.R.R. 100.10 ..................................................................................................... 6

Defendants Governor Andrew Cuomo, Board of Regents Chancellor Betty Rosa, and Commissioner of Education MaryEllen Elia, sued in their official capacities (collectively, "Defendants"), respectfully submit this memorandum of law, along with the accompanying Declaration of Yan Fu, dated October 2, 2018 ("Fu Decl."),[1] in support of their motion to dismiss the complaint filed by Plaintiff Young Advocates for Fair Education ("YAFFED") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Since 1894, New York's Education Law has required that the instruction provided by non-public elementary and secondary schools be at least "substantially equivalent" to the instruction provided by public schools.  Historically, the responsibility for determining whether a non-public school was providing substantially equivalent instruction fell to local school districts. In April 2018, the Legislature amended the Education Law relating to the substantial equivalence determination for non-public schools of a particular description – namely, bilingual elementary and secondary schools that are non-profit corporations and meet for a specified number of hours on a majority of weekdays (the "Amendment").  For these schools, the Amendment: (i) shifts responsibility for making the substantial equivalence determination from local school districts to the Commissioner of the New York State Education Department; and (ii) requires the Commissioner to consider, *without limitation*, some additional enumerated factors in making the substantial equivalence determination.

YAFFED, a non-profit organization, brings this action pursuant to § 1983 of the Civil Rights Act to challenge the constitutionality of the Amendment.  YAFFED contends that the

---

[1] For the Court's convenience, the Fu Declaration attaches the current and prior versions of the statute that is the subject of the Plaintiff's challenge.

Amendment violates the Establishment Clause of the First Amendment by allegedly applying different, and lower, educational standards to "ultra-Orthodox Jewish schools" (hereafter "yeshivas"), contending that only these schools fall within the Amendment.  Even accepting these allegations as true, the Court should dismiss this action because YAFFED lacks standing and, in any event, its Establishment Clause claim is not ripe for judicial resolution.

As a threshold matter, it is well-settled in this Circuit that an organization has no associational standing to bring an action on behalf of its members pursuant to § 1983.  Therefore, YAFFED must establish that it has suffered injury in fact sufficient to establish standing in its own right.  YAFFED's allegations fail to do so.

As alleged in the complaint, YAFFED was founded for the purpose of advocating on behalf of students attending yeshivas "to ensure that all students receive the critical tools and skill sets needed for long-term personal growth and self-sufficient futures."  Complaint, ECF No. 1 ("Compl."), at ¶18.  YAFFED's work includes advocacy aimed at state and city officials, outreach to the Orthodox Jewish community, and efforts to educate the general public about the need for improvement in the quality of education at yeshivas.  YAFFED's stated purpose includes using litigation to achieve policy changes, if necessary.  *See* https://www.yaffed.org/faq.  Since its founding in 2012 through April 2018, YAFFED alleges that it has spent significant resources pursuing its mission, including the publication of an 80-plus page report in September 2017 detailing the state of education in yeshivas.

YAFFED asserts that it suffers an injury in fact because the Amendment has moved the goalposts, rendering its prior work irrelevant and requiring the organization to fight an entirely new battle at significant cost.  In other words, YAFFED maintains it must divert resources to challenge and void the Amendment so that its prior work is not wasted effort.  This type of

2

"diversion of resources" argument does not establish the requisite injury in fact necessary to support Article III standing because YAFFED does not allege that the Amendment has impeded its ability to perform a particular *mission-related activity*, or that it was forced to expend resources to counteract and remedy the adverse consequences or harmful effects of the Amendment on those who benefit from its services.  Indeed, if all that was required to establish injury in fact in a case challenging a duly-enacted statute was an allegation by the plaintiff that it will incur the costs of litigating a court challenge to the statute, then every plaintiff in such a suit would always have Article III standing.  That would render the standing requirement non-existent.

Moreover, even if YAFFED were to have standing (which is not the case), the Court should still dismiss this action on ripeness grounds.  YAFFED acknowledges that the Commissioner has yet to issue revised guidelines that take into consideration the Amendment, and alleges merely that the guidelines *may be affected* by the Amendment.  YAFFED further concedes that it is *unclear* whether the Amendment replaces or supplements existing guidelines for making the substantial equivalence determination.  And YAFFED's complaint contains no allegation suggesting that the shift from local school districts to the Commissioner will have any preferential effect on the substantial equivalence determination for schools subject to the Amendment.  Whether and how the Amendment may affect the Commissioner's yet-to-be issued revised guidelines for determining substantial equivalence is unknown and, accordingly, invites pure speculation and an advisory opinion.

