UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
YOUNG ADVOCATES FOR FAIR EDUCATION,  :
                                                                        :
                                         Plaintiff,         :         18-cv-04167 (ILG) (JO)
                                                                        :
          - against -                                       :
                                                                        :
ANDREW CUOMO, in his official capacity, *et al.*,  :
                                                                        :
                                        Defendants.    :
-------------------------------------------------------------- X


# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION


BARBARA D. UNDERWOOD
Attorney General of the
State of New York
28 Liberty Street
New York, NY  10005

*Attorney for Defendants*


Andrew Amer
  Special Litigation Counsel
Yan Fu
  Assistant Attorney General
    *of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 4

    A.   The Board of Regents and State Education Department ...................................... 4

    B.   Relevant Education Law Provisions ..................................................................... 5

    C.   YAFFED's Complaint ........................................................................................... 8

    D.   Procedural History ................................................................................................ 9

STANDARD OF REVIEW .................................................................................................... 9

ARGUMENT ........................................................................................................................ 12

    I.    YAFFED FAILS TO DEMONSTRATE A SUBSTANTIAL
          LIKELIHOOD OF SUCCESS ON THE MERITS OR EXTREME
          DAMAGE ABSENT AN INJUNCTION .................................................... 12

      A.  YAFFED Lacks Standing To Bring This Action As It Has Not
          Suffered Any Injury In Fact ........................................................................ 12

      B.  YAFFED's Challenge Is Not Ripe Because SED Has Not Yet Issued
          Guidelines Implementing The Amendment .............................................. 19

        1.  The Issue Raised By YAFFED Is Not Fit For Judicial Review .............. 20

        2.  YAFFED Faces No Hardship Without Judicial Review.......................... 21

    II.   YAFFED FAILS TO DEMONSTRATE IRREPARABLE HARM .......................... 22

    III.  THE BALANCE OF EQUITIES TIPS DECIDEDLY IN FAVOR OF
          THE PUBLIC'S INTEREST IN HAVING SED ISSUE REVISED
          GUIDELINES ............................................................................................. 26

CONCLUSION ..................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ............................................................. 19

*Appeal of Brown*, 34 Ed. Dep't Rep. 33, Decision No. 13,225 (1994) ........................... 5

*Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999) .................................................................. 10

*Blackwelder v. Safnauer*, 689 F. Supp. 106, 122 (N.D.N.Y. 1988) ................................ 5

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868
   F.3d 104 (2d Cir. 2017) ............................................................................................. 16

*Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366 (S.D.N.Y. 1990) ................... 25

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) ............................................. 25

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................ 13, 14, 18

*Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520 (S.D.N.Y. 2006) ............................ 17

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................ 26

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ............ 22

*Fed. Election Comm'n v. Cent. Long Island Reform Immediately Comm.*, 616
   F.2d 45 (2d Cir. 1980) ............................................................................................... 19

*Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005) ........................... 22, 23

*Gidatex, S.r.L. v. Campeniello Imports, Ltd.*, 13 F. Supp. 2d 417 (S.D.N.Y. 1998) ..... 25

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................ 15

*Hayes v. Zakia*, No. 01-CV-0907E(SR), 2002 WL 31207463 (W.D.N.Y. Sept. 17,
   2002) ........................................................................................................................... 11

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998) ........................... 13

*KM Enters. v. McDonald*, 11-cv-5098, 2012 U.S. Dist. LEXIS 20469 (E.D.N.Y.
   Feb. 16, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) .............................................. 23

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ...................................... 13, 18

*League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors*, 737
   F.2d 155 (2d Cir. 1984) ............................................................................................. 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 12

*Lujan*, 504 U.S. at 560 ....................................................................................... 14

*Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469 (2d Cir. 1999) .................................. 19, 20, 21

*Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277 (S.D.N.Y.1998) ............................................................................................... 25

*Matter of Adam D.*, 132 Misc. 2d 797 (Fam. Ct. Schoharie Co. 1986) ............................................ 5

*Monserrate v. New York State Senate*, 695 F. Supp. 2d 80 (S.D.N.Y. 2010) .............................. 11

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) ...................... 16

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ...................................... 19

*New York Civil Liberties Union v. Grandeau*, 528 F.3d 122 (2d Cir. 2008) .............................. 20

*NM v. Hebrew Acad. Long Beach*, 155 F. Supp. 3d 247 (E.D.N.Y. 2016) .............................. 9, 12

*Nnebe v. Davis*, 644 F.3d 147 (2d Cir. 2011) ................................................................ 13, 15, 17

*Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir. 2011) ........................................ 10

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Svcs.*, 769 F.3d 105 (2d Cir. 2014) .............................................................................................. 10

*Patton v. Dole*, 806 F.2d 24 (2d Cir. 1986) ........................................................................... 9

*Pope v. Cty. of Albany*, 687 F.3d 565 (2d Cir. 2012) .............................................................. 10

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993) ...................................... 15

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) .................................................................. 11

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ..................................................................... 26

*Savage v. Gorski*, 850 F.2d 64 (2d Cir. 1988) ........................................................................ 23

*Simmonds v. I.N.S.*, 326 F.3d 351 (2d Cir. 2003) .................................................................. 22

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ................................................ 13

*Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43 (2d Cir. 2012) ................................................................................................. 22

*Spann v. Colonial Vill., Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ...................................................... 18

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..................................................................... 12, 18

*Spokeo, Inc.*, 136 S. Ct. at 1548 ...................................................................................... 14

*Stagg P.C. v. U.S. Dep't of State*, 673 F. App'x 93 (2d Cir. 2016) ................................. 10

*State of N.Y. v. Nuclear Regulatory Comm'n*, 550 F.2d 745 (2d Cir. 1977) ................ 24

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)........................................... 18

*Texas v. United States*, 523 U.S. 296 (1998) ................................................................. 20

*Tom Doherty Assocs., Inc. v. Saban Ent't, Inc.*, 60 F.3d 27 (2d Cir. 1995) ............ 10, 11, 12

