IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

———————————————————————

|  |  |
|---|---|
| YOUNG ADVOCATES FOR FAIR EDUCATION,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW CUOMO,<br>in his official capacity as Governor of the State of New York,<br>BETTY ROSA, in her official capacity as Chancellor of the Board of Regents of the State of New York,<br>MARYELLEN ELIA, in her official capacity as Commissioner of the New York State Education Department,<br><br>　　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

———————————————————————

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Case No. 18 CV 4167

Oral Argument Requested

## <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     FACTUAL BACKGROUND................................................................................... 3

    A.  The Education of Minors in New York.......................................................... 3

    B.  YAFFED's Mission ....................................................................................... 5

    C.  The Felder Amendment to N.Y. Educ. Law § 3204(2)................................. 8

    D.  The Felder Amendment's Effect on YAFFED's Advocacy ......................... 10

III.    ARGUMENT ......................................................................................................... 11

    A.  YAFFED Has Standing to Challenge the Unconstitutional Felder Amendment.......... 12

        1.  YAFFED Has Suffered a Concrete Injury ................................................. 13

        2.  The Injury Is Fairly Traceable to the Actions of Defendants .................... 18

        3.  YAFFED's Injury Would Be Redressed by a Favorable Decision From This Court.... 19

    B.  YAFFED's Challenge to the Felder Amendment Is Ripe for This Court's Decision.... 19

        1.  The Facial Constitutional Challenge to the Felder Amendment Is Fit for Judicial Decision .......................................................................... 20

        2.  Withholding Judicial Decision Would Impose a Hardship on YAFFED and the Public ............................................................................. 22

    C.  The Eleventh Amendment Does Not Require Governor Cuomo and Chancellor Rosa Be Dismissed From This Suit ...................................... 23

IV.     CONCLUSION....................................................................................................... 27

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ........................................................................................ 21

*Aron v. Becker*,
   48 F. Supp. 3d 347 (N.D.N.Y. 2014) ............................................................. 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 11

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ...................................................................... 22

*Bd. of Educ. v. Nyquist*,
   57 N.Y.2d 27 (1982) .......................................................................................... 3

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ....................................................................... 12, 19

*Citizens Union of City of New York v. Att'y Gen. of New York*,
   2017 WL 2984167 (S.D.N.Y. June 23, 2017) ............................................... 27

*In re Dairy Mart Convenience Stores,* Inc.,
   411 F.3d 367 (2d Cir. 2005) ........................................................................... 25

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ........................................................................... 12

*Doe v. Jindal*,
   2015 WL 7300506 (E.D. La. Nov. 18, 2015) ............................................... 27

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
   282 F.3d 83 (2d Cir. 2002) ....................................................................... 20, 22

*United States v. Fell*,
   360 F.3d 135 (2d. Cir. 2004) .......................................................................... 22

*Fountain v. Karim*,
   838 F.3d 129 (2d Cir. 2016) ........................................................................... 12

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ............................................................................. 14, 16, 17

*Irish Lesbian & Gay Org. v. Guiliani*,
    143 F.3d 638 (2d Cir. 1998) ................................................................... 18

*Islamic Society of Fire Dept. Pers. v. City of New York*,
    205 F. Supp. 2d 75 (E.D.N.Y. 2002) ............................................. 14, 18

*Kelly v. New York Civil Service Comm'n*,
    632 F. App'x 17 (2d Cir. 2016) ........................................... 25, 26, 28

*Larson v. Valente*,
    456 U.S. 228 (1982) ............................................................................ 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................... 12, 17, 19, 20

*Mental Disability Law Clinic, Touro Law Center v. Hogan*,
    519 F. App'x. 714 (2d Cir. 2013) ...................................................... 15

*Nat'l Organization for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) .............................................................. 21

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013) .............................................................. 11

*Nichols v. Brown*,
    859 F. Supp. 2d 1118 (C.D. Cal. 2012) ............................................ 27

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011) .................................... 12, 13, 14, 15, 16, 18

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................ 25

*Ragin v. Harry Macklowe Real Estate Co.*,
    6 F.3d 898 (2d Cir. 1993) ........................................................... 13, 16

*Sante Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000) ..................................................................... 22, 23

*Selevan v. New York Thruway Auth.*,
    584 F.3d 82 (2d Cir. 2009) ................................................................ 11

*Seminole Tribe of Fla. v. Fla.*,
    517 U.S. 44 (1996) .............................................................................. 25

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) .............................................................................. 16

*Steinberg v. Elkman*,
    666 F. App'x 26 (2d Cir. 2016) ................................................................. 26

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ........................................................................... 21

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014) .................................................................. 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................. 28

*Thomas v. Union Carbide Agr. Prod. Co.*,
    473 U.S. 568 (1985) ............................................................... 22, 23, 24

*USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*,
    681 F.3d 103 (2d Cir. 2012) .................................................................. 11

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002) .............................................................................. 24

*Virginia Office for Prot. & Advocacy v. Stewart*,
    563 U.S. 247 (2011) .............................................................................. 25

*Wang v. Pataki*,
    164 F. Supp. 2d 406 (S.D.N.Y. 2001) ................................................... 27

**Rul.es / Statutes**

42 U.S.C. § 1983 .............................................................................................. 12

N.Y. Educ. Law § 207 ....................................................................................... 9

N.Y. Educ. Law § 305 ..................................................................................... 10

N.Y. Educ. Law § 3204 ............................................... 1, 2, 4, 8, 9, 10, 14, 26

N.Y. Educ. Law § 3204(2) ................................................................... 4, 6, 19

N.Y. Educ. Law § 3204(3) ...................................................................... 4, 5

N.Y. Educ. Law § 3204(5) ............................................................................... 4

Fed. R. Civ. P. 12(b)(1) ............................................................................ 11, 12

Fed. R. Civ. P. 12(b)(6) ................................................................................. 11

**Constitutional Provisions**

N.Y. Const. art. XI, § 1 .................................................................................... 3

**Other Authorities**

Leslie Brody, *New York State Revising Private Schools Guidelines*, Wall St. J. (Dec. 17, 2017, 4:35 PM), *https://www.wsj.com/articles/new-york-state-revising-private-schools-guidelines-1513546538* .......................................................................... 26

Paul Brooks, *New state budget changes wording about education in yeshivas*, Times Herald-Record (Apr. 8, 2018. 7:25 PM), https://www.recordonline.com/news/20180408/new-state-budget-changes-wording-about-education-in-yeshivas ................................................................ 26, 27

Diane Ravitch, *Why is New York Condoning Illiteracy?*, *Diane Ravitch's Blog* (Apr. 4, 2018), https://dianeravitch.net/2018/04/04/why-is-new-york-condoning-illiteracy/#comments ................................................................................ 26

Young Advocates For Fair Education, *Non-Equivalent: The State of Education in New York City's Hasidic Yeshivas*, Sept. 2017 ........................................................... 13

Plaintiff Young Advocates for Fair Education ("YAFFED") hereby respectfully submits this memorandum of law in opposition to the motion to dismiss (the "Motion") filed by Defendants Andrew Cuomo, Betty Rosa, and MaryEllen Elia (collectively, "Defendants").  For the reasons set forth below, the Court should deny the Motion in its entirety.

