UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
YOUNG ADVOCATES FOR FAIR EDUCATION,   :
                                                                        :
                                        Plaintiff,            :            18-cv-04167 (ILG) (JO)
                                                                        :
            - against -                                       :
                                                                        :
ANDREW CUOMO, in his official capacity, *et al.*,   :
                                                                        :
                                        Defendants.       :
-------------------------------------------------------------- X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS

BARBARA D. UNDERWOOD
Attorney General of the
State of New York
28 Liberty Street
New York, NY 10005

*Attorney for Defendants*

Andrew Amer
 Special Litigation Counsel
Yan Fu
 Assistant Attorney General
  *of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

    I.     YAFFED'S "DIVERSION OF RESOURCES" THEORY DOES NOT
         CONSTITUTE INJURY IN FACT UNDER SECOND CIRCUIT
         PRECEDENT ............................................................................................. 3

    II.    THE COURT CANNOT PRESENTLY ADJUDICATE YAFFED'S
         FACIAL CHALLENGE BECAUSE THE IMPACT OF THE
         AMENDMENT ON THE SUBSTANTIAL EQUIVALENCE
         DETERMINATION IS UNKNOWN ABSENT REVISED
         GUIDELINES ............................................................................................ 9

       A.    The Issue Raised By YAFFED Is Not Fit For Judicial Review ............................ 10

       B.    YAFFED Faces No Hardship Without Judicial Review ........................................ 13

    III.   THE GOVERNOR AND CHANCELLOR ARE IMMUNE FROM
         SUIT BECAUSE THEY HAVE NO ENFORCEMENT ROLE
         UNDER THE AMENDMENT .................................................................... 14

CONCLUSION ...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Aron v. Becker*, 48 F. Supp. 3d 347 (N.D.N.Y. 2014) .................................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 8

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ........................................................... 12

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868
   F.3d 104 (2d Cir. 2017) .......................................................................................... 2, 5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................. 8, 16

*Citizens Union of the City of New York, v. Attorney General of New York*, No. 16
   Civ. 9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017) ................................... 14, 16

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ............................................. 9

*Ctr. for Food Safety v. Price*, No. 17 Civ. 3833, 2018 WL 4356730 (S.D.N.Y.
   Sept. 12, 2018) ............................................................................................................ 5

*Doe v. Jindal*, No. 15-1283, 2015 WL 7300506 (E.D. La. Nov. 18, 2015) ................. 17

*Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83 (2d Cir.
   2002) ......................................................................................................................... 12

*Ex parte Young*, 209 U.S. 123 (1908) .......................................................................... 14

*In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367 (2d Cir. 2005) ................... 14

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998) ............................. 9

*Islamic Society of Fire Dept. Pers. V. City of New York*, 205 F. Supp. 2d 75
   (E.D.N.Y. 2002) .......................................................................................................... 6

*Kelly v. New York State Civil Service Commission*, 632 F. App'x 17 (2d Cir.
   2016) ......................................................................................................................... 14

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ............................................. 8

*Mental Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714 (2d
   Cir. 2013) .................................................................................................................... 7

*N.Y. Civil Liberties Union v. N.Y. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) ............ 6

*Nichols v. Brown*, 859 F. Supp. 2d 1118 (C.D. Cal. 2012) ......................................... 16

*Nnebe v. Davis*, 644 F.3d 147 (2d Cir. 2011) ............................................................................ 2, 5

*Olsen v. Stark Homes, Inc.*, 759 F.3d 140 (2d Cir. 2014) .............................................................. 6

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) ........................................................ 11, 12

*Sierra Club v. Morton*, 405 U.S. 727(1972) ............................................................................... 5

*Steinberg v. Elkman*, 666 F. App'x 26 (2d Cir. 2016) ................................................................ 14

*Susan B. Anthony List*, 134 S. Ct. 2334 (2014) ........................................................................ 12

*Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568 (1985) ................................................ 12

*United States v. Fell*, 360 F.3d 135 (2d Cir. 2004) .................................................................... 12

*Wang v. Pataki*, 164 F. Supp. 2d 406 (S.D.N.Y. 2001) ............................................................. 16

**Statutes**
N.Y. Education Law § 3204 .......................................................................................................... 10