For these reasons, the case should be dismissed in its entirety for lack of standing and ripeness.  Finally, at a minimum, this action should be dismissed as against the Governor and the Board of Regents Chancellor.  Neither has any role in enforcing the provisions of the

Amendment.  Absent a particular enforcement role under the challenged statute, the Governor and Chancellor are immune from suit under the Eleventh Amendment.

## STATEMENT OF FACTS

### A.    The Board of Regents and State Education Department

The Board of Regents of The University of the State of New York (the "Board of Regents" or the "Board") serves as the governing body of The University of the State of New York ("USNY"), a statutory corporation established for the purpose of, among other things, promoting education and distributing property or funds that the State may appropriate for education.  N.Y. Education Law ("Educ. Law") §§ 101, 201, 202.  The 17 members who sit on the Board are elected by the New York Legislature.  *Id.* § 202.  As the governing body of USNY, the Board exercises substantial authority over educational matters in the State, including the authority to determine state educational policies, and to establish "rules for carrying into effect the laws and policies of the state, relating to education, and the functions, powers, duties and trusts conferred or charged upon" USNY and the New York State Education Department ("SED").  *Id.* § 207.

SED is a State agency "charged with the general management and all of the educational work" of the State of New York.  *Id.* § 101.  The Board of Regents is the head of SED and appoints the Commissioner of SED (the "Commissioner") who serves at the Board's pleasure as chief administrative officer of SED.  N.Y.S. Constitution, Art. V, § 4; Educ. Law § 101.

In addition to serving as the chief administrative officer of SED, the Commissioner serves as the "chief executive officer" of the State's education system and of the Board of Regents.  Educ. Law § 305(1).  As chief executive officer, the Commissioner is required to "enforce all general and special laws relating to the educational system of the state and execute

4

all educational policies determined upon by the [B]oard of [R]egents." *Id.* She is also charged

with the general supervision of "all schools and institutions" which are subject to the provisions

of the State Education Law "or of any statute relating to education." *Id.* § 305(2).

## B. Relevant Education Law Provisions

New York's Education Law provides that all children from ages 6 to 16 (or 17) must

attend full-time instruction. N.Y. Educ. Law §§ 3205(1), (3). That instruction may either be at a

public school or at home or in a non-public school that meets the requirements set forth in § 3204

of the Education Law ("§ 3204"). As a general matter, the board of education of the local school

district is primarily responsible for ensuring that children of compulsory school age who reside

within its district receive the required instruction, whether in public school, non-public school, or

at home. *Appeal of Brown*, 34 Ed. Dep't Rep. 33, Decision No. 13,225 (1994), available at

http://www.counsel.nysed.gov/Decisions/volume34/d13225; *Matter of Adam D.*, 132 Misc. 2d

797 (Fam. Ct. Schoharie Co. 1986); *see also Blackwelder v. Safnauer*, 689 F. Supp. 106, 122

(N.D.N.Y. 1988).

Prior to April 12, 2018, § 3204(2) – the subsection relevant to this action – provided

parameters for the quality and language of instruction and text books used in public schools, and

with respect to non-public schools required that the instruction "shall be at least substantially

equivalent to the instruction given to minors of like age and attainments at the public schools of

the city or district where the minor resides." *See* Fu Decl., Ex. A (version of § 3204 in effect

prior to April 11, 2018). Consistent with their primary responsibility to ensure children of

compulsory school age residing within their districts receive the required instruction under §

3204, local school districts had responsibility for determining whether instruction at any non-

public school or at home satisfied the "substantially equivalent" standard under § 3204(2). *See,*

5

*e.g.*, Educ. Law § 3210(2)(d) (providing "school authorities," defined as the board of education of the local school district under Educ. Law § 2(12), shall determine whether a non-public school provides "substantially equivalent" instruction for purposes of permitting the school to have a shorter school day and/or school year); 8 N.Y.C.R.R. 100.10 (providing "procedures to assist school authorities in fulfilling their responsibility under Education Law, sections 3204(2) and 3210(2)(d)" with respect to home instruction); *see also* SED Guidelines for Determining Equivalency of Instruction in Nonpublic Schools, Compl. Ex. 2 (hereafter "Guidelines For Non-Public Schools") ("the board of education of the school district in which the child resides must be assured that the child is receiving instruction which is substantially equivalent to that provided in the public schools.").