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995)........................... 25

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) ............................................................................................. 14

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................. 13

*Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982) .................................................... 26

*Weinstein v. Krumpter*, 120 F. Supp. 3d 289 (E.D.N.Y. 2015) ................................. 11, 22

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ............................................................. 14, 19

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)......................... 26

**Statutes**

42 U.S.C. § 1983.............................................................................................................. 2

N.Y. Education Law § 2(12) ............................................................................................ 6

N.Y. Education Law § 201 .............................................................................................. 4

N.Y. Education Law § 202 .............................................................................................. 4

N.Y. Education Law § 207 .............................................................................................. 4

N.Y. Education Law § 305(1).......................................................................................... 5

N.Y. Education Law § 305(2).......................................................................................... 5

N.Y. Education Law § 3204 ................................................................................... 5, 6, 7, 21

N.Y. Education Law § 3205(1)........................................................................................ 5

N.Y. Education Law § 3205(3)........................................................................................ 5

N.Y. Education Law § 3210(2)(d) ................................................................................................. 6

**Constitutional Provisions**

N.Y.S. Constitution, Art. V, § 4..................................................................................................... 4

Defendants Governor Andrew Cuomo, Board of Regents Chancellor Betty Rosa, and Commissioner of Education MaryEllen Elia, sued in their official capacities (collectively, "Defendants"), respectfully submit this memorandum of law, together with the accompanying Declaration of Christina Coughlin, dated September 28, 2018 ("Coughlin Decl."), and Declaration of Yan Fu, dated October 5, 2018 ("Fu Decl."), in opposition to the Motion for a Preliminary Injunction filed by Plaintiff Young Advocates for Fair Education ("YAFFED").

## PRELIMINARY STATEMENT

Since 1894, New York's Education Law has required that instruction at non-public schools be "substantially equivalent" to the instruction given at public schools. For years, the New York State Education Department ("SED") has provided guidelines for assessing substantial equivalence to local school districts, the entities historically tasked with making the substantial equivalence determination. In April of this year, the Education Law was amended in two respects concerning the substantial equivalence determination for non-public elementary and secondary schools that have a bilingual program, are non-profit corporations, and meet for a specified number of hours on a majority of weekdays (the "Amendment"). For these schools, pursuant to the Amendment: (i) responsibility for making the substantial equivalence determination is shifted from local school districts to the SED Commissioner; and (ii) the Commissioner is required to consider, *without limitation*, certain additional factors in making the substantial equivalence determination.

For the past two years – long prior to the Amendment – SED has been working on revising its guidelines for the substantial equivalence determination, and will, by necessity, take into consideration the Amendment when it issues the updated guidance in the coming months. Considering that the Amendment places *no limitation* on what factors the Commissioner may

consider in making the substantial equivalence determination for non-public schools falling within the scope of the Amendment, whether and to what extent the substantial equivalence determination will be affected by the Amendment is unclear at this point in time.

Against this backdrop, and more than three months after the Amendment became effective, YAFFED commenced this lawsuit pursuant to § 1983 of the Civil Rights Act to invalidate the Amendment under the Establishment Clause of the U.S. Constitution, and now moves for a preliminary injunction to bar enforcement of the Amendment pending resolution on the merits.  YAFFED's request for such extraordinary relief should be denied because it fails to satisfy any of the prongs of the well-known test for granting a preliminary injunction.

**First**, YAFFED fails to make a substantial or clear showing of likelihood of success – the heightened standard that applies when a party seeks to enjoin a duly-enacted statute – for two reasons.  As an initial matter, YAFFED cannot assert associational standing in this § 1983 case under settled Second Circuit precedent, and fails to allege any injury in fact sufficient to assert standing in its own right.  YAFFED fails to allege any way in which the Amendment impairs its ability to carry out any mission-related activity.  Rather, YAFFED alleges "injury" as a result of the Amendment because it must divert resources away from its other efforts to fund this lawsuit. This type of "litigation expense" argument does not establish the requisite injury in fact necessary to support Article III standing.  Indeed, if all that was required to establish injury in fact in a case challenging a duly-enacted statute was an allegation by the plaintiff that it will incur the costs of litigating the case, then every plaintiff would always have Article III standing.

Moreover, even if YAFFED were to have standing in its own right (which is not the case), YAFFED is not substantially likely to succeed on the merits because the case is not ripe for adjudication.  YAFFED acknowledges that the Commissioner has yet to issue revised

guidelines that interpret and apply the Amendment, and alleges merely that the guidelines *may be affected* by the Amendment – an inconclusive assertion that tacitly concedes the Amendment may have no effect on the guidelines at all.  YAFFED further alleges that it is *unclear* whether the Amendment replaces or supplements existing guidelines for making the substantial equivalence determination.  This case is simply not ripe for adjudication before SED issues its revised guidelines.

**Second**, Plaintiff cannot demonstrate irreparable harm based on SED's enforcement of the Amendment through revised guidelines that have yet to be issued.  YAFFED argues that as a result of the Amendment, Judaic studies *may* be considered by SED for determining substantial equivalence.  *See* Plaintiff's Memorandum In Support Of Its Motion For A Preliminary Injunction (ECF No. 18-1) ("Pl. MOL") at 36.  But whether and to what extent SED's yet-to-be issued revised guidelines *will* consider Judaic Studies in determining substantial equivalence is unknown and, accordingly, invites speculation.  Nor has YAFFED explained how shifting responsibility for the substantial equivalence determination from local school districts to the Commissioner causes any irreparable harm.  Indeed, YAFFED's delay of over three months in commencing this litigation after the Amendment became effective undermines any claim by YAFFED that it will suffer irreparable harm in the absence of an immediate injunction.

**Third**, the balance of the equities tips against issuing a preliminary injunction because the public interest is better served by having SED continue to work on the updated guidelines so that non-public schools falling within the scope of the Amendment will know what practical effect, if any, the new law will have on them.  In contrast, YAFFED fails to demonstrate how delaying SED's updated guidelines will benefit the public.  As YAFFED concedes, there is no

3

way to know prior to seeing SED's yet-to-be issued revised guidelines whether the substantial

equivalence determination will be affected at all, and if so, how.