## I.   PRELIMINARY STATEMENT

In their motion, Defendants raise numerous jurisdictional issues but do not challenge that YAFFED has successfully pleaded a claim under the Establishment Clause.[1]  This Court has the power and obligation under Article III of the United States Constitution to decide the important issues at the heart of this case.  Additionally, the Eleventh Amendment provides no bar to the Court's jurisdiction.

Defendants incorrectly argue that YAFFED lacks standing based solely on the first of three prongs of *Lujan*'s three-part test.[2]  Defendants claim that YAFFED's injuries are the result of YAFFED's purported "choice" of how it advocates.  But YAFFED has no choice.  The Felder Amendment, by requiring consideration of the "entirety of the curriculum" in ultra-Orthodox yeshivas, is based on the faulty premise that Judaic religious studies can and should be used to determine whether a school provides a "substantially equivalent" education under Section 3204. In fact, it appears the Felder Amendment allows high school instruction at yeshivas to meet a general undefined standard of providing a "sound basic education" based on consideration of the entirety of the curriculum but provides no guidance as to what that curriculum should include.  In practice, this means that high school instruction at Yeshivas is evaluated based solely on Judaic

---

[1]   In fact, Defendants also failed to provide any response to the substantive constitutional challenge to the Felder Amendment in its response to YAFFED's motion for a preliminary injunction. Dkt. No. 40.

[2]   Defendants do not argue that YAFFED cannot meet the second and third prongs.

1

religious studies, which is the norm in ultra-Orthodox yeshiva instruction of high school age boys. YAFFED's mission, however, is founded on the premise that religious studies as taught in ultra-Orthodox yeshivas cannot alone meet the requisite secular instruction needed to ensure the best possible educational outcomes for the average child in these yeshivas. YAFFED has thus suffered a concrete injury to its mission and that injury continues as long as the unconstitutional Felder Amendment remains in effect.

Contrary to Defendants' arguments otherwise, YAFFED has suffered a concrete injury sufficient to possess standing under multiple theories. First, YAFFED has diverted significant resources to combat the Felder Amendment and its effects, impairing its ability to pursue its goals. Second, YAFFED has expended resources in prosecuting this case, an injury that the Second Circuit has recognized as sufficient to confer standing to sue. Third, the Felder Amendment has directly interfered with YAFFED's work, rendering work done by the organization to identify failing yeshivas a nullity and effectively preventing advocacy by YAFFED to improve secular education in yeshivas if it remains in effect.

YAFFED's claim is also ripe for this Court's decision. Every event that is necessary for the court to decide YAFFED's claim has already occurred. YAFFED's claim does not depend on specific action by the N.Y. State Education Department ("NYSED"). There is thus no reason nor value in delaying decision. Further, such a delay would subject YAFFED and the public to significant harm. YAFFED's injuries, as described above, would continue as long as the Felder Amendment remains in effect. And the public would suffer from delayed implementation and enforcement of New York's education laws.

Finally, Governor Cuomo and Chancellor Rosa are properly named in this suit. Each has played a demonstrated role in enforcement of the Education Law Section 3204. YAFFED is not

relying solely on Governor Cuomo's general duty to "take care that the laws be faithfully executed." As the Complaint alleges, Governor Cuomo was intimately involved in the passage of the Amendment, negotiating with a leader of the ultra-Orthodox community about the final terms of the bill. He has since assured leaders in the Hasidic community that the State will not interfere with yeshiva education. Chancellor Rosa is also directly involved in implementation and enforcement of the Felder Amendment, having spoken out on behalf of the Board of Regents regarding its oversight of the guidelines being developed by NYSED. Thus any immunity Governor Cuomo and Chancellor Rosa would otherwise possess under the Eleventh Amendment is properly pierced by the Supreme Court's well-established exception first recognized in *Ex parte Young*.

Because none of Defendants' arguments have merit, this Court should deny the Motion in its entirety.

## II.    FACTUAL BACKGROUND

### A.    The Education of Minors in New York

The "Education Clause" in Article XI, section 1 of the New York State Constitution provides that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const. art. XI, § 1. YAFFED's mission is to ensure that children in ultra-orthodox Jewish communities in New York receive the education the state's constitution guarantees.[3]

New York's Compulsory Education Law ("NYCEL") requires that every child in the state between the ages of 6 and 16 attend school or receive home instruction.[4] The requirements

---

[3]  Compl. ¶ 26 (quoting *Bd. of Educ. v. Nyquist*, 57 N.Y.2d 27, 48 (1982)), 52.

[4]  *Id.* at ¶ 27.

of the NYCEL apply regardless of whether a child receives instruction at a public school, a non-public school, or via homeschooling.[5]  Subsection 3204 of the NYCEL dictates the "Instruction Required" of all students in New York, with Subsection 2 specifying the quality and language of instruction.[6]  Among other things, it requires instruction by a competent teacher in English, with limited accommodations for bilingual instruction.[7]  Of particular importance to this case is Section 3204, Subsection 2, which provides in part that "[i]nstruction given to a minor elsewhere than at a public school ***shall be at least substantially equivalent to*** the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  N.Y. Educ. Law § 3204(2) (emphasis added).

The curriculum in public school for grades one through eight requires instruction in the subject areas of arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene, physical training, the history of New York State, and science.[8]  In high school, the curriculum must include instruction in the English language and its use, civics, hygiene, physical training, and American history including the Declaration of Independence and the Constitution of the United States.[9]  The NYCEL also requires instruction in health and hygiene but provides exceptions where such instruction may conflict with religious beliefs.[10]

---

[5]  *Id.*

[6]  *Id.* at ¶ 28.