Defendants Governor Andrew Cuomo, Board of Regents Chancellor Betty Rosa, and Commissioner of Education MaryEllen Elia, sued in their official capacities, respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint filed by Plaintiff YAFFED pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In its opposition, YAFFED fails to articulate any harm it suffers as a result of the Amendment that rises to the level of injury in fact required to confer Article III standing under settled Second Circuit precedent.  YAFFED relies on a "diversion of resources" theory, positing that: because of the Amendment, YAFFED purportedly must divert resources it would have used for other purposes to oppose the Amendment through funding this litigation, educating the public about the Amendment, and pushing SED for favorable implementation of the Amendment. YAFFED, however, fails to answer the simple question posed by Defendants in their moving brief – *i.e.*, if YAFFED's need to shift resources toward litigation, lobbying and education to challenge the Amendment is enough to confer standing, then wouldn't every association challenging a statute always have standing, thus rendering the standing requirement meaningless?  YAFFED ignores this question because the obvious answer is "yes," an answer Article III and the case law do not permit.

YAFFED fundamentally misconstrues Second Circuit precedent that find standing where an organization diverts resources.  In such cases, the organization is forced to divert resources in order to combat the harmful effects that the challenged law has *on the services that the*

---

[1]  The defined terms used in this reply brief are the same as those used in Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss, ECF No. 34 ("Opening Br.").

*organization provides to those individuals (its members) that the law targets.* For example, a union representing taxi drivers that provides free counseling to its members had standing to challenge a law resulting in increased taxi license suspensions because it increased the number of members requiring the union's counseling services, thereby increasing the costs of the union's operations. *Nnebe v. Davis*, 644 F.3d 147, 156 (2d Cir. 2011). Similarly, an association that assists in organizing day laborers had standing to challenge an ordinance requiring day laborers to disperse because it forced the association to expend greater resources in locating the day laborers to help them organize. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017).

There is no analogous impairment of YAFFED's mission-related activities. As conceded by YAFFED's allegations, despite the Amendment YAFFED continues to educate the public and elected officials about the state of education in yeshivas and to lobby for reform. Moreover, YAFFED provides no services to yeshiva students and therefore has not (and cannot) allege any impairment of the type found by the Second Circuit to support standing in *Nnebe* and *Centro*. Rather, as a result of the Amendment, YAFFED has allegedly suffered nothing more than a "setback to [its] abstract social interests." *Nnebe*, 644 F.3d at 157.

Nor has YAFFED provided any explanation in its opposition for how this case can possibly be ripe for adjudication prior to SED issuing its revised guidelines. The Amendment requires SED to consider certain enumerated factors, but provides *no limitation* on the Commissioner's discretion to consider other, additional factors. Conceding the broad discretion left to the Commissioner under the language of the Amendment, YAFFED alleges in its Complaint that it is "unclear" whether the factors listed in the Amendment supplement or supplant the factors that previously existed under the Education Law, and that the effect of the

Amendment on SED's revised guidelines remains uncertain.  These allegations confirm that

YAFFED's claim is not ripe for adjudication until SED issues its revised guidelines, clarifying

what effect, if any, the Amendment will have on the Commissioner's substantial equivalence

determination for nonpublic schools falling within the Amendment's scope.  YAFFED cannot

escape this conclusion by arguing in its opposition, contrary to its allegations, that SED's revised

guidelines will have no relevant impact on how the Commissioner implements the Amendment.

Consistent with YAFFED's allegations, and common sense, SED's revised guidelines will

clarify how the Commissioner will apply the Amendment, and more specifically what other

additional factors the Commissioner will consider as part of the substantial equivalence

determination, which directly affects the merits of YAFFED's Establishment Clause claim.

Finally, YAFFED fails to allege that Governor Cuomo and Chancellor Rosa have any

connection to the enforcement of the Amendment, which is necessary to invoke the *Ex parte*

*Young* exception to Eleventh Amendment immunity.  In its opposition, YAFFED alludes to the

Governor's purported involvement in pre-enactment negotiations over the Amendment and the

Chancellor's general oversight of the Education Laws, but this is insufficient to abrogate the

Governor's and Chancellor's immunity from suit under well-established precedent.  To the

extent the Court does not dismiss this case in its entirety, at a minimum, the Complaint should be

dismissed as against the Governor and Chancellor on Eleventh Amendment grounds.