On April 12, 2018, Governor Cuomo signed into law the Amendment, with immediate effect, that renumbered subsection 2 of § 3204 as subsection 2(i) without any substantive change, added new subsections 2(ii) through (v), and left the remaining subsections 2-a, 2-b, 3, 4, 4-a, 4-b, and 5 unchanged.  *See* Fu Decl., Ex. B (current version of § 3204).   Renumbered subsection 2(i) still requires for non-public schools that the instruction be "substantially equivalent" to the instruction in public schools in the district where the student resides.  *Id.*, § 3204(2)(i).

New subsection 2(ii) provides that for the purpose of considering substantial equivalence under § 3204(2)(i) with respect to non-public elementary schools that are non-profit corporations, bilingual, and meet for a specified number of hours on a majority of weekdays, SED "shall consider the following, *but not limited to*" list of enumerated factors, such as whether "the curriculum provides academically rigorous instruction that develops critical thinking skills in the school's students, taking into account the entirety of the curriculum, over the course of

elementary and middle school," and other considerations involving instruction in English, mathematics, history, and science. *Id.*, § 3204(2)(ii) (emphasis added).

New subsection 2(iii) provides that for the purpose of considering substantial equivalence under § 3204(2)(i) with respect to non-public secondary schools established for children who have graduated from elementary schools described in new subsection 2(ii) and are non-profit corporations, bilingual, and meet for a specified number of hours on a majority of weekdays, SED "shall consider the following[,] *but not limited to*" factor of whether "the curriculum provides academically rigorous instruction that develops critical thinking skills in the school's students, the outcomes of which, taking into account the entirety of the curriculum, result in a sound basic education." *Id.*, § 3204(2)(iii) (emphasis added).

New subsection 2(iv) clarifies that nothing in the new subsections "shall be construed to entitle or permit any school to receive an increase in mandated services aid" on account of providing a longer school day that brings it within the scope of subsections 2(ii) or 2(iii). *Id.*, § 3204(2)(iv).

Finally, new subsection 2(v) provides that the Commissioner, rather than local school district boards, "shall be the entity that determines whether non-public elementary and secondary schools are in compliance with the academic requirements" of subsections 2(ii) and 2(iii). *Id.*, § 3204(2)(iv).

## C.    YAFFED's Complaint

YAFFED commenced this action on July 23, 2018 seeking: (i) a declaration that the Amendment violates the Establishment Clause of the U.S. Constitution; and (ii) a preliminary and permanent injunction preventing Defendants from enforcing the Amendment. Compl. ¶¶ 102, 106.  In support of its claims for relief, YAFFED alleges, *inter alia*, the following facts:

- The only non-public schools falling within the scope of subsections 2(ii) and 2(iii) of § 3204 are yeshivas.  *Id.* ¶¶ 8, 76, 80.

- The Amendment imposes on yeshivas new considerations for determining substantial equivalence that are "vague" and "appear substantially relaxed as compared to the guidelines issued by SED for all non-public schools," which require instruction in spelling, music, health education, physical education, visual arts, practical arts, home and career skills, and library and information skills.  *Id.* ¶¶ 9, 78.

- Since 2017, SED has been in the process of preparing revised guidelines for determining substantial equivalence, which have not yet been issued.  *Id.* ¶¶ 57, 91.

- The Amendment is "unclear" as to whether the new considerations for determining substantial equivalence under subsections 2(ii) and 2(iii) of § 3204 "are intended to replace or supersede existing SED guidelines" or merely supplement them.  *Id.* ¶ 83.

- SED's "revised guidelines on substantial equivalence *may* be affected" by the Amendment.  *Id.* ¶ 91 (emphasis added).