Because YAFFED fails to satisfy any of the requirements for a preliminary injunction, its

request for such extraordinary relief should be denied.

## STATEMENT OF FACTS

### A.  The Board of Regents and State Education Department

The Board of Regents of The University of the State of New York (the "Board of

Regents" or the "Board") serves as the governing body of The University of the State of New

York ("USNY"), a statutory corporation established for the purpose of, among other things,

promoting education and distributing property or funds that the State may appropriate for

education.  N.Y. Education Law ("Educ. Law") §§ 101, 201, 202.  The 17 members who sit on

the Board are elected by the New York Legislature.  *Id.* § 202.  As the governing body of USNY,

the Board exercises substantial authority over educational matters in the State, including the

authority to determine state educational policies, and to establish "rules for carrying into effect

the laws and policies of the state, relating to education, and the functions, powers, duties and

trusts conferred or charged upon" USNY and the New York State Education Department

("SED").  *Id.* § 207.

SED is a State agency "charged with the general management and all of the educational

work" of the State of New York.  *Id.* § 101.  The Board of Regents is the head of SED and

appoints the Commissioner of SED (the "Commissioner") who serves at the Board's pleasure as

chief administrative officer of SED.  N.Y.S. Constitution, Art. V, § 4; Educ. Law § 101.

In addition to serving as the chief administrative officer of SED, the Commissioner

serves as the "chief executive officer" of the State's education system and of the Board of

4

Regents.  Educ. Law § 305(1).  As chief executive officer, the Commissioner is required to "enforce all general and special laws relating to the educational system of the state and execute all educational policies determined upon by the [B]oard of [R]egents."  *Id.*  She is also charged with the general supervision of "all schools and institutions" which are subject to the provisions of the State Education Law "or of any statute relating to education."  *Id.* § 305(2).

### B.  Relevant Education Law Provisions

New York's Education Law provides that all children from ages 6 to 16 (or 17) must attend full-time instruction.  N.Y. Educ. Law §§ 3205(1), (3).  That instruction may either be at a public school or at home or in a non-public school that meets the requirements set forth in § 3204 of the Education Law ("§ 3204").  As a general matter, the board of education of the local school district is primarily responsible for ensuring that children of compulsory school age who reside within its district receive the required instruction, whether in public school, non-public school, or at home.  *Appeal of Brown*, 34 Ed. Dep't Rep. 33, Decision No. 13,225 (1994), available at http://www.counsel.nysed.gov/Decisions/volume34/d13225; *Matter of Adam D.*, 132 Misc. 2d 797 (Fam. Ct. Schoharie Co. 1986); *see also Blackwelder v. Safnauer*, 689 F. Supp. 106, 122 (N.D.N.Y. 1988).

Prior to April 12, 2018, § 3204(2) – the subsection relevant to this action – provided parameters for the quality and language of instruction and text books used in public schools, and with respect to non-public schools required that the instruction "shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  *See* Fu Decl., Ex. A (version of § 3204 in effect prior to April 11, 2018).  Consistent with their primary responsibility to ensure children of compulsory school age residing within their districts receive the required instruction under

5

§ 3204, local school districts had responsibility for determining whether instruction at any non-public school or at home satisfied the "substantially equivalent" standard under § 3204(2).  *See, e.g.,* Educ. Law § 3210(2)(d) (providing "school authorities," defined as the board of education of the local school district under Educ. Law § 2(12), shall determine whether a non-public school provides "substantially equivalent" instruction for purposes of permitting the school to have a shorter school day and/or school year); 8 NYCRR 100.10 (providing "procedures to assist school authorities in fulfilling their responsibility under Education Law, sections 3204(2) and 3210(2)(d)" with respect to home instruction); *see also* SED Guidelines for Determining Equivalency of Instruction in Nonpublic Schools, Compl. Ex. 2 (hereafter "Guidelines For Non-Public Schools") ("the board of education of the school district in which the child resides must be assured that the child is receiving instruction which is substantially equivalent to that provided in the public schools.").

On March 30, 2018, the Legislature passed, and on April 12, 2018, Governor Cuomo signed into law, the Amendment with immediate effect, that renumbered subsection 2 of § 3204 as subsection 2(i) without any substantive change, added new subsections 2(ii) through (v), and left the remaining subsections 2-a, 2-b, 3, 4, 4-a, 4-b, and 5 unchanged.  *See* Fu Decl., Ex. B (current version of § 3204).   Renumbered subsection 2(i) still requires for non-public schools that the instruction be "substantially equivalent" to the instruction in public schools in the district where the student resides.  *Id.*, § 3204(2)(i).

New subsection 2(ii) provides that for the purpose of considering substantial equivalence under § 3204(2)(i) with respect to non-public elementary schools that are non-profit corporations, bilingual, and meet for a specified number of hours on a majority of weekdays, SED "shall consider the following, *but not limited to*" list of enumerated factors, such as whether

"the curriculum provides academically rigorous instruction that develops critical thinking skills in the school's students, taking into account the entirety of the curriculum, over the course of elementary and middle school," and other considerations involving instruction in English, mathematics, history, and science. *Id.*, § 3204(2)(ii) (emphasis added).

New subsection 2(iii) provides that for the purpose of considering substantial equivalence under § 3204(2)(i) with respect to non-public secondary schools established for children who have graduated from elementary schools described in new subsection 2(ii) and are non-profit corporations, bilingual, and meet for a specified number of hours on a majority of weekdays, SED "shall consider the following[,] *but not limited to*" factor of whether "the curriculum provides academically rigorous instruction that develops critical thinking skills in the school's students, the outcomes of which, taking into account the entirety of the curriculum, result in a sound basic education." *Id.*, § 3204(2)(iii) (emphasis added).