[7]  *Id.* (citing N.Y. Educ. Law § 3204(2)).

[8]  *Id.* at ¶ 31 (citing N.Y. Educ. Law § 3204(3)).

[9]  *Id.* at ¶ 32 (citing N.Y. Educ. Law § 3204(3)).

[10]  *Id.* at ¶ 34 (citing N.Y. Educ. Law § 3204(5)).

Importantly, the NYCEL does not provide religious exceptions for the core areas of instruction required under Subsection 3204(3).[11]

### B.   YAFFED's Mission

YAFFED has fervently advocated for students in yeshivas in the Hasidic community of New York.[12]  Over 52,000 children are enrolled in Hasidic schools (also known as "yeshivas") in New York City alone.[13]  However, despite the requirements of New York's Compulsory Education Law discussed above, almost no secular education is provided at most yeshivas, particularly to male students.[14]  The language of instruction is almost exclusively Yiddish, and sometimes includes some Hebrew and/or Aramaic texts.[15]  From age 7 to age 12, the average Hasidic boy receives instruction in basic arithmetic, reading, and writing for at most 90 minutes a day (at the end of the school day), four days a week.[16]  There is no provision for the other subjects required by the Compulsory Education Law:  spelling, the English language, geography, United States history, civics, hygiene, physical training, the history of New York State, and science.[17]  Teachers in yeshivas are often unqualified to teach these secular studies, typically barely knowing English themselves.[18]  Once a male Hasidic student enters high school, he typically spends twelve to fourteen hours a day receiving instruction only in Judaic religious

---

[11]   *Id.*

[12]   *Id.* at ¶¶ 52 & 36.

[13]   *Id.* at ¶ 38.

[14]   *Id.* at ¶ 41.

[15]   *Id.*

[16]   *Id.*

[17]   *See id.* at ¶ 31 (citing N.Y. Educ. Law § 3204(3)).

[18]   *Id.*

studies; he receives no secular education.[19]  Unsurprisingly, the lack of access to adequate

secular education has an incredible impact on yeshiva students, leading to poor performance on

standardized testing, difficulty attaining higher levels of educational success, and poverty.[20]

YAFFED's work includes advocacy aimed at both New York State and New York City

officials, outreach efforts aimed at the Hasidic community, and education efforts aimed at raising

awareness of the issue with the general public.[21]  YAFFED worked to identify yeshivas that

failed to meet New York educational standards, urging the New York City Department of

Education (the "NYCDoE") to enforce the standards set forth in NYCEL § 3204(2) against these

specific schools.[22]  As a result, in July 2015, the NYCDoE agreed to investigate 39 yeshivas for

alleged failures.[23]

YAFFED has also educated state officials regarding the sub-standard secular education

provided by yeshivas and advocated for laws or regulations which would provide more tools for

regulators to ensure that the yeshiva students were receiving the substantially equivalent

education mandated by New York law.[24]  This advocacy is necessarily premised on a

fundamental aspect of YAFFED's mission—that Judaic religious curriculum offered in these

schools is wholly inadequate and inappropriate to provide the secular education required by the

NYCEL.  YAFFED's advocacy led to the filing of two bills in the New York State Legislature

which sought to "give teeth to existing legislation" requiring nonpublic schools to comply with

---

[19]  *Id.*

[20]  *See id.* at ¶¶ 43-49.

[21]  *Id.*

[22]  *Id.* at ¶ 53.

[23]  *Id.*; *see also* Compl. Ex. 8.

[24]  Compl. ¶ 56.

6

the NYCEL.[25]  In late 2017, YAFFED's work led to plans by NYSED to revise the state's guidelines to ensure that children in non-public schools receive a "substantially equivalent" education.[26]

Beyond governmental advocacy, YAFFED works to reach out to both the Hasidic community and the greater public to educate and serve as an information source about the pressing issue of non-compliant yeshiva education.[27]  These efforts have included putting up billboards in the Hasidic community stating the requirements that yeshivas are mandated to follow; communicating directly with members of the Hasidic community who are dissatisfied with the secular education that they received or that their children are receiving; and holding press conferences and releasing press statements to publicize the failure of yeshivas to provide the legally-mandated substantially equivalent education and the failure of the New York state and local governments to hold the yeshivas accountable for that failure.[28]

YAFFED has also worked to provide informational resources to those interested in the issue of substandard yeshiva education.[29]  In September of 2017, YAFFED released a report titled *The State of Education in New York City's Hasidic Yeshivas*.[30]  This report contained a primer on the Hasidic community; explanations of the New York law requiring the yeshivas to provide substantially equivalent education; descriptions of the city and state's historic hesitance

---

[25]   *Id.*

[26]   *Id.* at ¶ 57.

[27]   *Id.* at ¶ 58.

[28]   *Id.*

[29]   *See id.* at ¶ 59.

[30]   *Id.*; Dkt. No. 19-1.

to enforce the law; and recommendations for how the situation could be improved going forward.[31]

C.      **The Felder Amendment to N.Y. Educ. Law § 3204(2)**

In 2018, leaders within the ultra-Orthodox community in New York State grew increasingly concerned that the state and New York City would do exactly as YAFFED advocated: begin enforcing the laws requiring yeshivas to provide a substantially equivalent education.[32]  As a result, they began a counter-advocacy campaign, seeking to remove yeshivas from secular oversight entirely.

The ultra-Orthodox community's chief advocate in this campaign was Simcha Felder, New York State Senator for the 17th District.  While Senator Felder is registered as a Democrat, he has caucused since 2012 with Republicans—providing him with immense influence in a state Senate that is almost evenly split between the two parties.[33]  Together with ultra-Orthodox leaders, Senator Felder devised a plan to use this influence to force passage of an amendment to Subsection 3204(2), by issuing a last-minute demand to append the amendment to the passage of the upcoming state budget.[34]

On January 18, 2018, Governor Andrew Cuomo submitted his Executive Budget to the New York state legislature.  The budget did not include any amendments to Section 3204 of the NYCEL.[35]  On February 16 and March 13, 2018, amended versions of the budget were

---

[31]   Compl. ¶ 59.

[32]   *See id.* at ¶ 61.

[33]   *See id.* at ¶¶ 66, 66 n. 22.

[34]   *See id.* at ¶¶ 66-67.

[35]   *See id.* at ¶ 68.