## ARGUMENT

### I.  YAFFED'S "DIVERSION OF RESOURCES" THEORY DOES NOT CONSTITUTE INJURY IN FACT UNDER SECOND CIRCUIT PRECEDENT

As discussed in Defendants' opening brief, YAFFED does not have Article III standing

to bring this lawsuit because it has not alleged the requisite injury in fact.  In opposition,

YAFFED relies on cases where courts in the Second Circuit have held that a plaintiff-membership organization has standing because the defendant's conduct interferes with or burdens the organization's ability to carry out its usual activities.  Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss The Complaint, ECF No. 47 ("YAFFED Opp."), at 13-17.   Its reliance on these cases is misplaced; as YAFFED alleges in the Complaint, it is an "advocacy group" whose work "involves raising awareness about the importance of general studies education and encouraging elected officials, state and local agency officials, and the leadership of the ultra-Orthodox world to act responsibly in preparing their youth for economic sufficiency and for broad access to the resources of the modern world."  Compl. ¶¶ 18-19. YAFFED claims that, prior to the passage of the Amendment, it focused on lobbying for enforcement of § 3204's mandate of substantial equivalence between public and nonpublic schools.  YAFFED Opp. at 14.  YAFFED's work includes advocacy aimed at New York State and New York City officials, outreach efforts aimed at the Hasidic community, and education efforts aimed at raising awareness of the issue with the general public.  Compl. ¶ 52.  Following passage of the Amendment, "YAFFED must now divert resources from enforcement toward (1) educating the public about the new requirements under the Felder Amendment; (2) advocating for agencies to implement the Felder Amendment in a way that minimizes its detrimental impact on yeshiva education, and (3) challenging the constitutionality of the Felder Amendment."  Opp. Br. at 14. Thus, it is clear from YAFFED's own submissions that despite passage of the Amendment, YAFFED has continued all of its mission-related education and lobbying activities, albeit refocused on the Amendment.

It is axiomatic that injury in fact may not be based on an entity's "mere interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is

in evaluating the problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).  In the Second

Circuit, an organization may show that it has sustained injury in fact by demonstrating that its

activities have been "perceptibl[y] impair[ed]" by a defendant because the defendant has caused

it to divert its resources away from its general mission.  *Centro de la Comunidad Hispana de*

*Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017).  Under this theory, the

challenged conduct must force the entity to do something different with its resources from what

it had been doing in the past in order to ameliorate the harmful effects of the challenged conduct

on its mission-related activities.  *See id.* at 110-11 (diversion-of-resources requirement was met

because defendant's anti-solicitation ordinance would cause an entity to reallocate money from

other current activities to pay the increased costs of reaching laborers).

YAFFED primarily cites *Nnebe v. Davis*, 644 F.3d 147 (2d Cir. 2011), in support of its

argument that YAFFED has suffered an injury sufficient to confer standing.  However, as

previously discussed in Defendants' opening brief (Opening Br. at 13-14), the Second Circuit

found that the taxi driver union in *Nnebe* had standing because it was obligated to expend

resources assisting its members, who – as a result of the challenged statute – faced summary

license suspensions, by providing counseling to its drivers, explaining the suspension rules, and

assisting the drivers in obtaining attorneys.  644 F.3d at 156.  *Nnebe* is in line with other Second

Circuit cases holding that, in order to establish standing based on a diversion of resources, the

organization must show "the defendant's conduct interferes with or burdens the organization's

ability to carry out its usual activities."  *Ctr. for Food Safety v. Price*, No. 17 Civ. 3833, 2018

WL 4356730, at *4 (S.D.N.Y. Sept. 12, 2018) (holding that food safety advocacy organizations

lacked standing to challenge FDA rule regarding food manufacturers' disclosure of additives

because the expenditure of resources to research the additives was not an injury sufficiently distinct from the organizations' general missions to protect people from eating unsafe food).[2]