- YAFFED is a non-profit organization that advocates at the state and local government level for yeshiva students' right to education, and works to educate the Hasidic community and the general public about the issue of non-compliant Hasidic yeshivas.  *Id.* ¶¶ 18, 52, 58.  Since its founding in 2012 up through April 2018 when the Amendment was passed, YAFFED spent significant resources in furtherance of its advocacy efforts.  *Id.* ¶ 60.

- The Amendment "has and will impact YAFFED's advocacy, potentially rendering moot some of its work over the past six years."  *Id.* ¶ 91.  The Amendment has "forced YAFFED to shift valuable resources away from its traditional advocacy and education efforts," requiring instead that it "focus now on advocating in opposition" to the Amendment and informing the public about it.  *Id.* ¶ 92.

## STANDARD OF REVIEW

A court reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).  A plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although a court must accept all allegations contained in the complaint to be true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *Atik v. Welch Foods, Inc.*, No. 15 CV 5405, 2016 WL 5678474, at *3 (E.D.N.Y. Sept. 30, 2016).

"The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## ARGUMENT

### I.   YAFFED LACKS STANDING TO BRING THIS ACTION BECAUSE IT HAS NOT SUFFERED ANY INJURY IN FACT

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  To satisfy the irreducible constitutional minimum of Article III standing, a plaintiff must show that: (1) it has suffered an actual or imminent injury in fact, that is concrete and particularized, and not conjectural or hypothetical; (2) there is a causal connection between the injury and the defendant's actions; and (3) it is likely that a favorable decision in the case will redress the

injury.  *Id.* at 560–61.  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks and citation omitted).  The standing requirement is "built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted).

It is settled law in this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983.  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (citing *Nnebe v. Davis*, 644 F.3d 147, 156 (2d Cir. 2011) (collecting cases)); *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984) (holding no associational standing in § 1983 cases because the circuit has "interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured.").

However, an organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."  *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  In order to do so, "the organization must meet the same standing test that applies to individuals by showing [an] actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision."  *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998).  In addition, it is well-established that "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III."  *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).

YAFFED asserts standing in its own right based on the purportedly direct injury it suffers because the Amendment: (i) has "forced YAFFED to shift valuable resources away from its traditional advocacy and education efforts" in order "to focus now on advocating in opposition" to the Amendment (Compl. ¶ 92); and (ii) "potentially render[s] moot some of its work over the past six years" (*id*. ¶ 91).  Neither of these purported harms is sufficient to establish the required injury in fact necessary to confer on YAFFED Article III standing.

"To establish injury in fact, a plaintiff must show that he or she has suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  Specifically, the injury must affect the plaintiff in "a personal and individual way" and must be "real" not "abstract."  *Id.*  This is to ensure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

YAFFED's claim in this action is based solely on the argument that the Amendment singles out yeshivas for beneficial treatment in violation of the Establishment Clause.  But YAFFED alleges that it is "unclear" whether the Amendment replaces or supplements existing factors to be considered when determining substantial equivalence under subsections 2(ii) and 2(iii).  Compl. ¶ 83.  Moreover, YAFFED alleges that the Amendment "may" affect SED's revised guidelines for determining substantial equivalence (*id.* ¶ 91), not that it necessarily will do so.  Thus, YAFFED has not suffered any "concrete" injury.  *See Clapper*, 568 U.S. at 409 (holding injury "must be certainly impending to constitute injury in fact" and "[a]llegations of

11

possible future injury" are not sufficient) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Nor has YAFFED suffered an injury in fact just because it allegedly must now divert resources away from other initiatives to fund this lawsuit. The Second Circuit has held that an organization has standing based on a diversion of resources theory where the defendant's conduct or policy interferes with or burdens an organization's ability to carry out its usual activities. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017) ("[I]f the Ordinance achieves one of its principal objectives—disbursement of day laborers—[the organization] will inevitably face increased difficulty in meeting with and organizing those laborers."); *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012) (finding standing where the organization's ability to represent its clients in administrative hearings was "impeded" by the defendant's policy barring public access to such hearings).