New subsection 2(iv) clarifies that nothing in the new subsections "shall be construed to entitle or permit any school to receive an increase in mandated services aid" on account of providing a longer school day that brings it within the scope of subsections 2(ii) or 2(iii). *Id.*, § 3204(2)(iv).

Finally, new subsection 2(v) provides that the Commissioner, rather than local school district boards, "shall be the entity that determines whether non-public elementary and secondary schools are in compliance with the academic requirements" of subsections 2(ii) and 2(iii). *Id.*, § 3204(2)(iv).

For several years, long prior to the Amendment, the SED website has provided, through its Guidelines For Non-Public Schools, guidance for public school officials to determine the substantial equivalence of education provided in non-public schools. Coughlin Decl. ¶ 3. In

response to questions, SED has undertaken a consultative process for almost two years to update the Guidelines For Non-Public Schools. *Id.* ¶ 4.  SED's development of updated guidelines related to substantial equivalence in non-public schools is ongoing and will necessarily include consideration of the recently-enacted Amendment. *Id.* ¶ 6.  SED anticipates the updated guidelines will be completed in the next few months barring unforeseen developments. *Id.* ¶ 7.

### C.  YAFFED's Complaint

YAFFED commenced this action on July 23, 2018 seeking: (i) a declaration that the Amendment violates the Establishment Clause of the U.S. Constitution; and (ii) a preliminary and permanent injunction preventing Defendants from enforcing the Amendment.  Complaint, ECF No. 1 ("Compl."), at ¶¶ 102, 106.  In support of its claims for relief, YAFFED alleges, *inter alia*, the following facts:

- The only non-public schools falling within the scope of subsections 2(ii) and 2(iii) of § 3204 are "ultra-Orthodox Jewish schools" (hereafter "yeshivas"). *Id.* at ¶¶ 8, 76, 80.

- The Amendment imposes on yeshivas new considerations for determining substantial equivalence that are "vague" and "appear substantially relaxed as compared to the guidelines issued by SED for all non-public schools," which require instruction in spelling, music, health education, physical education, visual arts, practical arts, home and career skills, and library and information skills. *Id.* at ¶¶ 9, 78.

- The Amendment is "unclear" as to whether the new considerations for determining substantial equivalence under subsections 2(ii) and 2(iii) of § 3204 "are intended to replace or supersede existing SED guidelines" or merely supplement them. *Id.* at ¶ 83.

- SED's "revised guidelines on substantial equivalence *may* be affected" by the Amendment. *Id.* at ¶ 91 (emphasis added).

- YAFFED is a non-profit organization that advocates at the state and local government level for yeshiva students' right to education, and works to educate the Hasidic community and the general public about the issue of non-compliant Hasidic yeshivas. *Id.* at ¶¶ 18, 52, 58.  Since its founding in 2012 up through

April 2018 when the Amendment was passed, YAFFED spent significant resources in furtherance of its advocacy efforts. *Id.* at ¶ 60.

- The Amendment "has and will impact YAFFED's advocacy, potentially rendering moot some of its work over the past six years." *Id.* at ¶ 91.  The Amendment has "forced YAFFED to shift valuable resources away from its traditional advocacy and education efforts," requiring instead that it "focus now on advocating in opposition" to the Amendment and informing the public about it. *Id.* at ¶ 92.

### D.   Procedural History

On August 24, 2018, YAFFED moved for a preliminary injunction enjoining Defendants from enforcing the Amendment, including issuing guidelines with respect to the Amendment, and ordering Defendants to maintain the status quo as it existed prior to the effective date of the Amendment pending resolution of the case on the merits.  *See* Plaintiff's Notice of Motion for a Preliminary Injunction ("Pl. NOM"), ECF No. 18.  On October 2, 2018, Defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (a) in its entirety on the grounds that YAFFED lacks standing and its claim is not ripe for resolution, and alternatively (b) as to Governor Cuomo and Chancellor Rosa based on Eleventh Amendment immunity.  *See* Defendants' Notice of Motion to Dismiss, ECF No. 32.

## <u>STANDARD OF REVIEW</u>

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986).  It is "one of the most drastic tools in the arsenal of judicial remedies." *NM v. Hebrew Acad. Long Beach*, 155 F. Supp. 3d 247, 256-57 (E.D.N.Y. 2016) (quotation omitted).  To obtain a preliminary injunction, a plaintiff must demonstrate:  (1) a likelihood of success on the merits; (2) that plaintiff would suffer irreparable harm absent the injunction; (3) a balance of equities tipping in plaintiff's favor; and (4) that an injunction is in the public interest.  *See Stagg P.C. v. U.S. Dep't of State*, 673 F.

App'x 93, 95 (2d Cir. 2016); *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Svcs.*, 769 F.3d 105, 110 (2d Cir. 2014); *Pope v. Cty. of Albany*, 687 F.3d 565, 570 (2d Cir. 2012).

Although in some cases plaintiffs may demonstrate "sufficiently serious questions going to the merits of [their] claims to make them fair grounds for litigation" in lieu of demonstrating a likelihood of success on the merits, the "fair-ground-for-litigation" alternative does not apply where, as here, the plaintiff is challenging a "government action taken in the public interest pursuant to a statutory or regulatory scheme." *Otoe-Missouria Tribe of Indians*, 769 F.3d at 110; *accord Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011). That is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Otoe–Missouria Tribe*, 769 F.3d 105 (quotations and citation omitted); *accord Central Rabbinical Congress of United States & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 192 (2d Cir. 2014). The requirement that plaintiffs demonstrate likelihood of success on the merits of their claims applies even if plaintiffs purport to seek to "vindicate a sovereign or public interest." *Otoe–Missouria Tribe*, 769 F.3d at 112 (quotations and citation omitted).