8

submitted, still without any amendments to Section 3204.[36]  In the days leading up to the

budget's April 1, 2018 deadline, however, Senator Felder executed his plan:  he conditioned his

vote on the inclusion of an amendment to Section 3204.[37]  Governor Cuomo, in an effort to

resolve this late-breaking threat, reached out to Senator Felder, who put the Governor in touch

with Grand Rabbi Aaron Teitelbaum. At the end of what was described as a 40 minute phone

call, the parties had reached a deal:  Section 3204(2) would be amended to create a carve-out for

the benefit of certain ultra-Orthodox Jewish non-public schools (the "Felder Amendment").[38]

Rabbi Teitelbaum acknowledged that the motivation to pass the Felder Amendment was to allow

yeshivas to escape accountability for their failures to provide a substantially equivalent

education.[39]  The Felder Amendment was passed on March 30, 2018 and signed into law by

Governor Cuomo on April 12, 2018.[40]

    Several individuals are charged with enforcing the Felder Amendment.  The Board of

Regents is responsible for establishing "rules for carrying into effect the law and policies of the

state, relating to education."[41]  Defendant Betty A. Rosa is the Chancellor of the Board of

Regents, and is responsible for the general supervision of all educational activities within the

state, including determining the educational policies of New York State and carrying into effect

---

[36] *See id.* at ¶ 69.

[37] *See id.* at 70.

[38] *See id.* at ¶ 71; *see also* Compl. Ex. 12 (describing the call as follows: "[T]he deal was struck.  Bill language was agreed to, and they seemed to have the makings of a final agreement that would pull the budget back together once and for all."); Compl. Ex. 17 (describing the contents of the call between Governor Cuomo and Rabbi Teitelbaum and noting that it allegedly lasted 40 minutes).

[39] *See* Compl. ¶¶ 62-65.

[40] *Id.* at ¶¶ 71, 73.

[41] *Id.* at ¶ 21 (quoting N.Y. Educ. Law § 207).

the educational law and policies of the state.[42] The Board of Regents also has the power to

appoint and remove the Commissioner of Education, currently Defendant MaryEllen Elia, who is

charged with enforcing all "laws relating to the educational system of the state" and executing

"all educational policies determined upon by the board of regents."[43]  Commissioner Elia has the

responsibility to supervise the enforcement of Article 65, which includes NYCEL 3204.[44]

Governor Cuomo is the chief executive of the State and has also taken it upon himself to

negotiate the terms of the Felder Amendment.  He has held himself out as controlling the State's

oversight of yeshivas, going so far as to assure religious leaders in the Hasidic community that

the State will not interfere with yeshiva education.  *See* Huang Aff., Exhibits 1-3.

       **D.**    **The Felder Amendment's Effect on YAFFED's Advocacy**

       The Felder Amendment has a concrete impact on YAFFED's advocacy.[45]  The

Amendment has three features that are offensive to YAFFED's mission.  First, it mandates

consideration of the entire curriculum, which necessarily includes Judaic religious studies that

are often delivered in Yiddish and Hebrew, and almost never in English.  Second, there is a

significant risk that the NYCDoE and other local districts will delay, or entirely abandon, their

investigation of yeshivas identified by YAFFED as substandard due to the Felder Amendment.[46]

Finally, the Felder Amendment has significantly impaired YAFFED's work and forced YAFFED

---

[42] *See id.*

[43] *See id.* at ¶ 22 (quoting N.Y. Educ. Law § 305).

[44] *See id.*

[45]  *See id.* at ¶ 91.

[46]  *Id.*  Since the Complaint, the NYCDoE sent a letter to NYSED acknowledging the Felder Amendment, reporting its work to date and asking NYSED for guidance, effectively placing the NYCDoE investigation on hold.  *See* Huang Aff., Exhibit 4.

to shift valuable resources away from its traditional advocacy and education efforts.[47]  Instead of advocating that the state and city enforce the pre-existing law requiring a substantially equivalent education, YAFFED now must focus on opposing the Felder Amendment.[48]  In addition to this shift in advocacy, YAFFED must also shift its educational efforts to inform the public about the Felder Amendment and the impact it will have on the NYCDoE's oversight.[49]  YAFFED has devoted significant resources to combating the Felder Amendment.[50]

## III.   __ARGUMENT__

A court reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in plaintiffs' favor."  *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (internal quotation marks omitted).  In conducting this review, a court is to "construe plaintiffs' complaint liberally" to "'determine whether the[ allegations] plausibly give rise to an entitlement to relief.'"  *Id.*  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (internal quotation marks omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is treated in much the same way as a motion pursuant to Rule 12(b)(6).  *See USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 105 n.4 (2d Cir. 2012) (treating a motion under 12(b)(1) and 12(b)(6) similarly).  As with a 12(b)(6) motion, "'[i]n resolving a motion to dismiss under

---

[47]  Compl. ¶ 92.

[48]  *Id.*

[49]  *Id.*

[50]  *Id.* at ¶ 93.

Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.'" *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).  The task of the court "is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal quotation marks and alterations omitted).

YAFFED notes that the Motion does not challenge YAFFED's claim on the merits, apparently conceding that, if the facts are as YAFFED alleges in the Complaint, YAFFED has stated a constitutional claim upon which relief can be granted.

### A.   YAFFED Has Standing to Challenge the Unconstitutional Felder Amendment

Defendants first challenge YAFFED's standing to bring this case.  This challenge is without merit.  To establish Article III standing, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  It is well-established in the Second Circuit that an organization, such as YAFFED, can bring a 42 U.S.C. § 1983 suit on its own behalf if it can "independently satisfy the requirements of Article III standing as enumerated in *Lujan*." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011).

As a preliminary matter, Defendants argue YAFFED lacks standing because it has merely "chosen" to focus its advocacy on combating the Felder Amendment.  YAFFED's mission and advocacy, however, is premised on the inadequacy of Judaic religious studies in meeting the

needs for secular education for yeshiva students.  *See* YAFFED, *Non-Equivalent: The State of Education in New York City's Hasidic Yeshivas*, Sept. 2017 ("Report") at 2 ("Yaffed was founded to address the lack of secular education in many ultra-Orthodox schools.").[51]  The Felder Amendment's directive that Judaic studies must be considered incorrectly suggests that Judaic studies are an adequate replacement for secular education.  This has a profound and continuous impact on YAFFED's work and mission while the Felder Amendment remains in effect.