Notably, the plaintiff-organizations in the cases where a court found standing based on a diversion of resources all alleged that they reallocated resources from their regular work with a constituency to combat the harmful effects that the defendant's challenged action had *on that constituency*. *See Centro*, 868 F.3d at 110 ("[I]f the Ordinance achieves one of its principal objectives—disbursement of day laborers—[the organization] will inevitably face increased difficulty in meeting with and organizing those laborers."); *N.Y. Civil Liberties Union v. N.Y. Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012) (finding standing where entity's ability to represent its clients in administrative hearings was "impeded" by the defendant's policy barring public access to such hearings); *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 158 (2d Cir. 2014) (finding standing where entity diverted resources from its housing advocacy and counseling services in order to investigate alleged discriminatory practices toward its clients); *Mental*

---

[2]  In its recently-filed reply brief in support of its motion for a preliminary injunction (ECF No. 49), YAFFED also relies on *Islamic Society of Fire Dept. Pers. V. City of New York*, 205 F. Supp. 2d 75 (E.D.N.Y. 2002), a decision written almost a decade before *Nnebe*.  YAFFED's reliance on *Islamic Society* is likewise misplaced.  In that case, the plaintiff-organization moved to amend its complaint to add a claim based upon the New York City Fire Department's decision not to hire their preferred candidate for Muslim chaplain.  *Id.* at 79.  While this Court found that the plaintiff-organization had standing to sue at least partly due to an alleged "significant drain on the Islamic Society's resources" (*id.* at 89), the decision contains no discussion or details about the nature of the drain on resources.  Instead, the Court focused on the Islamic Society's allegation that, in hiring a different candidate, the FDNY deviated from its prior practice of deferring to community religious leaders (such as the plaintiff) regarding the hiring of chaplains.  *Id.*  The Court also found relevant, for standing purposes, the Islamic Society's allegation that the decision not to hire their preferred candidate for chaplain damaged their ability to recruit new members.  *Id.*  To the extent YAFFED contends *Islamic Society* supports conferring standing on a plaintiff-organization under a diversion of resources theory that does not require a showing of impairment to some mission-related activity, such a contention conflicts with the Second Circuit's later decisions discussed above.

*Disability Law Clinic, Touro Law Ctr. v. Hogan*, 519 F. App'x 714, 716–17 (2d Cir. 2013) (finding standing where legal clinic was forced to divert resources from education and training regarding mental health matters in order to counteract agency's policy of asserting counterclaims for outstanding treatment charges against client patients who sued the agency).  YAFFED has made no such showing that it suffers any analogous impairment; in fact, YAFFED does not allege that it provides any services to yeshiva students, much less services of the type that could arguably be impaired by the Amendment.  Accordingly, YAFFED fails to show injury in fact based on diversion of resources.

YAFFED attempts to deflect from its continued ability to perform unimpaired all of its mission-related activities by arguing that the Second Circuit cases "do not purport to limit standing to those factual circumstances."  YAFFED Opp. at 17.  However, and tellingly, YAFFED does not cite any cases for the broader proposition that an advocacy group has standing to sue government agencies where a change in the law leads the organization merely to change its advocacy strategy without any impairment of its mission-related activities.  No such case exists, because to adopt such a broader proposition would be to render the Article III standing requirement effectively meaningless.  *Id*. at 13-14.  YAFFED fails to explain how, under the standard it urges the Court to adopt, any organization that diverts resources to fund litigation challenging an unfavorable law could ever lack standing.

YAFFED's allegation that the Amendment "potentially render[s] moot" some of its past work advocating before the New York City Department of Education ("NYCDoE") also does not confer standing.  As Defendants previously noted (Opening Br. at 14-15), past expenditures do not confer standing in an action for injunctive relief because "it is not an injury that can be redressed through" granting such relief.  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir.

2015).  In response, YAFFED attempts to characterize this injury as ongoing.  Plaintiff argues

that this is a concrete and particularized injury because "the Amendment is seen as ratifying the

use of Judaic Studies in evaluating 'substantial equivalence' and as absolving the NYCDoE of its

oversight responsibility for yeshivas."  YAFFED Opp. at 16.  As an initial matter, this argument

is based solely upon the alleged statements of members of the "ultra-Orthodox" community (*see*

Compl. ¶¶ 63-64, 82) and not on any action by Defendants, and is therefore wholly speculative

and not entitled to the presumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  In

any event, this "injury" in insufficient to confer standing for the same reason that YAFFED's

diversion of resources argument fails – the absence of any impairment to any of YAFFED's

mission-related activities.  To hold otherwise would mean that any organization would have

Article III standing to sue when it has to change its lobbying strategy because of a change in the

law.