The Second Circuit has also held that an organization can establish standing where it alleges that it is forced to expend resources to prevent some adverse or harmful consequence on a well-defined and particularized class of individuals. *See, e.g.*, *Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 110 (holding organization's need to expend greater resources to reach day laborers, the recipients of the organization's assistance, because challenged ordinance requires the day laborers to disperse); *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 716–17 (2d Cir. 2013) (holding legal clinic's diversion of resources to counteract agency's policy of asserting counterclaims for outstanding treatment charges against client patients who sued the agency was sufficient injury in fact).

Therefore, in the Second Circuit, to assert standing in its own right based upon a diversion of resources theory, an organization must allege either that: (i) a defendant's actions have impeded its ability to perform a particular *mission-related activity*; or (ii) it was forced to expend resources to counteract and remedy the adverse consequences or harmful effects of a defendant's conduct on those who benefit from its services.  YAFFED's allegations do not satisfy either prong of this test.  YAFFED fails to allege any way in which the Amendment has *impeded* its ability to perform its mission, despite alleging that it now must redirect its efforts to new statutory language.  Nor does YAFFED allege any expenditure of resources it must incur to counteract and remedy any of the alleged effects the Amendment may have *on students who attend yeshivas*.

In support of its motion for a preliminary injunction, YAFFED cites *Nnebe* for the proposition that "[i]n the Second Circuit, having to use resources to litigate the challenged activity constitutes a diversion of resources sufficient for injury."  *See* Plaintiff's Memorandum In Support Of Its Motion For A Preliminary Injunction, ECF No. 18-1 ("Pl. MOL") at 18. However, as the discussion above makes clear, YAFFED's reliance on *Nnebe* as support for a *per se* rule that diversion of resources confers standing is misplaced.  In *Nnebe*, a taxi drivers' organization sued to challenge New York City's policy of summarily suspending the licenses of taxi drivers who were arrested for certain crimes.  664 F.3d at 149.  The Second Circuit held that the organization had standing in its own right because it was obligated to expend resources assisting its members who faced summary suspension by providing counseling to its drivers, explaining the suspension rules, and assisting the drivers in obtaining attorneys.  *Id.* at 157-58. The court noted that the case before it "[was] not an instance of 'manufactured' litigation"

13

because the organization "allocated resources to assist drivers only when another party—the City—has initiated proceedings against one of its members." *Id.*

YAFFED's voluntary and preemptive decision to expend resources to advocate against the Amendment is not analogous to the expenditure decisions in *Nnebe* or those by the plaintiff-organizations in other cases where the Second Circuit determined that the organizations had standing in their own right based upon diversion of resources. At most, YAFFED's choice to spend funds to fight against the Amendment reflects the organization's decision regarding how best to pursue its advocacy; it does not confer standing to sue. *See Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (holding there was no standing because "[Plaintiff's] entire reason for being is to pursue the sort of advocacy . . . that it has pursued in this case . . . . [Plaintiff] simply made a choice about where and how to spend its limited resources."). Thus, YAFFED's expenditure of resources to challenge the Amendment is insufficient to establish the requisite injury in fact because "[a]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (Ginsburg, J.); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, . . . a plaintiff cannot achieve standing to litigate a substantive issue for the cost of bringing suit."); *Hogan*, 519 F. App'x at 717 (2d Cir. 2013) (reaffirming Second Circuit rule "that litigation expenses alone do not constitute damage sufficient to support standing.").

Nor do YAFFED's allegations that some of its past work has been rendered moot by the Amendment (Compl. ¶ 91) and that it has had to "shift some of its resources" away from other activities to combat the Amendment (*id.* ¶ 92) give rise to injury in fact. As the Second Circuit

14

noted in *Knife Rights*, past expenditures do not confer standing in an action for injunctive relief because "it is not an injury that can be redressed through" granting such relief. 802 F.3d at 388. And YAFFED's decision to fund this litigation at the expense of its other activities merely reflects its choice to bring suit, and does not state an injury fairly traceable to the Amendment. *Clapper*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Accordingly, YAFFED lacks standing to bring this case, and the Court should grant Defendants' motion to dismiss in its entirety.