In addition, when plaintiffs seek a mandatory rather than a prohibitory injunction – that is, when they seek to alter the status quo pending a trial on the merits – they are required to make a "substantial, or clear showing of, likelihood of success" or demonstrate that "extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs., Inc. v. Saban Ent't, Inc.*, 60 F.3d 27, 34-35 (2d Cir. 1995) (internal quotations and citations omitted). An injunction is mandatory where, as here, it would "change the positions of the parties as it existed prior to the grant," *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) (internal quotations

and citations omitted), or would "prohibit[] a party from refusing to permit some act." *Tom Doherty Assocs.*, 60 F.3d at 34; *see, e.g.*, *Monserrate v. New York State Senate*, 695 F. Supp. 2d 80, 89 (S.D.N.Y. 2010) (injunction mandatory in nature where plaintiff sought to bar enforcement of State Senate resolution because it would "fundamentally 'change the positions of the parties as [they] existed prior to the grant' of the injunction") (citations omitted); *Hayes v. Zakia*, No. 01-CV-0907E(SR), 2002 WL 31207463, at *3 n.7 (W.D.N.Y. Sept. 17, 2002) (injunction mandatory where it would prevent enforcement of provision of attorney disciplinary rules).  This "higher standard" for a mandatory injunction is "particularly appropriate when a plaintiff seeks a preliminary injunction against a government body," as here.  *Weinstein v. Krumpter*, 120 F. Supp. 3d 289, 297 (E.D.N.Y. 2015) (internal quotations and citations omitted). Moreover, "[e]ven greater caution is appropriate where a federal court is asked to interfere by means of injunctive relief with a state's executive functions, a sphere in which states typically are afforded latitude." *Reynolds v. Giuliani*, 506 F.3d 183, 198 (2d Cir. 2007).

YAFFED seeks a mandatory injunction prohibiting SED from enforcing the Amendment or issuing guidelines under the Amendment (*see* Pl. NOM, ECF No. 18), a statute that has already been in effect for approximately six months.  YAFFED is therefore required to demonstrate, among the other requirements for preliminary injunctive relief, that it has a *substantial* likelihood of succeeding on its claims or that it will suffer *extreme* or *very serious* damage absent the requested relief.  *Tom Doherty Assocs.,* 60 F.3d at 34-35.

11

## ARGUMENT

**I.     YAFFED FAILS TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OR EXTREME DAMAGE ABSENT AN INJUNCTION**

YAFFED's preliminary injunction motion should be denied because it fails to make a "substantial, or clear showing of, likelihood of success" or demonstrate that "extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs., Inc.*, 60 F.3d at 34-35; *see also Hebrew Acad. Long Beach*, 155 F. Supp. at 257 (denying preliminary injunction despite evidence of irreparable harm where Plaintiffs "failed to sustain their burden of showing a clear or substantial likelihood of succeeding on the merits of their federal and state claims"). Indeed, on the merits Plaintiff's claims cannot even survive a motion to dismiss (which Defendants have just filed (ECF No. 32)), much less support Plaintiff's preliminary injunction motion.

### A.   YAFFED Lacks Standing To Bring This Action As It Has Not Suffered Any Injury In Fact

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). To satisfy the irreducible constitutional minimum of Article III standing, a plaintiff must show that: (1) it has suffered an actual or imminent injury in fact, that is concrete and particularized, and not conjectural or hypothetical; (2) there is a causal connection between the injury and the defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. *Id.* at 560–61. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks and citation omitted). The standing requirement is "built on

12

separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted).

It is settled law in this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (citing *Nnebe v. Davis*, 644 F.3d 147, 156 (2d Cir. 2011) (collecting cases)); *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984) (holding no associational standing in § 1983 cases because the circuit has "interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured.").

However, an organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). In order to do so, "the organization must meet the same standing test that applies to individuals by showing [an] actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998). In addition, it is well-established that "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).

YAFFED asserts standing in its own right based on the purportedly direct injury it suffers because the Amendment: (i) has "forced YAFFED to shift valuable resources away from its traditional advocacy and education efforts" in order "to focus now on advocating in opposition" to the Amendment (Compl. ¶ 92); (ii) "potentially render[s] moot some of its work over the past six years" (*id.* ¶ 91); and (iii) will negatively impact its fundraising efforts because it takes time

13

away from writing grant applications and dissuades potential individual donors from giving (Pl. MOL at 21).  None of these purported harms is sufficient to establish the required injury in fact necessary to confer on YAFFED Article III standing.

  "To establish injury in fact, a plaintiff must show that he or she has suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Specifically, the injury must affect the plaintiff in "a personal and individual way" and must be "real" not "abstract."  *Id.*  This is to ensure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

YAFFED's claim in this action is based solely on the argument that the Amendment singles out yeshivas for beneficial treatment in violation of the Establishment Clause.  But at the same time, YAFFED alleges that it is "unclear" whether the Amendment replaces or supplements existing factors to be considered when determining substantial equivalence under subsections 2(ii) and 2(iii).  Compl. ¶ 83.  Moreover, YAFFED alleges that the Amendment "may" affect SED's revised guidelines for determining substantial equivalence (*id.* ¶ 91), not that it necessarily will do so.  Thus, YAFFED has not suffered and may never suffer any "concrete" injury.  *See Clapper*, 568 U.S. at 409 (holding injury "must be certainly impending to constitute injury in fact" and "[a]llegations of possible future injury" are not sufficient) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Nor has YAFFED suffered an injury in fact just because it allegedly must now divert resources away from other initiatives to fund this lawsuit.  In support of its "diversion of

resources" argument, YAFFED relies on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and *Nnebe*.  Pl. MOL at 18.  YAFFED's reliance is seriously misplaced.

In *Havens*, the Supreme Court held that a plaintiff-organization suffers an injury in fact if the defendant's actions "perceptibly impaired" the regular mission of the plaintiff.  455 U.S. at 379.  The mission of the plaintiff-organization in *Havens* was to increase equal opportunity in housing through, among other methods, counseling and referral services for low-income home-seekers.  *Id.*  The Supreme Court held that the organization had standing to sue under the Fair Housing Act because the defendants' practice of steering members of racial and ethnic groups to apartments in buildings occupied primarily by members of the same groups made it more difficult for the organization to assist its clients in obtaining equal access to housing, finding the organization "had to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices."  *Id.*  The Court reasoned that "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests."  *Id*; *see also Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (organization had standing to sue in Fair Housing Act case where defendant discriminated against the organization's clients, forcing the organization to divert resources from its counseling services to counteract the discriminatory practice).