### 1.      YAFFED Has Suffered a Concrete Injury

The Complaint plausibly alleges that YAFFED has suffered a concrete injury sufficient to confer standing.  The Second Circuit has held that "only a 'perceptible impairment' of an organization's activities is necessary for there to be an 'injury in fact.'"  *Nnebe*, 644 F.3d at 157 (quoting *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993)).  In *Nnebe*, the New York Taxi Drivers Alliance (the "NYTWA") sued New York City regarding its policy of suspending taxi drivers immediately when they were arrested on certain criminal charges.  *See id.* at 150.  The district court dismissed the NYTWA's claim from the case for lack of standing, holding that the NYTWA only provided evidence that "the association infrequently 'counsels drivers whose licenses have been suspended pursuant to the challenged policy'" and that it had failed to "identif[y] the priorities on which it was unable to focus as a result" of the challenged New York City policies.  *See id.* at 156.  The Second Circuit disagreed with the district court's standing analysis.  *See id.*  The court held that the NYTWA's expense of resources to assist the members subject to the policy, even if only a few a year, constituted a "perceptible opportunity cost" because "the expenditure of resources that could be spent on other activities 'constitutes far

---

[51]   Dkt. No. 19-1.

more than simply a setback to [NYWTA's] abstract social interests.'"  *Id.* at 157 (quoting

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

YAFFED has suffered the same damage in this case.  YAFFED has been forced to shift

resources away from its original operations, pushing for enforcement of Section 3204(2), to

opposing the Felder Amendment.  *See* Compl. ¶ 92.  YAFFED has also been forced to radically

alter its educational efforts.  Prior to the passage of the Felder Amendment, YAFFED spent

considerable time and resources educating the public about the failure of yeshivas to provide a

substantially equivalent education, including producing an 80-plus page report on the topic.  *See*

*id.* at ¶ 59.  Now, however, YAFFED must expend resources to educate the public about the

effects of the Felder Amendment (including the uncertainty relating to its enforcement by the

NYCDoE and the NYSED) and its likely elimination of parity between the secular education

provided in public schools and the education mandated in yeshivas.  *See id.* at ¶ 92.

To put it into concrete terms, YAFFED's methods prior to the Felder Amendment

involved pushing for enforcement of New York Education Law 3204's mandate of substantial

equivalence between public and nonpublic schools.  Since the passage of the Felder Amendment,

YAFFED must now divert resources from enforcement toward (1) educating the public about the

new requirements under the Felder Amendment; (2) advocating for agencies to implement the

Felder Amendment in a way that minimizes its detrimental impact on yeshiva education, and (3)

challenging the constitutionality of the Felder Amendment.  These costly diversions more than

satisfy the "perceptible impairment" standard applied in *Nnebe* and demonstrate that YAFFED

has suffered an injury.  *See Nnebe*, 644 F.3d at 156-57 (holding that "scant" evidence of

diversion of resources satisfied "perceptible impairment" standard for standing); *see also Islamic*

*Society of Fire Dept. Pers. v. City of New York*, 205 F. Supp. 2d 75, 89 (E.D.N.Y. 2002) (finding

14

organizational standing for Establishment Clause claim where defendants' actions "caused a significant drain on the [organization]'s resources").

Despite Defendants' arguments, *Nnebe* stands for the proposition that having to divert resources in response to a challenged action constitutes a sufficient injury for Article III purposes.  As discussed above, YAFFED has diverted significant resources in response to the Felder Amendment and has demonstrated specific concrete injury.  Compl. ¶¶ 91-93.  Nor is this case an example of "manufactured litigation."  *Nnebe*, 644 F.3d at 157.   YAFFED has not "troll[ed] for grounds to litigate," but rather YAFFED was forced to bring suit (and incur further drain on available resources) because the Felder Amendment, in endorsing a religious curriculum, represents an existential threat to YAFFED's mission to ensure that yeshiva students receive a proper secular education.  *See* Compl. ¶¶ 52, 89-91, Report at 2.

As noted above, YAFFED has expended, and continues to expend, resources to pursue this litigation.  Defendants argue that these expenditures are insufficient to establish standing, citing *Mental Disability Law Clinic, Touro Law Center v. Hogan*.  Mot. at 14.  This citation is puzzling, however, as *Hogan* says the ***exact opposite***:  "This Court has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing."  519 F. App'x. 714, 717 (2d Cir. 2013).  In fact, the defendant in that case made the same argument Defendants make in this case, arguing that "[the plaintiff] has not suffered an injury in fact because the [plaintiff] 'bases its assertion of injury solely on the resources that it has expended to pursue affirmative litigation against [the defendant's] counterclaim practice—with the majority of those resources spent on this very case."  *Id.*  The court rejected this argument as it "disregard[ed] established Second Circuit precedent."  *Id.*; *see also Nnebe*, 644 F.3d at 157 ("We recognize that some circuits have read *Havens Realty*

15

differently than we read it in *Ragin* and have emphasized that litigation expenses alone do not constitute damage sufficient to support standing. . . . Nevertheless, *Ragin* remains good law in this Circuit."). Defendants ask this Court to disregard the same precedent. This Court should reject this invitation.[52]

Defendants argue that the fact the Felder Amendment threatens to render some of YAFFED's past work moot is insufficient to confer standing. In doing so, Defendants mischaracterize the impact on YAFFED's advocacy as a past injury. But YAFFED's advocacy included work to press NYCDoE to investigate and oversee the adequacy of secular instruction provided in yeshivas. *See* Compl. ¶¶ 53-54. That work had been ongoing and has been effectively halted by the Felder Amendment because the Amendment is seen as ratifying the use of Judaic Studies in evaluating "substantial equivalence" and as absolving the NYCDoE of its oversight responsibility for yeshivas. *Id.* at ¶¶ 63-64, 82. This is a real and continuous injury to YAFFED caused by the Felder Amendment. It places a roadblock directly in YAFFED's way, rendering YAFFED unable to proceed with its work. The Felder Amendment changes the oversight from local districts to the State Education Department, thereby creating additional opportunities for delay and for existing investigations to be stalled. It requires consideration of the entire curriculum, which for yeshivas means overtly religious instruction. As YAFFED's

---

[52] Defendants' quotation of *Steel Co. v. Citizens for a Better Environment* takes that statement out of context. Mot. at 14. In that case, the Supreme Court was analyzing whether reimbursement of litigation costs would satisfy the third prong of *Lujan*, redressability, and ***not*** the requirement that there be an injury in fact. *See* 523 U.S. 83, 105 (1998) (declining to reach whether the plaintiffs alleged a concrete injury-in-fact because "the complaint fail[ed] the third test of standing, redressability"). The Court rejected the complaint because "[t]he litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Id.* at 107. YAFFED, of course, seeks the invalidation of the Felder Amendment on constitutional grounds, and thus its complaint does not suffer from the same infirmity as the complaint in *Steel Co.*

16

mission is premised on fighting the idea that religious studies can be used in lieu of secular instruction in determining substantial equivalence, *see* Dkt. No. 19-1 at 2, YAFFED's very reason for being is threatened by the Felder Amendment.  YAFFED's prior work is at risk fo being rendered moot because the Felder Amendment stops YAFFED from being able to move forward.  This injury is clearly prospective, as the Felder Amendment stands in YAFFED's way every day it is in place, and it is that injury which is relevant to YAFFED's allegation that its work may in part be rendered moot.