Finally, the Complaint does not include allegations that: (1) potential donors have

expressed a decreased willingness to donate after passage of the Amendment;[3] or (2) YAFFED's

staff members have less time to apply for grant funding because they have been forced to oppose

the Amendment.  These factual assertions, made for the first time in affidavits submitted as part

of YAFFED's opposition (YAFFED Opp. at 17-18), cannot properly be considered by the Court

on a motion to dismiss.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002)

(holding court may not consider extraneous facts outside the complaint on a motion to dismiss

---

[3]  Following passage of the Amendment, YAFFED completed at least two public fundraisers.  In
both instances, it managed to raise more than its target goal from the public and received
matching donations from other sources.  *See* "Lawsuit to Reverse Simcha Felder Damage to
Yeshiva Standards," available at https://www.facebook.com/donate/260492171404563/
(fundraiser to help pay costs of staff, consultants, materials, and expenses); "Don't Let Mayor
De Blasio Get Away With It," available at
https://www.facebook.com/donate/2059956634284024/ (fundraiser to pay for billboards).

without converting motion to one for summary judgment and providing parties an opportunity to submit additional supporting material contemplated by Rule 56 of the Federal Rules of Civil Procedure).  Nevertheless, even if these facts had been alleged in the Complaint, they are insufficient to establish standing.  The assertion that potential donors are less willing to donate to YAFFED is the choice of third-parties, and not an injury "fairly traceable" to the Amendment or Defendants' actions.  *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998). Similarly, the assertion that YAFFED's staff members must now spend time opposing the Amendment instead of applying for grant funding is merely a reflection of the organization's decision regarding how to spend its time, rather than an injury fairly traceable to the Amendment or Defendants' actions.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 413 (2013) ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Accordingly, YAFFED lacks standing to bring this case, and the Court should grant Defendants' motion to dismiss in its entirety.

## II.   THE COURT CANNOT PRESENTLY ADJUDICATE YAFFED'S FACIAL CHALLENGE BECAUSE THE IMPACT OF THE AMENDMENT ON THE SUBSTANTIAL EQUIVALENCE DETERMINATION IS UNKNOWN ABSENT REVISED GUIDELINES

YAFFED fails to explain in its opposition how this case can be fit for review prior to SED's issuance of its revised guidelines, without which the Court cannot know how SED will interpret and apply the Amendment or what impact, if any, the Amendment will have on yeshivas.[4]  As YAFFED itself concedes, without the revised guidelines it is "unclear" what

---

[4]  YAFFED contends that Defendants have somehow implicitly conceded that if YAFFED's allegations are taken as true, YAFFED has stated a valid Establishment Clause claim. YAFFED Opp. at 1, 12.  Not so.  YAFFED's contention ignores Defendants' ripeness argument, which makes clear Defendants' position that the allegations in the Complaint, even if taken as true, fail to state an Establishment Clause claim that is ripe for determination in the

factors the Commissioner will consider in making substantial equivalence determinations under the Amendment.  Compl. ¶ 83.  Similarly, withholding judicial resolution unless and until a ripe controversy exists does not impose a hardship on YAFFED for the same reason; as YAFFED alleges, the effect of the Amendment is unclear until SED issues revised guidelines, so any "injury" YAFFED claims it has suffered, and will continue to suffer, prior to the issuance of the revised guidelines is self-inflicted and reflects its choice of advocacy.