## II.   YAFFED'S CHALLENGE TO THE AMENDMENT IS NOT RIPE FOR ADJUDICATION BECAUSE SED HAS NOT YET ISSUED ITS REVISED GUIDELINES

The Court should dismiss this action for the additional, independent reason that YAFFED's constitutional challenge to the Amendment is not ripe for judicial review. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). A central purpose of this doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). The concern over abstract disagreements is especially present where, as here, a plaintiff asks for what may be an unnecessary determination of constitutional law. *See Fed. Election Comm'n v. Cent. Long Island Reform Immediately Comm.*, 616 F.2d 45, 51-52 (2d Cir. 1980). The ripeness doctrine also protects government agencies "from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148-49.

In determining whether an issue is ripe for adjudication, courts are to consider "both the fitness of the issues for judicial decision and the hardship resulting from withholding judicial consideration." *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999). It is the plaintiff's burden "to allege facts demonstrating that the case presents a justiciable controversy." *Id.*

### A.   *The Issue Raised By YAFFED Is Not Fit For Judicial Review*

"The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted). Notwithstanding YAFFED's conclusory allegations that passage of the Amendment was for the purpose of advancing the interests of yeshivas, YAFFED's Establishment Clause challenge to the Amendment is not yet fit for judicial review. YAFFED alleges the Amendment is "unclear" as to its effect (Compl. ¶ 83), yet it asks this Court to opine on the constitutionality of the Amendment *before* SED has issued its revised guidelines and before the Amendment has produced any result in the form of a determination by SED as to substantial equivalency in any school. However, the ripeness doctrine forbids a court from ruling on a statute's constitutionality where, as here, it is uncertain as to how an agency will interpret and apply the statute. *See Marchi*, 173 F.3d at 478 ("[A] court entertaining [the] challenge would be forced to guess at how [the agency] might apply the [statute] and to pronounce on the validity of numerous possible applications of the [statute], all highly fact-

16

specific and, as of yet, hypothetical.  Such an open-ended and indefinite challenge is not well suited to judicial decision."); *see also Texas v. United States*, 523 U.S. at 301 ("The operation of the statute is better grasped when viewed in light of a particular application.").

Prior to the Amendment, Education Law § 3204(2) required, in relevant part, that "[i]nstruction given to a minor elsewhere than at a public school shall be *at least substantially equivalent* to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  Fu Decl., Ex. A (emphasis added). The Amendment did not change the above-quoted language implementing the "substantially equivalent" requirement.  Instead, the Amendment simply renumbered this provision as subsection 2(i) and added subsections 2(ii) to (v).  *Id.*, Ex. B.

Subsections 2(ii) and 2(iii) provide that in determining substantial equivalence under § 3204(2)(i) with respect to a defined set of non-public elementary and secondary schools, SED shall consider certain additional enumerated factors.  Importantly, the list of factors for consideration under § 3204(2)(ii) and (iii) is *without limitation* on SED's discretion to consider any other factors the Commissioner deems appropriate and necessary.  *Id.*

While YAFFED speculates that the Amendment violates the Establishment Clause by creating different and lower standards for determining substantial equivalence for school's within its ambit, SED has not yet issued guidance regarding the specific factors the Commissioner will consider when making the substantial equivalence determination for such schools, including any factors that are in addition to ones enumerated in the Amendment. Compl. ¶¶ 57, 91.  Thus, YAFFED's Establishment Clause claim is contingent on SED interpreting and applying the Amendment to yeshivas in a particular fashion that may not occur. Indeed, YAFFED expressly alleges as much.  *See* Compl. ¶ 83 (the Amendment is "unclear" as

to whether the new considerations for determining substantial equivalence under subsections 2(ii) and 2(iii) of § 3204 "are intended to replace or supersede existing SED guidelines."); ¶ 91 (SED's "revised guidelines on substantial equivalence *may* be affected" by the Amendment) (emphasis added).  Accordingly, YAFFED's challenge is not yet ripe.  *Marchi*, 173 F.3d at 478.

### B.   YAFFED Faces No Hardship Without Judicial Review

"In assessing the possible hardship to the parties resulting from withholding judicial resolution, [courts] ask whether the challenged action creates a direct and immediate dilemma for the parties."  *Simmonds v. I.N.S.*, 326 F.3d 351, 360 (2d Cir. 2003) (citation omitted).  "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship."  *Id.* (citation omitted).  Here, YAFFED alleges the effect of the Amendment is "unclear" absent revised guidelines from SED indicating how the Commissioner will interpret and apply the Amendment (Compl. ¶ 83), and therefore withholding judicial resolution does not create a direct and immediate dilemma for the parties.