YAFFED's reliance on *Havens* is to no avail because here, as distinguished from *Havens* and other Fair Housing Act cases, YAFFED alleges no "concrete and demonstrable injury" to its mission-related activities resulting from the Amendment, but rather merely a "setback to the organization's abstract social interests."  *Havens*, 455 U.S. at 379.

15

YAFFED's reliance on Second Circuit precedent fares no better.  Following *Havens*, the Second Circuit has held that an organization has standing where the defendant's conduct or policy interferes with or burdens an organization's ability to carry out its usual activities.  *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017) ("[I]f the Ordinance achieves one of its principal objectives—disbursement of day laborers—[the organization] will inevitably face increased difficulty in meeting with and organizing those laborers."); *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012) (finding no standing where the organization's ability to represent its clients in administrative hearings was "impeded" by the defendant's policy barring public access to such hearings).  The Second Circuit has also held that an organization can establish standing where it alleges that it is forced to expend resources to prevent some adverse or harmful consequence on a well-defined and particularized class of individuals.  *See, e.g.*, *Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 110; *Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x. 714, 716–17 (2d Cir. 2013) (legal clinic diverted resources from education and training to challenge the Office of Mental Health's policy of asserting counterclaims for outstanding treatment charges against patients who sued the agency and thereby discouraged patients from bringing such suits).

Therefore, in the Second Circuit, to assert standing in its own right based upon a diversion of resources theory, an organization must allege either that: (i) a defendant's actions have impeded its ability to perform a particular *mission-related activity*; or (ii) it was forced to expend resources to counteract and remedy the adverse consequences or harmful effects of a defendant's conduct on those who benefit from its services.  YAFFED's allegations do not satisfy either prong of this test.  YAFFED fails to allege any way in which the Amendment has

*impeded* its ability to perform its mission, despite alleging that it now must redirect its efforts to new statutory language.  Nor does YAFFED allege any expenditure of resources it must incur to counteract and remedy any of the alleged effects the Amendment may have *on students who attend yeshivas*.

*Nnebe* does not compel a different conclusion.  In *Nnebe*, a taxi drivers' organization sued to challenge New York City's policy of summarily suspending the licenses of taxi drivers who were arrested for certain crimes.  664 F.3d at 149.  The Second Circuit held that the organization had standing in its own right because it was obligated to expend resources assisting its members who faced summary suspension by providing counseling to its drivers, explaining the suspension rules, and assisting the drivers in obtaining attorneys.  *Id.* at 157-58.  The court noted that the case before it "[was] not an instance of 'manufactured' litigation" because the organization "allocated resources to assist drivers only when another party—the City—has initiated proceedings against one of its members."  *Id.*

YAFFED's voluntary and preemptive decision to expend resources to advocate against the Amendment is not analogous to the expenditure decisions in *Nnebe* or those by the plaintiff-organizations in other cases where the Second Circuit determined that the organizations had standing in their own right based upon diversion of resources.  At most, YAFFED's choice to spend funds to fight against the Amendment reflects the organization's decision regarding how best to pursue its advocacy; it does not confer standing to sue.  *See Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (holding there was no standing because "[Plaintiff's] entire reason for being is to pursue the sort of advocacy . . . that it has pursued in this case . . . . [Plaintiff] simply made a choice about where and how to spend its limited resources.").  Thus, YAFFED's expenditure of resources to challenge the Amendment is insufficient to establish the

requisite injury in fact because "[a]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.  Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation."  *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (Ginsburg, J.); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, . . . a plaintiff cannot achieve standing to litigate a substantive issue for the cost of bringing suit."); *Hogan*, 519 F. App'x at 717 (2d Cir. 2013) (reaffirming Second Circuit rule "that litigation expenses alone do not constitute damage sufficient to support standing.").

Nor do YAFFED's allegations that some of its past work has been rendered moot by the Amendment (Compl. ¶ 91) and that it has had to "shift some of its resources" away from other activities to combat the Amendment (*id.* ¶ 92) give rise to injury in fact.  As the Second Circuit noted in *Knife Rights*, past expenditures do not confer standing in an action for injunctive relief because "it is not an injury that can be redressed through" granting such relief.  802 F.3d at 388. And YAFFED's decision to fund this litigation at the expense of its other activities merely reflects its choice to bring suit, and does not state an injury fairly traceable to the Amendment. *Clapper*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Finally, YAFFED's assertion that the Amendment has and will negatively impact its fundraising efforts because its staff has less time for writing grant applications and potential individual donors have expressed a decreased willingness to donate after passage of the Amendment (Pl. MOL at p. 21) is pure speculation that does not give rise to the sort of "real not abstract" injury necessary to establish Article III standing.  *Spokeo* 136 S. Ct. at 1548; *see also*

*Clapper*, 568 U.S. at 409 (holding "[a]llegations of possible future injury" are not sufficient) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

### B.   YAFFED's Challenge Is Not Ripe Because SED Has Not Yet Issued Guidelines Implementing The Amendment

YAFFED has no substantial likelihood of success on the merits for the additional, independent reason that its constitutional challenge to the Amendment is not ripe for judicial review.  "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted).  A central purpose of this doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  The concern over abstract disagreements is especially present where, as here, a plaintiff asks for what may be an unnecessary determination of constitutional law.  *See Fed. Election Comm'n v. Cent. Long Island Reform Immediately Comm.*, 616 F.2d 45, 51-52 (2d Cir. 1980).  The ripeness doctrine also protects government agencies "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs.*, 387 U.S. at 148-49.