In their motion, Defendants invent a test for organizational standing based on a diversion of resources.  Mot. at 16.  But Defendants notably cite no case purporting to show that their "test" is the law; the cases discussed by Defendants in which standing was found do not purport to *limit* standing to those factual circumstances.  Instead, those cases merely found that standing existed and thus stand for the unremarkable proposition that there are many factual circumstances that will give rise to the legal requirement of standing.  The law remains that all that is necessary, "the irreducible constitutional minimum," is an "injury in fact."  *Lujan*, 504 U.S. at 560; *see also Havens*, 455 U.S. at 372 ("[T]he Art. III minima of injury in fact[ is] that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." (internal quotation marks omitted)).  As the court in *Nnebe* stated, the Second Circuit has "recognized that only a 'perceptible impairment' of an organization's activities is necessary for there to be an 'injury in fact.'"  644 F.3d at 157.  YAFFED has more than met this standard.

Defendants also argue, in their brief in opposition to YAFFED's motion for a preliminary injunction, that the impact on YAFFED's fundraising efforts, including that "potential individual donors have expressed a decreased willingness to donate after passage of the amendment" and

17

that staff have less time to apply for grant funding, "is pure speculation that does not give rise to the sort of 'real not abstract' injury necessary to establish Article III standing."  Dkt. 40 at 18. There is nothing speculative about these facts describing events that have actually occurred or that are YAFFED's description of its work.  Naftuli Moster, YAFFED's founder, stated in his declaration that he has been told by potential funders that "they are hesitant to donate[] because in light of the [Felder] Amendment they view YAFFED's work as a lost cause."  Dkt. No. 19 at ¶ 58.  Harm to an organization's reputation can satisfy the first prong of *Lujan*'s standing inquiry. *See Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 650 (2d Cir. 1998); *see also Islamic Society of Fire Dept. Personnel*, 205 F. Supp. 2d at 89 (holding that damage to reputation that impedes organization's recruitment efforts is sufficient injury in fact).  The diversion of resources away from pursuing funding, forced by YAFFED's need to combat the Felder Amendment, is also a "perceptible opportunity cost" sufficient to confer standing.  *See Nnebe*, 644 F.3d at 157.

For the reasons above, YAFFED has properly alleged an injury-in-fact.

## 2.     The Injury Is Fairly Traceable to the Actions of Defendants

The second prong of the *Lujan* standard requires that "the plaintiff's injury be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Carter*, 822 F.3d at 55 (quoting *Lujan*, 504 U.S. at 560 (alterations in original)).  The Second Circuit has recognized that this prong of the *Lujan* analysis "does not create an onerous standard."  *Id.*  Indeed, Defendants make no substantial argument on this point in their brief.  The diversion of resources to combat the Felder Amendment is causally linked to the passage of the Felder Amendment.  Also, the Felder Amendment is not the "result [of] the independent action of some third party not before the court."  *Id.*  As alleged in the Complaint, Defendant Cuomo was deeply involved in the

negotiations of its final form.  *See* Compl. ¶ 71; *id.* Ex. 12.  Defendants Rosa and Elia are deeply

involved in the enforcement of NYCEL and the Felder Amendment.  Compl. ¶¶ 21-22, 57.

**3.     YAFFED's Injury Would Be Redressed by a Favorable Decision
From This Court**

The third and final prong of the *Lujan* analysis is that an order of the Court be capable of

redressing the injury suffered by the plaintiff.  *Lujan*, 504 U.S. at 561.  YAFFED's injuries,

discussed at length above, would necessarily be redressed by a holding that the Felder

Amendment is unconstitutional.  *See Larson v. Valente*, 456 U.S. 228, 242 (1982) (holding that

injury caused by challenged statute would be redressed if statute were declared unconstitutional).

And as with traceability, discussed above, Defendants make no real argument in their motion

that, if YAFFED's injuries are sufficient to convey standing, those injuries would not be

redressed by a favorable decision by this court.  Were this Court to grant YAFFED the relief it

seeks, the statutory scheme would return to what it was prior to the passage of the Felder

Amendment, and YAFFED could return to advocating for the enforcement of Subsection

3204(2)'s "substantial equivalence" under the old, religious-neutral, scheme.  A decision by this

court enjoining the Defendants from implementing the Felder Amendment would thus redress

YAFFED's injury.

For the reasons discussed, *supra*, the Defendants' motion to dismiss for lack of standing

should be denied.

**B.     <u>YAFFED's Challenge to the Felder Amendment Is Ripe for This Court's
Decision</u>**

Defendants' arguments that YAFFED's challenge to the Felder Amendment is not yet

ripe also fail.  "The purpose of the ripeness requirement is to ensure that a dispute has generated

injury significant enough to satisfy the case or controversy requirement of Article III of the U.S.

Constitution." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d

19

Cir. 2002).  The Second Circuit has recognized that this requirement of "constitutional ripeness" is properly seen as referencing "the first *Lujan* factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'"  *Nat'l Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan*, 504 U.S. at 560).  As discussed above, YAFFED's injury satisfies the first *Lujan* factor, and thus constitutional ripeness is present in this case.  The prudential ripeness doctrine, which Defendants focus their arguments on, looks to two factors: the fitness of the issues raised by the parties for judicial decision and the potential hardship of withholding decision on those issues.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (abrogated on other grounds).[53]  Analysis of both factors in this case demonstrate that YAFFED's claims are unquestionably justiciable.