### A.   The Issue Raised By YAFFED Is Not Fit For Judicial Review

As discussed in Defendants' opening brief (Opening Br. at 17), prior to the Amendment, Education Law § 3204(2) required, in relevant part, that "[i]nstruction given to a minor elsewhere than at a public school shall be *at least substantially equivalent* to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  Declaration of Yan Fu in Support of Defendants' Motion to Dismiss, ECF No. 33, Ex. A (emphasis added).  The Amendment did not change the above-quoted language implementing the "substantially equivalent" requirement.  Instead, the Amendment requires that, in determining substantial equivalence under § 3204(2) with respect to a defined set of nonpublic elementary and secondary schools, SED shall consider certain additional enumerated factors. Importantly, the list of factors for consideration under § 3204(2)(ii) and (iii) is *without limitation* on SED's discretion to consider any other factors the Commissioner deems appropriate and necessary.  *Id.*  While YAFFED speculates that the Amendment violates the Establishment Clause by creating different and lower standards for determining substantial equivalence for

---

absence of SED's revised guidelines indicating how the Commissioner with interpret and apply the Amendment.  Indeed, in light of Defendants' position that YAFFED's claim is not fit for review at this time, it would be inconsistent for Defendants to maintain that YAFFED's claim should nevertheless be adjudicated on the merits and dismissed.

yeshivas, SED has not yet issued guidance regarding the specific factors the Commissioner will

consider when making the substantial equivalence determination for such schools, including any

factors that are in addition to ones enumerated in the Amendment.  Compl. ¶¶ 57, 91.  Thus,

YAFFED's Establishment Clause claim is contingent on SED interpreting and applying the

Amendment to yeshivas in a particular fashion that may not occur.

   In response, YAFFED maintains that its claim is a facial First Amendment challenge that

will be unaffected by SED's revised guidelines interpreting and applying the Amendment,

despite YAFFED's allegation that the Amendment is "unclear."[5]  Compl. ¶ 83.  YAFFED relies

primarily on *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000), a case which is easily

distinguishable.  As an initial matter, as YAFFED acknowledges (*see* YAFFED Opp. at 21), the

Supreme Court did not expressly address ripeness in that case.  Rather, the Supreme Court

considered a facial challenge to a school district's policy of permitting prayer at the beginning of

high school football games.  530 U.S. at 311.  The policy permitted students to: (a) vote on

whether there should be a student-delivered invocation given at the start of high school football

games; and (b) later vote to select the one student who would deliver the invocation at all games

throughout the year. *Id.* at 297–98.  In rejecting the school district's argument that the challenge

was premature because the selected student may or may not include a religious statement in the

invocation, the Court relied upon the text of the policy, which "specified only one, clearly

preferred message—that of Santa Fe's traditional religious invocation" (*id.* at 314-15), and the

previous enacted versions of the policy, which sanctioned student-led prayer at football games

---

[5]  YAFFED's assertion that this action raises an issue that is purely legal and does not require
further factual development (*see* YAFFED Opp. at 20-21) is diametrically opposed to its
position that extensive fact discovery is required in this matter.  *See* Joint Discovery Plan, ECF
No. 36, at ¶ 4 (indicating YAFFED anticipates the need to conduct 11 depositions).

(*id.* at 315).  Thus, in *Santa Fe*, the Court found that the mere passage of the policy was unconstitutional because the policy's text dealt with student-led prayers, and because of the school district's history of sanctioning such prayers.  *Id.*  In other words, "the District's direct involvement with school prayer exceeds constitutional limits."  *Id.*

Similarly, in *Awad v. Ziriax*, 670 F.3d 1111, 1124-25 (10th Cir. 2012), also cited by YAFFED, the Tenth Circuit found that a challenge to an Oklahoma constitutional amendment which required courts to "not consider international law or Sharia law" was ripe as soon as it was approved by voters because the mere passage of the constitutional amendment expressly condemned Islam and exposed the plaintiff and other Muslims in Oklahoma to disfavored treatment.  670 F.3d at 1123.

Here, unlike in *Santa Fe* and *Awad*, the mere passage of the Amendment by the Legislature does not benefit religion (*Santa Fe*), nor does it discriminate against a religion (*Awad*).[6]  Rather, any impact that the Amendment might have upon the quality of yeshiva education cannot be discerned until SED issues the revised guidelines.

YAFFED claims that there is no possibility that SED could interpret and apply the Amendment in a constitutionally satisfactory fashion.  YAFFED Opp. at 21.  Virtually in the next breath, however, YAFFED admits that "it is unclear how the Felder Amendment will be implemented" by SED and leaves the yeshiva school system "in limbo."  *Id.* at 22.  Indeed, YAFFED goes one step further and posits a situation where SED implements the Amendment by imposing *stricter* guidelines for determining substantial equivalence, drawing legal challenges

---

[6] The other cases cited by YAFFED – *Susan B. Anthony List*, 134 S. Ct. 2334 (2014), *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002), *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004), and *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581 (1985) – do not concern ripeness of an Establishment Clause claim.

from groups "who oppose oversight." *Id.* Thus, YAFFED tacitly acknowledges that further factual development is required before its claim is fit for review.