### III.   IN ANY EVENT, THE GOVERNOR AND CHANCELLOR ARE NOT PROPER PARTIES BECAUSE THEY HAVE NO ENFORCEMENT ROLE UNDER THE AMENDMENT

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has clarified that although "[t]his language expressly encompasses only suits brought against a State by citizens of another State, . . . the Amendment bars suits against a State by citizens of that same State as well."  *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).  The Eleventh Amendment thus "affirm[s] that the fundamental principle of sovereign immunity limits the grant of

18

judicial authority in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Sovereign immunity applies not only to the state itself but also to a state officer named in his official capacity because "[a] claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer." *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *cf. Beaulieu v. Vermont*, 807 F.3d 481, 490 (2d Cir. 2015) (applying state's broad general sovereign immunity to state official sued in his official capacity).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court created an exception to sovereign immunity for state officers, but only for claims seeking prospective declaratory or injunctive relief. *Alden v. Maine*, 527 U.S. 706, 747 (1999); *see also State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). However, if the state official does not have the authority to enforce the challenged legislation, the *Ex parte Young* exception does not apply. *See In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372-73 (2d Cir. 2005) (citing *Ex parte Young*, 209 U.S. at 154, 157); *Steinberg v. Elkman*, 666 F. App'x 26, 27-28 (2d Cir. 2016) (affirming dismissal of Governor Cuomo on sovereign immunity grounds because he had no connection with enforcement or review); *see also Kelly v. New York State Civil Service Commission*, 632 F. App'x 17, 18 (2d Cir. 2016) ("[T]he district court correctly concluded that *Young* does not apply here. The state officer against whom prospective relief is sought 'must have some connection with the enforcement of the act' that violates federal law.") (citations omitted); *Citizens Union of the City of New York, v. Attorney General of New York*, No. 16-CV-9592, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (holding state officer

must have a particular duty to enforce the statute in question and the demonstrated willingness to exercise that duty in order to avoid Eleventh Amendment immunity).

YAFFED alleges no exercise of enforcement authority by the Governor or Chancellor; it alleges merely that the Governor signed into law the bill that included the Amendment and that the Chancellor has the power to remove the Commissioner and has "general supervision of all educational activities within the state."  Compl. ¶¶ 21, 73.  These allegations do not support the necessary finding that the Governor or Chancellor could provide the relief requested in the Complaint or be obligated to do so.  *See Citizens Union,* 2017 WL 2984167 at *4 (holding state official's duty to execute the laws is not sufficient by itself to make that official a proper party to a suit challenging a state statute); *Aron v. Becker*, 48 F. Supp. 3d 347, 368 (N.D.N.Y. 2014) ("With respect to Governor Cuomo, the vast majority of courts to consider this issue have held that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute.") (citation and internal quotation marks omitted); *Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (holding allegation that governor "is required to ensure that the laws of the State of New York are faithfully and fairly executed" was "insufficient to state a claim" against the governor); *see also Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) (finding allegation that "[t]he Governor has the supreme executive power in the State and is responsible for the faithful execution of the laws of the State of California" is an insufficient, generalized connection); *Doe v. Jindal*, No. 15-1283, 2015 WL 7300506, at *5 (E.D. La. Nov. 18, 2015) ("Allegations that a state official has merely carried out his constitutional duties do not satisfy *Ex parte Young's* requirement that there be 'some connection' between the state official and enforcement of the allegedly unconstitutional act.) (citation omitted).

In the event the Court does not grant Defendants' motion to dismiss this action in its entirety for the reasons set forth in Points I and II above, at a minimum, all claims against the Governor and the Chancellor should be dismissed on the basis of Eleventh Amendment immunity.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant their motion to dismiss this action in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
   October 2, 2018

           BARBARA D. UNDERWOOD
           Attorney General of the State of New York


           By:_____/s/  Andrew Amer_____
           Andrew Amer
           Special Litigation Counsel
           Yan Fu
           Assistant Attorney General
           28 Liberty Street
           New York, New York 10005
           (212) 416-6127
           andrew.amer@ag.ny.gov


           Attorney for Defendants