In determining whether an issue is ripe for adjudication, courts are to consider "both the fitness of the issues for judicial decision and the hardship resulting from withholding judicial consideration."  *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999).  It is the plaintiff's burden "to allege facts demonstrating that the case presents a justiciable controversy."  *Id.*

19

### 1.    The Issue Raised By YAFFED Is Not Fit For Judicial Review

"The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, (1998) (citations omitted).  Notwithstanding YAFFED's conclusory allegations that passage of the Amendment was for the purpose of advancing the interests of yeshivas, YAFFED's Establishment Clause challenge to the Amendment is not yet fit for judicial review.  YAFFED alleges the Amendment is "unclear" as to its effect (Compl. ¶ 83), yet it asks this Court to opine on the constitutionality of the Amendment *before* SED has issued its revised guidelines and before the Amendment has produced any result in the form of a determination by SED as to substantial equivalency in any school.  However, the ripeness doctrine forbids a court from ruling on a statute's constitutionality where, as here, it is uncertain as to how an agency will interpret and apply the statute.  *See Marchi*, 173 F.3d at 478 ("[A] court entertaining [the] challenge would be forced to guess at how [the agency] might apply the [statute] and to pronounce on the validity of numerous possible applications of the [statute], all highly fact-specific and, as of yet, hypothetical.  Such an open-ended and indefinite challenge is not well suited to judicial decision."); *see also Texas v. United States*, 523 U.S. at 301 ("The operation of the statute is better grasped when viewed in light of a particular application.").

Prior to the Amendment, Education Law § 3204(2) required, in relevant part, that "[i]nstruction given to a minor elsewhere than at a public school shall be *at least substantially equivalent* to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides." Fu Decl., Ex. A (emphasis added). The Amendment

did not change the above-quoted language implementing the "substantially equivalent" requirement.  Instead, the Amendment simply renumbered this provision as subsection 2(i) and added subsections 2(ii) to (v).  *Id.*, Ex. B.

Subsections 2(ii) and 2(iii) provide that in determining substantial equivalence under § 3204(2)(i) with respect to a defined set of non-public elementary and secondary schools, SED shall consider certain additional enumerated factors.  Importantly, the list of factors for consideration under § 3204(2)(ii) and (iii) is *without limitation* on SED's discretion to consider any other factors the Commissioner deems appropriate and necessary.  *Id.*

While YAFFED speculates that the Amendment violates the Establishment Clause by creating different and lower standards for determining substantial equivalence for schools within its ambit, SED has not yet issued guidance regarding the specific factors the Commissioner will consider when making the substantial equivalence determination for such schools, including any factors that are in addition to ones enumerated in the Amendment.  Compl. ¶¶ 57, 91.  Thus, YAFFED's Establishment Clause claim is contingent on SED interpreting and applying the Amendment to yeshivas in a particular fashion that may not occur.  Indeed, YAFFED expressly alleges as much.  *See* Compl. ¶ 83 (the Amendment is "unclear" as to whether the new considerations for determining substantial equivalence under subsections 2(ii) and 2(iii) of § 3204 "are intended to replace or supersede existing SED guidelines."); ¶ 91 (SED's "revised guidelines on substantial equivalence *may* be affected" by the Amendment) (emphasis added).  Accordingly, YAFFED's challenge is not yet ripe.  *Marchi*, 173 F.3d at 478.

### 2.  YAFFED Faces No Hardship Without Judicial Review

"In assessing the possible hardship to the parties resulting from withholding judicial resolution, [courts] ask whether the challenged action creates a direct and immediate dilemma for

the parties." *Simmonds v. I.N.S.*, 326 F.3d 351, 360 (2d Cir. 2003) (citation omitted). "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* (citation omitted). Here, YAFFED alleges the effect of the Amendment is "unclear" absent revised guidelines from SED indicating how the Commissioner will interpret and apply the Amendment (Compl. ¶ 83), and therefore withholding judicial resolution does not create a direct and immediate dilemma for the parties.

*   *   *

Accordingly, YAFFED has no standing to bring this action, which is not ripe for judicial review in any event. Thus, YAFFED fails to demonstrate a substantial likelihood of success on the merits or extreme or very serious damage, and its request for a preliminary injunction should be denied for this reason alone.

## II.   YAFFED FAILS TO DEMONSTRATE IRREPARABLE HARM

Demonstrating irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012); *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (same). Irreparable harm requires showing that an "actual and imminent" injury will occur that "cannot be remedied if a court waits until the end of trial to resolve the harm." *Singas Famous Pizza Brands Corp.*, 468 F. App'x at 45; *accord Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005). In evaluating whether the plaintiff will suffer imminent harm, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits . . . ." *Weinstein*, 120 F. Supp. 3d at 297 (quotation omitted). "At the preliminary injunction stage, the

only cognizable harms are those that cannot be remedied at the end of trial if the movant were to prevail." *Freedom Holdings*, 408 F.3d at 115.

Simply put, YAFFED cannot possibly demonstrate irreparable harm based on SED's enforcement of the Amendment pursuant to revised guidelines that have yet to be issued. YAFFED argues that as a result of the Amendment, "Judaic Studies *may* be considered for determining whether an adequate secular education has been provided." Pl. MOL at 36 (emphasis added); *see also* Compl. ¶ 91 (SED's "revised guidelines on substantial equivalency *may* be affected" by the Amendment) (emphasis added). But whether and to what extent SED's yet-to-be issued revised guidelines *will* consider Judaic Studies in determining substantial equivalence and/or will include consideration of other factors is unknown and, accordingly, invites speculation. Moreover, even if Judaic Studies were to be considered, there is no basis to assume (as YAFFED does) that the manner in which such studies might be considered would necessarily violate the Establishment Clause. To the extent that the revised guidelines for substantial equivalence applicable to yeshivas are not materially different from the revised guidelines that will apply to other non-public schools *and* do not lead to more favorable determinations for yeshivas, YAFFED will not suffer any harm from the Amendment, irreparable or not.