### 1.    The Facial Constitutional Challenge to the Felder Amendment Is Fit for Judicial Decision

Courts have recognized that a facial challenge to a statute is, by its very nature, ripe for judicial decision.  *See Susan B. Anthony List*, 134 S. Ct. at 2347 (holding that facial challenge under the First Amendment "presents an issue that is purely legal, and will not be clarified by further factual development" (internal quotation marks omitted)).  The main concern of the fitness prong of the ripeness test is avoiding federal courts from being "entangl[ed] . . . in abstract disagreements" because the factual context is unclear.  *See Dougherty*, 282 F.3d at 90.  In a facial challenge, however, there is no benefit to delaying decision, as all the court must do is

---

[53] Notably, the Court has questioned "the continuing vitality of the prudential ripeness doctrine," the doctrine Defendants invoke here, because of its "tension with [the Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014).  But the court need not resolve that tension either because, as in *Susan B. Anthony List*, "the 'fitness' and 'hardship' factors are easily satisfied here."  *Id.*

determine whether the statute itself is constitutional.  *See United States v. Fell*, 360 F.3d 135, 139-40 (2d. Cir. 2004) (recognizing that "challeng[ing] the facial constitutionality" of a statute "is a pure question of law that is eminently fit for judicial review" (internal alterations and quotation marks omitted)); *see also Awad v. Ziriax*, 670 F.3d 1111, 1124-25 (10th Cir. 2012) (holding that Establishment Clause challenge to a statute "does not require [the court] to evaluate specific factual context" or "[f]urther factual development" and thus "is fit for judicial review"). YAFFED's facial challenge to the Felder Amendment thus satisfies the first prong of the prudential ripeness analysis.

Defendants attempt to muddy the waters, by pointing to agency delay in implementing the Felder Amendment.  *See* Mot. at 16-17.  But this is irrelevant to YAFFED's facial challenge that the Felder Amendment violates the Establishment Clause, as there is no agency action that could cure the statute's constitutional infirmities.  *See Sante Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 315-16 (2000); *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581 (1985) ("The issue presented in this case is purely legal, and will not be clarified by further factual development.").  *Sante Fe* is instructive, even though that case does not explicitly engage in ripeness review.  In that case, a challenge was brought under the Establishment Clause to a school district's policy of permitting prayer prior to high school football games.  *See* 530 U.S. at 301.  The defendants argued, much as Defendants do here, that any facial challenge was premature, arguing "Santa Fe's Football Policy cannot be invalidated on the basis of some 'possibility or even likelihood' of an unconstitutional application."  *Id.* at 314.  The Supreme Court rejected this argument, noting that Establishment Clause cases do not "focus[] solely on the possible applications of the statute, but rather . . . consider[] whether the statute has an unconstitutional purpose."  *Id.*  Any agency implementation of the Felder Amendment is

21

irrelevant if, as YAFFED has alleged, the amendment has no secular purpose in violation of the Establishment Clause of the First Amendment.[54]  That claim is clearly fit for judicial review.

### 2.   Withholding Judicial Decision Would Impose a Hardship on YAFFED and the Public

A failure to decide the issues YAFFED raises would also impose hardships on YAFFED and the public.  As discussed above, the effect on YAFFED's advocacy is continuous as long as the unconstitutional Felder Amendment is in effect.  *See* Section III.A.1, *supra*; *see also Santa Fe Ind. Sch. Dist.*, 530 U.S. at 316 ("[T]he simple enactment of this policy, with the purpose and perception of school endorsement of student prayer, was a constitutional violation.  We need not wait for the inevitable to confirm and magnify the constitutional injury.").  YAFFED's injury has already been well demonstrated.

Furthermore, the uncertainty of the NYSED's application of the Felder Amendment actually imposes additional hardships.  As long as it is unclear how the Felder Amendment will be implemented, YAFFED's advocacy is necessarily impeded as it is impossible to effectively push for enforcement.  And this hardship is not limited to YAFFED:  the dubious constitutionality of the Felder Amendment and its uncertain enforcement leaves the yeshiva school system in limbo.  And even if NYSED takes action by imposing stricter guidelines for yeshivas, that action will come under scrutiny and be the subject of further litigation from those who oppose oversight, placing a burden on the State, these schools and the children who are educated in them. Given the purely legal nature of the issues in this case, and the clear injury that YAFFED has already suffered, "[n]othing would be gained by postponing a decision, and the

---

[54]   Defendants have failed to even argue in opposing YAFFED's motion for a preliminary injunction that a secular legislative purpose exists for the Felder Amendment.

public interest would be well served by a prompt resolution of the constitutionality of" the Felder

Amendment.  *Thomas*, 473 U.S. at 582.

    **C.**    <u>**The Eleventh Amendment Does Not Require Governor Cuomo and**</u>
            <u>**Chancellor Rosa Be Dismissed From This Suit**</u>

        Defendants' reliance upon the Eleventh Amendment to dismiss Governor Cuomo and

Chancellor Rosa from this case is misplaced.  Although the Eleventh Amendment does bar suits

against States generally, and can extend to state officials, the Supreme Court's decision in *Ex*

*parte Young* provides an important exception to that general rule.  The Supreme Court has stated

that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment

bar to suit, a court need only conduct a straightforward inquiry into whether the complaint

alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective."  *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645

(2002) (internal quotation marks omitted).  That is what YAFFED alleges and seeks in this case.

        To be sure, the Court has identified exceptions to the exception created by *Ex parte*

*Young*, barring its use to obtain an injunction requiring the payment of funds from a State's

treasury or an order requiring specific performance of a contract by a State.  *See Virginia Office*

*for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256-57 (2011).  The Court has also recognized

that it shall not apply where Congress has put into place a comprehensive remedial scheme that

demonstrates Congress wishes to displace *Ex parte Young*.  *See In re Dairy Mart Convenience*

*Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44,

59 (1996)).  It has also held that *Ex parte Young* "cannot be employed where certain sovereignty

interests are present, as they are when the administration and ownership of state land is

threatened."  *Id.* at 372.  Nor can *Ex parte Young* "foreclose an Eleventh Amendment challenge

where the official action is asserted to be illegal as a matter of state law alone." *Papasan v. Allain*, 478 U.S. 265, 277 (1986). None of these exceptions, however, apply to this case.