### B.  YAFFED Faces No Hardship Without Judicial Review

As discussed above and in Defendants' opening brief, any purported "injury" that the passage of the Amendment has on YAFFED reflects, at most, a change in advocacy tactics.  As YAFFED alleges, the effect of the Amendment is "unclear" absent revised guidelines from SED indicating how the Commissioner will interpret and apply the Amendment.  Compl. ¶ 83; YAFFED Opp. at 22.[7]  Thus, withholding judicial resolution will not create a direct and immediate dilemma for the parties.

Moreover, YAFFED's argument that "the uncertainty regarding NYSED's application of the Felder Amendment actually imposes additional hardships" (YAFFED Opp. at 22) exposes yet another internal conflict with YAFFED's position; at the same time that YAFFED claims it suffers hardship due to uncertainty about how SED will apply the Amendment, YAFFED is asking the Court to preliminarily enjoin SED from issuing the very same revised guidelines that would eliminate such uncertainty.  *See* Plaintiff's Memorandum In Support Of Its Motion For A Preliminary Injunction, ECF No. 18-1, at 1 (seeking an order enjoining Defendants "from enforcing or promulgating guidelines in compliance with" the Amendment).  YAFFED cannot have it both ways.  YAFFED's decision to move to preliminarily enjoin SED from issuing revised guidelines is compelling evidence that it would suffer no hardship if the Court withholds judicial review until after SED revises the guidelines.

---

[7] *See also* "Press Conference to Discuss Change in Yeshiva Standards Law," *available at* https://www.facebook.com/events/1655933931126813/ (YAFFED statement acknowledging that the new law did not include "an exemption for Yeshivas" or "a moratorium on the state's mandate to enforce their standards in the Yeshivas" and that the ultimate effect on the substantial equivalency standard depends on "how the state will interpret it").

### III.   THE GOVERNOR AND CHANCELLOR ARE IMMUNE FROM SUIT BECAUSE THEY HAVE NO ENFORCEMENT ROLE UNDER THE AMENDMENT

YAFFED discusses some exceptions to *Ex parte Young*, 209 U.S. 123 (1908), but ignores the one that is relevant here and upon which Defendants expressly rely: where the state official has no connection with enforcement of the challenged legislation.  *See* Opening Br. at 19; *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372-73 (2d Cir. 2005) (applying requirement under *Ex parte Young* that state officer have some connection with enforcement of the challenged statute); *Steinberg v. Elkman*, 666 F. App'x 26, 27-28 (2d Cir. 2016) (affirming dismissal of Governor Cuomo on sovereign immunity grounds because he had no connection with enforcement or review); *see also Kelly v. New York State Civil Service Commission*, 632 F. App'x 17, 18 (2d Cir. 2016) ("[T]he district court correctly concluded that *Young* does not apply here.  The state officer against whom prospective relief is sought 'must have some connection with the enforcement of the act' that violates federal law.") (citations omitted); *Citizens Union of the City of New York, v. Attorney General of New York*, No. 16-CV-9592, 2017 WL 2984167 at *4 (S.D.N.Y. June 23, 2017) (holding state officer must have a particular duty to enforce the statute in question and the demonstrated willingness to exercise that duty in order to avoid Eleventh Amendment immunity).

YAFFED argues that this exception does not apply to the Governor because the complaint contains allegations about the Governor's negotiation concerning the passage of the Amendment and its effect.  YAFFED Opp. at 24.  YAFFED's argument completely misses the point.  The determinative issue is whether the Governor has some connection with the *enforcement* of the Amendment.  *In re Dairy Mart,* 411 F.3d at 372-73.  The language of the Amendment makes clear he does not.  N.Y. Educ. Law § 3204(2)(iv) (providing the

14

Commissioner "shall be the entity that determines whether non-public elementary and secondary schools are in compliance with the academic requirements" of subsections 2(ii) and 2(iii)).  Any allegations as to roles the Governor is alleged to have had in discussing the Amendment are simply not germane to the relevant inquiry.