A bare assertion of a constitutional injury, without evidence "convincingly show[ing]" the existence of noncompensable damages, is insufficient to trigger a finding of irreparable harm. *KM Enters. v. McDonald*, 11-cv-5098, 2012 U.S. Dist. LEXIS 20469, at *10-*11, 2012 WL 540955 (E.D.N.Y. Feb. 16, 2012) (Spatt, J.) (citing *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). Injunctive relief should be granted "only on the basis of showing that the alleged threats of irreparable harm are not remote or speculative but are

23

actual and imminent." *State of N.Y. v. Nuclear Regulatory Comm'n*, 550 F.2d 745, 755 (2d Cir. 1977).  Here, YAFFED's allegations of irreparable harm are based on pure speculation that SED will adopt revised guidelines that "allow[] relaxed standards to be used for" yeshivas.  Pl. MOL at 31.

Moreover, YAFFED has not alleged, much less demonstrated, how shifting responsibility for determining substantial equivalence from local school districts to the Commissioner will result in irreparable harm.  YAFFED correctly notes that the Amendment charges the Commissioner, as opposed to local school districts, "with enforcing Section 3204" for non-public schools falling within the scope of subsections 2(ii) and 2(iii) of the Amendment, but fails to identify any harm that will result from that change.  Compl. ¶ 74.  Indeed, YAFFED's complaint suggests that such a change may be beneficial to its cause.  YAFFED alleges that prior to the Amendment – when local school districts had responsibility for enforcing § 3204(2) – New York City engaged in "efforts to stall and avoid" investigating whether yeshivas provided substantially equivalent instruction, with New York City's Department of Education failing to issue any report in response to YAFFED's July 2015 letter complaining about 39 yeshivas despite promising to do so for over three years.  *Id.* at ¶¶ 53-55.  Given these allegations, it is hard to see how the Amendment's transfer of responsibility for the substantial equivalence determination with respect to yeshivas from local school districts to the Commissioner could result in any irreparable harm.

Finally, YAFFED's delay of over three months in commencing this litigation undermines any claim of irreparable harm.  A delay in bringing suit "may, 'standing alone, . . . preclude the granting of preliminary injunctive relief,' because the 'failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is,

in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d

Cir. 1995) (citations omitted); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.

1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent

need for speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those

rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

       The effort to amend § 3204(2) to include new considerations for yeshivas was first

reported in the press on March 26, 2018.  Compl. ¶ 70.  According to YAFFED's allegations, the

language that became the Amendment was included in the Senate budget bill on March 30, 2018.

*Id.* ¶ 71.  The Amendment was signed into law by the Governor on April 12, 2018.  *Id.* ¶ 73.  Yet

YAFFED waited over three months before filing this action on July 23, 2018.  Plaintiff's delay in

initiating this lawsuit seeking injunctive relief alone warrants denial of its motion and

demonstrates that it has not been irreparably harmed by a law that has been in effect since April.

*See Citibank, N.A.*, 756 F.2d at 277 (ten-week delay in seeking injunction held to preclude

relief); *Gidatex, S.r.L. v. Campeniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)

(noting that "courts typically decline to grant preliminary injunctions in the face of unexplained

delays of more than two months"); *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d

277, 281 (S.D.N.Y.1998) (three-month delay between initiating action and moving for

preliminary injunction was a "more than sufficient basis" for concluding that presumption of

irreparable injury otherwise applicable to trademark cases did not apply); *Century Time Ltd. v.*

*Interchron Ltd.*, 729 F. Supp. 366, 368 (S.D.N.Y. 1990) (plaintiffs "unlikely to be able to

demonstrate the requisite irreparable harm" given approximate two month delay in seeking

preliminary injunctive relief).

III.    **THE BALANCE OF EQUITIES TIPS DECIDEDLY IN FAVOR OF THE PUBLIC'S INTEREST IN HAVING SED ISSUE REVISED GUIDELINES**

A preliminary injunction may only be awarded if "the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

SED has been working diligently over the past two years through a consultative process to issue updated guidelines for determining substantial equivalence. Coughlin Decl. ¶ 4.  SED's updated guidelines will necessarily include consideration of the Amendment and should be completed in the next few months barring unforeseen developments. *Id*. ¶¶ 6-7.  This effort will be hampered and the updated guidelines delayed if the Court issues the requested preliminary injunction barring SED from taking steps to enforce the Amendment, which would necessarily include developing and issuing guidelines that implement the Amendment.  The public interest is better served by having SED continue to work on the updated guidelines so that schools falling within subsections 2(ii) and 2(iii) of § 3204 will know what practical effect, if any, the Amendment will have on the substantial equivalence analysis as applied to them.

In contrast, YAFFED fails to demonstrate how delaying SED's updated guidelines will benefit the public.  The entire premise of YAFFED's argument that the Amendment is counter to the public interest is based on its speculation that the revised guidelines will "allow[] relaxed standards to be used for" yeshivas.  Pl. MOL at 31.  But as YAFFED concedes, there is no way

to know prior to seeing SED's yet-to-be issued revised guidelines whether the substantial

equivalence determination will be affected by the Amendment, and if so, how.  Compl. ¶ 91

(SED's "revised guidelines on substantial equivalency *may* be affected" by the Amendment)

(emphasis added); Pl. MOL at 36 ("Judaic Studies *may* be considered for determining whether an

adequate secular education has been provided.") (emphasis added).

   Accordingly, the balance of the equities tips against issuing a preliminary injunction and

in favor of the public's interest in having SED continue working on the updated guidelines.

## CONCLUSION

   For the reasons set forth above, Defendants respectfully request that the Court deny

Plaintiff's motion for a preliminary injunction in its entirety, and grant such other and further

relief as the Court deems just and proper.

Dated:  New York, New York
   October 5, 2018

            BARBARA D. UNDERWOOD
            Attorney General of the State of New York


            By:____/s/  Andrew Amer____
            Andrew Amer
            Special Litigation Counsel
            Yan Fu
            Assistant Attorney General
            28 Liberty Street
            New York, New York 10005
            (212) 416-6127
            andrew.amer@ag.ny.gov

            Attorney for Defendants