Defendants cite a string of cases to support their argument that Defendants Cuomo and Rosa should be dismissed from this case, but none are applicable to the facts alleged by YAFFED. The underlying problem with Defendants' arguments under the Eleventh Amendment is their false premise that YAFFED "alleges merely that the Governor signed into law the bill that included the Amendment and that the Chancellor has the power to remove the Commissioner and has 'general supervision of all educational activities within the state.'" Mot. at 20 (quoting Compl. ¶ 21). But this ignores the specificity of YAFFED's allegations. With regard to Governor Cuomo, the Complaint alleges specific facts about Governor Cuomo's negotiation with Grand Rabbi Aaron Teitelbaum about the passage of the Felder Amendment and its effects. Defendants' reliance on *Kelly v. New York Civil Service Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016), is misplaced. In *Kelly*, the Second Circuit, in a non-precedential summary order, affirmed the district court's decision that *Ex parte Young* did not apply to members of the New York State Civil Service Commission sued in that case. *See id.* But there is nothing in that terse summary order to suggest that the *pro se* plaintiff in that case alleged facts demonstrating that the state official was heavily involved in both the genesis and enforcement of the challenged law. In this case, by contrast, YAFFED has alleged significant involvement by Governor Cuomo, including the Governor's in-depth participation in the crafting of the Felder Amendment, evidenced by his lengthy call with Grand Rabbi Aaron Teitelbaum. Compl. ¶ 71. Nor is Governor Cuomo's involvement limited to the past, as he has promised Orthodox leaders such as Grand Rabbi Zalman Teitelbaum that he will not allow interference with yeshivas. *See* Huang Aff., Exs. 1-3. For the same reason, Defendants' reliance upon *Steinberg v. Elkman* is

24

unavailing. *See Steinberg v. Elkman*, 666 F. App'x 26, 28 (2d Cir. 2016) ("[Plaintiff] did not

seek prospective relief based on an ongoing violation of federal law but instead sought

readjudication of his state law claims and, in any event, Governor Cuomo had no connection

with enforcing or reviewing decisions rendered by the state judiciary in the circumstances

presented here").

It is also emphatically not the case that YAFFED has only alleged that Defendant

Cuomo's only connection to the Felder Amendment is his general enforcement duty to "take care

that the laws are faithfully executed," and thus the vast majority of the cases Defendants cite are

inapposite. *See Aron v. Becker*, 48 F. Supp. 3d 347, 368 (N.D.N.Y. 2014) ("With respect to

Governor Cuomo, the vast majority of courts to consider this issue have held that ***a state***

***official's duty to execute the laws is not enough by itself*** to make that official a proper party in a

suit challenging a state statute." (internal quotation marks and alterations omitted) (emphasis

added)); *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) ("Here, Plaintiff is

suing [Governor] Brown in his official capacity because 'the Governor has the supreme

executive power in the State and is responsible for the faithful execution of the laws of the State

of California.'" (internal alterations omitted)); *Wang v. Pataki*, 164 F. Supp. 2d 406, 410

(S.D.N.Y. 2001) (holding that sovereign immunity applied where only connection alleged was

that "the Governor 'is vested with the executive power of the State of New York and is required

that the laws of the State of New York are faithfully and fairly executed'"); *Citizens Union of*

*City of New York v. Att'y Gen. of New York*, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017)

(holding that "the Governor's general duty to 'take care that the laws are faithfully executed'" is

insufficient to defeat Eleventh Amendment immunity); *Doe v. Jindal*, 2015 WL 7300506, at *5

(E.D. La. Nov. 18, 2015) (holding that allegation that governor "has a duty to faithfully support

the constitution and laws of the state and . . . see that the laws are faithfully executed" and appoint the heads of each department in Louisiana's executive branch insufficient to defeat Eleventh Amendment immunity).  Governor Cuomo is a proper party and Defendants' motion to dismiss him from this case based on the Eleventh Amendment should be denied.

With regard to Chancellor Rosa, she is the chancellor of the Board of Regents whose responsibility is oversight of the operations of the Education Department and who is intimately involved with the implementation of Section 3204.  It is noteworthy that the vast majority of the cases Defendants cite relate to the Governor or the Attorney General, not the Regents Chancellor.  The only case that does not is *Kelly*, which is inapplicable because YAFFED has alleged specific facts showing Chancellor Rosa's connection to the Felder Amendment that go beyond her general enforcement duty as Chancellor of the Board of Regents.  Chancellor Rosa herself has made clear that she is directly involved in enforcing Section 3204.  *See* Compl. ¶ 57; Leslie Brody, *New York State Revising Private Schools Guidelines*, Wall St. J. (Dec. 17, 2017, 4:35 PM), https://www.wsj.com/articles/new-york-state-revising-private-schools-guidelines-1513546538.[55]  Other press has confirmed the Complaint's allegation that Chancellor Rosa is intimately involved in enforcement.  *See also* Diane Ravitch, *Why is New York Condoning Illiteracy?*, Diane Ravitch's Blog (Apr. 4, 2018), https://dianeravitch.net/2018/04/04/why-is-new-york-condoning-illiteracy/#comments (Chancellor Rosa commenting that "[t]he purpose of updating the guidance [under the Felder Amendment] remains the same, which is to ensure that all New York state students, whether they attend a public or nonpublic school, receive a quality

---

[55]   This article was cited in the Complaint, at footnote 12 to paragraph 57.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that, when ruling on a motion to dismiss, "courts must consider . . . in particular, documents incorporated into the complaint by reference").

education" and stating that "[w]e are in the process of reviewing the change in law"); Paul

Brooks, *New state budget changes wording about education in yeshivas*, Times Herald-Record

(Apr. 8, 2018. 7:25 PM), https://www.recordonline.com/news/20180408/new-state-budget-

changes-wording-about-education-in-yeshivas ("The State Education Department said it still

plans on presenting its new guidelines to the state Board of Regents at its May meeting and

starting implementation immediately after that, spokeswoman Emily DeSantis said.").

Chancellor Rosa thus has a specific connection and responsibility with regard to the Felder

Amendment and is directly involved with the development and oversight of guidelines

implementing its effects.  She is a proper party in this case as well and Defendants' motion to

dismiss based on the Eleventh Amendment as to Chancellor Rosa should also be denied.

## IV.    **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants'

motion in its entirety.

Dated:  October 16, 2018

`

Respectfully submitted,

By: _____ */s/ Eric Hui-chieh Huang*___

Eric Hui-chieh Huang
Samuel C. Kitchens
Thomas A. Bridges
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
erichuang@quinnemanuel.com
samuelkitchens@quinnemanuel.com
thomasbridges@quinnemanuel.com

***Pro-bono Counsel for Plaintiff Young
Advocates for Fair Education
("YAFFED")***

27