Notably, nowhere in YAFFED's complaint is there any allegation that the Governor will have any connection to the enforcement of the Amendment, including any determination of whether particular yeshivas provide substantially equivalent education.  To the contrary, YAFFED concedes in its Complaint that, under the Amendment, it is the Commissioner who is responsible for making the substantial equivalence determination for nonpublic schools falling within the scope of subsections 2(ii) and 2(iii) of § 3204.  Compl. §§ 3, 22, 74.  Because the Governor does not play any role in the enforcement of the Amendment, he is immune from suit under the Eleventh Amendment.  *In re Dairy Mart*, 411 F.3d at 372-73.

Similarly, YAFFED fails to allege that the Chancellor plays a role in the enforcement of the Amendment, or more specifically in making the substantial equivalence determination for nonpublic schools falling within the scope of subsections 2(ii) and 2(iii) of § 3204.  Grasping at straws, YAFFED points to paragraph 57 of the Complaint, which quotes a Wall Street Journal article reporting that the Chancellor acknowledged some yeshivas do not provide a substantially equivalent education.  YAFFED Opp. at 26.  The referenced article in no way suggests that the Chancellor will have a role in enforcing the Amendment, nor could it since it was published in December 2017, more than three months *before* the Amendment was drafted.  YAFFED also cites to a blog and a Times Herald-Record article (*id*. at 26-27), neither of which remotely suggests that the Chancellor has any role in enforcing the Amendment or drafting the revised guidelines, and neither is referenced in the Complaint so cannot properly be considered by the

15

Court on this motion to dismiss in any event.[8]  YAFFED's conclusory statements that the Chancellor "is directly involved in enforcing Section 3204" and "has a specific connection and responsibility with regard to the . . . Amendment and is directly involved with the development and oversight of guidelines implementing its effects" (*id.*) are without any support in the Complaint or § 3204.

YAFFED is left only with allegations concerning the Chancellor's power to remove the Commissioner and her "general supervision of all educational activities within the state." Compl. ¶¶ 21, 73.  Under settled law, these type of allegations of general oversight responsibility are insufficient to bring the Chancellor within the "enforcement role" purview of *Ex parte Young*.  *Cf. Citizens Union,* 2017 WL 2984167, at *4 (holding state official's duty to execute the laws is not sufficient by itself to make that official a proper party to a suit challenging a state statute); *Aron v. Becker*, 48 F. Supp. 3d 347, 368 (N.D.N.Y. 2014) ("With respect to Governor Cuomo, the vast majority of courts to consider this issue have held that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute.") (citation and internal quotation marks omitted); *Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (holding allegation that governor "is required to ensure that the laws of the State of New York are faithfully and fairly executed" was "insufficient to state a claim" against the governor); *see also Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) (finding allegation that "[t]he Governor has the supreme executive power in the State and is responsible for the faithful execution of the laws of the State of California" is an insufficient,

---

[8] The Court would need to convert this motion to one for summary judgment and provide the parties an opportunity to submit additional supporting material contemplated by Rule 56 of the Federal Rules of Civil Procedure before it could properly consider these extraneous materials. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

generalized connection); *Doe v. Jindal*, No. 15-1283, 2015 WL 7300506, at *5 (E.D. La. Nov. 18, 2015) ("Allegations that a state official has merely carried out his constitutional duties do not satisfy *Ex parte Young's* requirement that there be 'some connection' between the state official and enforcement of the allegedly unconstitutional act.) (citation omitted).

In the event the Court does not grant Defendants' motion to dismiss this action in its entirety based on lack of standing or ripeness, at a minimum, all claims against the Governor and the Chancellor should be dismissed on the basis of Eleventh Amendment immunity.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion to dismiss this action in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        October 26, 2018

                                        BARBARA D. UNDERWOOD
                                        Attorney General of the State of New York


                                        By:____/s/  Andrew Amer____
                                        Andrew Amer
                                        Special Litigation Counsel
                                        Yan Fu
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-6127
                                        andrew.amer@ag.ny.gov

                                        Attorney for Defendants

17