## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| YOUNG ADVOCATES FOR FAIR EDUCATION, | |
| *Plaintiff*, | |
| v. | Case No. 18 CV 4167 |
| ANDREW CUOMO, in his official capacity as Governor of the State of New York, | |
| BETTY ROSA, in her official capacity as Chancellor of the Board of Regents of the State of New York, | |
| MARYELLEN ELIA, in her Official Capacity as the Commissioner of the New York State Education Department, | |
| *Defendants*. | |

**BRIEF OF *AMICUS CURIAE* THE CENTER FOR EDUCATIONAL EQUITY
IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Counsel for Amicus Curiae the
Center for Educational Equity*

## TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF *AMICUS CURIAE*....................................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................................1

ARGUMENT......................................................................................................................4

      I.      A Civic Education Is Critical to Prepare All Students to Participate
            Meaningfully in Our Democratic Society. ............................................................4

      II.     Consistent with the Supreme Court's Ruling in *Pierce v. Society of Sisters*,
            New York State Is Constitutionally Obligated to Provide a Sound Basic
            Education, Which Is Based on Civic Learning, to All Students...........................8

      III.    The Felder Amendment Is Inimical to the Civic-Minded Purposes of a
            Sound Basic Education.......................................................................................14

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

CASES

*Ambach v. Norwick*, 441 U.S. 689 (1979) ...................................................................9

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982)................9

*Bethel Sch. Dist. v. Fraser*, 478 U.S. 675 (1986) ........................................................9

*Campaign for Fiscal Equity v. State of New York*, 100 N.Y.2d 893 (N.Y. 2003)...1, 3, 10, 11, 12, 16

*Campaign for Fiscal Equity v. State of New York*, 719 N.Y.S.2d 475 (N.Y. Sup. Ct., N.Y. Cnty., 2001) .............................................................................. 7, 11, 16

*Campaign for Fiscal Equity v. State*, 86 N.Y.2d 307 (N.Y. 1995).................................. 10, 11, 16

*Pierce v. Soc'y of the Sisters of the Holy Name of Jesus and Mary*, 268 U.S. 510 (1925).....2, 3, 8

*Plyler v. Doe*, 457 U.S. 202 (1982)..........................................................................9

*Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963) ....................................9

*Schuette v. Coal. to Defend Affirmative Action*, 134 S. Ct. 1623 (2014) ......................9

*Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969)......................................9

*W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ...............................................9

*Weiman v. Updegraff*, 344 U.S.186 (1952) ..............................................................9

STATUTES

N.Y. Educ. Law § 801 (McKinney 2009) ................................................................12

N.Y. Educ. Law §3204 (McKinney 2018) ................................................................3

N.Y. Educ. Law § 3204.2 (McKinney 2009) ...........................................................12

OTHER AUTHORITIES

American Bar Association.........................................................................................6

Ariel Edwards-Levy, *Millennials Really Don't Think Everybody Should Vote* (Nov. 21, 2014)...............................................................................................................5

Benjamin R. Barber, *Strong Democracy: Participatory Democracy for a New Age* 178–98 (1984)...........................................................................................................16

Bob Egelko, *Many Snub Call to Serve Jury Duty*, S.F. CHRON., May 13, 2015, at D1 .................5

Campaign for the Civic Mission of Schools, *Guardian of Democracy: The Civic Mission of Schools* (Jonathan Gould ed., 2011) ................................................................. 2, 5, 6, 8, 16

Cathy Woodruff, *Regents Focus on Equity, Civic Readiness* (July 23, 2018) ...........................13

Colby Hamilton, *Little-Known Hasidic Sect Emerges as Political Powerbroker in Mayor's Race* (Oct. 16, 2013) ................................................................................17

Danielle Allen, *Education and Equality* (2016) ...................................................................7

Ford Fessenden and Josh Keller, *The Voting Blocs of New York City*, N.Y. Times, Sept. 6, 2013 ...............................................................................................................17

Fourteenth Amendment ...........................................................................................3

Horace Mann, *Lectures on Education vii* (1855) .............................................................2

Joseph E. Kahne & Susan E. Sporte, D*eveloping Citizens: The Impact of Civic Learning Opportunities on Students' Commitment to Civic Participation*, 45 Am. Educ. Res. J. 738 (2008) ..........................................................................................................7

Karl Kaestle, *Pillars of the Republic: Common Schools and American Society 1780–1860* (1983) ................................................................................................................2

Lawrence A. Cremin, *American Education: The National Experience, 1783–1876* (1980) ..........2

Martha Nussbaum, *Not for Profit: Why Democracy Needs the Humanities* (2010) ................7, 16

Megan O'Neil, *American's Engagement with Organizations Wanes, Report Says*, The Chron. of Philanthropy (Dec. 17, 2014) ...........................................................................5

Meira Levinson, *No Citizen Left Behind* (2012) ..............................................................6

Michael C. Johanek, *Preparing Pluribus for Unum: Historical Perspectives on Civic Education, in Making Civics Count: Citizenship Education for a New Generation* (David E. Campbell, Meira Levinson & Frederick M. Hess eds., 2012) ................................2

N.Y. Const. art. XI, § 1 ......................................................................................3, 10

N.Y. Constitution ....................................................................................................10

*2014 Civics Assessment*, Nation's Report Card, https://www.nationsreportcard.gov/hgc_2014/#civics/achievement ......................................5

New York State Education Department, *Civic Readiness Index* (last visited Nov. 4, 2018)....4, 13

New York State Education Department, *Guidelines for Determining Equivalency of Instruction in Nonpublic Schools* (last updated Aug. 12, 2015)............................................12

Peter Levine, *The Future of Democracy: Developing the Next Generation of American Citizens* (2007) ......................................................................................................7

Subhi Godsay *et al.*, *Center for Information and Research on Civic Learning and Engagement Fact Sheet* (Sept. 2012) .....................................................................4

Theda Skocpol *et al.*, *How Americans Became Civic, in Civic Engagement in American Democracy* (Theda Skocpol & Morris P. Fiorina eds., 1999) ..................................1

Thomas File, *Young- Adult Voting: An Analysis of Presidential Elections, 1964–2012* (2014) ......................................................................................................................5

Uriel Heilman, *The Hasidic Bloc Vote, Bernie and Hillary's Empire State of Mind and Other NY Campaign Notes,* Jewish Telegraph Agency (Apr. 12, 2016)..............................17

Zacary Matson, *State Ed Moves Toward 'Civic Readiness' Measure*, The Daily Gazette (July 16, 2018). ......................................................................................................13

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

The Center for Educational Equity ("CEE") at Teachers College, Columbia University, is a policy and research center that champions the rights of all children to a meaningful opportunity to graduate from high school prepared for college, careers, and civic participation.  CEE is the convener of the DemocracyReadyNY Coalition, a collaboration of 30 diverse statewide organizations committed to youth civic preparation.  CEE also works on a national basis to promote meaningful opportunities for all students to become capable citizens and to ensure that all schools, and particularly schools attended predominately by students in poverty and students of color, are equipped to provide the resources, services, and support necessary to make this happen.

Michael A. Rebell, the Executive Director of the Center for Educational Equity, is the chairman of the New York State Regents Civic Readiness Task Force.  Rebell, who is an attorney, was co-counsel for the plaintiffs in *Campaign for Fiscal Equity v. State of New York*, the case in which the New York Court of Appeals defined the constitutional right of all students in New York State to the opportunity for a sound basic education in terms of the schools' responsibility to provide all students the skills they need "to function productively as civic participants."  100 N.Y.2d 893, 905 (N.Y. 2003).

CEE does not, in this brief or otherwise, represent the official views of Teachers College.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

As Thomas Jefferson said, "[e]ducate and inform the whole mass of people . . . . They are the only sure reliance for the preservation of liberty."  The founding fathers recognized the centrality of education to the preservation and proper functioning of our democratic society, and understood that to maintain and expand the nascent democracy, all its citizens would need to acquire the knowledge and skills to make informed, intelligent decisions.  *See* Theda Skocpol *et*

*al.*, *How Americans Became Civic, in Civic Engagement in American Democracy* 27, 43 (Theda Skocpol & Morris P. Fiorina eds., 1999).  To achieve these goals, the founding fathers believed that overall, schools should serve a civic mission.  *See* Campaign for the Civic Mission of Schools, *Guardian of Democracy:  The Civic Mission of Schools* 11 (Jonathan Gould ed., 2011).

After the American Revolution, by the early nineteenth century, the "common school" movement had begun, driven by a combination of industrialization, population growth, and immigration.  *See* Karl Kaestle, *Pillars of the Republic:  Common Schools and American Society 1780–1860* 23-25, 63-66, 69 (1983).  The movement was aimed at educating all children within a particular geographic area, regardless of class, religion, or ethnicity, to be capable civic participants.  *See* Lawrence A. Cremin, *American Education:  The National Experience, 1783–1876* 138 (1980).  Horace Mann, the founder of the common school movement, described its purpose:  "Education must be universal . . . . With us, the qualification of voters is as important as the qualification of governors, and even comes first . . . . The theory of our government is . . . that every man, by the power of reason and sense of duty, shall become a fit voter."  *See* Horace Mann, *Lectures on Education vii* (1855).  By the twentieth century, public education was mostly compulsory, and focused on preparing students for citizenship.  *See* Michael C. Johanek, *Preparing Pluribus for Unum:  Historical Perspectives on Civic Education, in Making Civics Count:  Citizenship Education for a New Generation* 59 (David E. Campbell, Meira Levinson & Frederick M. Hess eds., 2012).

In 1925, the Supreme Court's ruling in *Pierce v. Society of Sisters* demonstrated that the judiciary had formally recognized the importance of civic education for all children, even those attending private schools.  *See Pierce v. Soc'y of the Sisters of the Holy Name of Jesus and Mary*, 268 U.S. 510 (1925).  At issue in *Pierce* was whether an Oregon compulsory education statute

that required all students to attend public schools (and, in essence, outlawed private schools) violated the Fourteenth Amendment.  In its decision, the *Pierce* Court upheld the parents' liberty interest in enrolling their children in a private religious school, but determined that, although parents had the right to send their children to private schools, the state nonetheless had the authority to regulate all private schools, and ensure that "certain studies plainly essential to good citizenship must be taught . . . ."  *Id.* at 534.

Building on the civic ideals articulated in *Pierce*, in its landmark decision on education funding, the New York Court of Appeals in *Campaign for Fiscal Equity* ("*CFE*") declared that New York's Constitution obligates the state to provide all of its students with a "sound basic education," which the court defined as the skills "necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury."  *See CFE*, 100 N.Y.2d at 902, 905; N.Y. Const. art. XI, § 1.  Importantly, because New York's education laws mandate that children in nonpublic schools receive a "substantially equivalent" education to children in public schools, the sound basic education standard applies to private religious schools in the state.  *See* N.Y. Educ. Law §3204 (McKinney 2018).

Despite America's rich history of civic learning and obligations to educate students to be capable citizens, such as those pronounced by the New York Court of Appeals in *CFE*, civic learning in schools around the country has been steadily declining since the second half of the twentieth century.  To renew its commitment to the civic-minded principles of a sound basic education, in July of 2018, New York's Board of Regents unveiled a major new educational initiative.  With the goal of preparing all children in New York for capable citizenship, the civic readiness index, as the new measure is called, is designed to encourage schools – both public and nonpublic – to create learning programs that will imbue children with the civic skills to make

informed decisions for the public good.  Through the readiness program, children will learn how to appreciate each other's viewpoints, respectfully disagree with each other, and provide counterarguments and evidence to support their positions.  Among other things, the initiative contemplates academic activities, such as capstone projects, and recognition of civic achievement, such as graduation certificates.  *See* New York State Education Department, *Civic Readiness Index*, http://www.regents.nysed.gov/common/regents/files/ProgramUpdatesAll.pdf (last visited Nov. 4, 2018).

By codifying the idea that a predominately religious education can satisfy the requirements of a sound basic education, the Felder Amendment denies yeshiva students the constitutionally mandated civic education articulated by the New York Court of Appeals, undermines the civic intent of *Pierce*, and runs contrary to the new civic educational policies advanced by the Board of Regents.  Perhaps worst of all, however, the Felder Amendment may deny thousands of yeshiva-educated students the opportunity to acquire the knowledge and skills to participate meaningfully as citizens.  Such a result damages our democratic system, which relies on an educated citizenry.

*Amicus* asks the Court to rule in Plaintiff's favor, and issue a preliminary injunction to enjoin defendants from enforcing the Felder Amendment.

## ARGUMENT

### I.    A Civic Education Is Critical to Prepare All Students to Participate Meaningfully in Our Democratic Society.

While schools in New York State and throughout the country traditionally emphasized preparation for capable citizenship as the prime purpose of education, in recent decades, the focus has shifted to job preparation and a policy emphasis on proficiency scores in English and math, but not in areas like social studies.  *See* Subhi Godsay *et al.*, *Center for Information and*

*Research on Civic Learning and Engagement Fact Sheet* 2 (Sept. 2012),

http://files.eric.ed.gov/fulltext/ED536256.pdf.  As a result, American students' knowledge of

basic political facts and principles has declined dramatically.  For instance, according to the 2014

National Assessment of Educational Progress civics exam, also known as "the nation's report

card," only twenty-three percent of a national sample of eighth graders scored at or above a

"proficient" level.  *2014 Civics Assessment*, The Nation's Report Card, https://www.

nationsreportcard.gov/hgc_2014/#civics/achievement (last visited Oct. 24, 2018).  Another report

published in 2011 revealed that less than one-third of eighth graders could identify the historical

purpose of the Declaration of Independence.  *See* Campaign for the Civic Mission of Schools,

*supra*, at 14.

 Given the lack of attention to civic learning, it is unsurprising that democratic

participation suffers.  Voting, once considered a primary civic duty, is today viewed as a choice.

*See* Ariel Edwards-Levy, *Millennials Really Don't Think Everybody Should Vote*, Huffington

Post (Nov. 21, 2014), http://www.huffingtonpost.com/2014/11/21/young-voters_n_

6200852.html.  And voter turnout, especially among America's youngest voters, has continued to

decline.  *See* Thomas File, *Young- Adult Voting:  An Analysis of Presidential Elections, 1964–

2012*, U.S. Census Bureau 2 (2014), https://www.census.gov/prod/2014pubs/p20-573.pdf.  Other

once fundamental expressions of civic involvement, such as volunteerism and participation in

community organizations have likewise diminished, along with compliance with civic

obligations, such as serving jury duty.  *See* Megan O'Neil, *American's Engagement with*

*Organizations Wanes, Report Says*, The Chron. of Philanthropy (Dec. 17, 2014),

https://www.philanthropy.com/article/Americans-Engagement-With/152055; Bob Egelko, *Many*

*Snub Call to Serve Jury Duty*, S.F. CHRON., May 13, 2015, at D1.

Increased political apathy has led to an erosion of confidence and growing mistrust of America's political institutions and leaders.  *See* Meira Levinson, *No Citizen Left Behind* 27-28 (2012).  And the proliferation of the internet and new forms of social media communication, like Facebook and Twitter, have given rise to superficial, one-sided, and false outlets of information, which feed vitriolic discussion of issues and exacerbate the political gridlock and polarization that has become synonymous with our contemporary political system.  *See* Campaign for the Civic Mission of Schools, *supra*, at 12.

In light of the continuing challenges facing America's democratic system, schools – despite the recent decline in their commitment to preparing students for civic participation – remain the best forum to promote and foster civic learning for the next generation of citizens.  As indicated above, in New York, both the state courts and the state Board of Regents have recently recognized the importance of revitalizing and emphasizing the critical responsibility of all schools – public and private – to adequately prepare their students for capable citizenship in the twenty-first century.

According to a major 2011 report, *Guardian of Democracy:  The Civic Mission of Schools*, (prepared by the Civic Mission of Schools, a coalition of more than 50 civic-oriented organizations including the American Bar Association, the co-chair of which was former Supreme Court Justice, Sandra Day O'Connor), effective preparation of students for civic participation requires:  (1) basic civic knowledge in government, history, law, and democracy; (2) verbal and critical reasoning skills; (3) social and participatory experiences; and (4) responsible character traits and acceptance of democratic values and dispositions.  *See* Campaign for the Civic Mission of Schools, *supra*, at16-18.

In addition to acquiring knowledge about American government and processes, students should have a broad general knowledge base to understand and evaluate the wide range of issues that citizens of a democracy need to consider.  Instruction in disciplines such as history, economics, world language, science, and the arts go far towards producing "complete citizens, who can think for themselves, criticize tradition, and understand the significance of another person's sufferings and achievements."  *See* Martha Nussbaum, *Not for Profit:  Why Democracy Needs the Humanities* 2 (2010).  The skills students need for civic engagement begin with basic verbal and math skills that provide "the intellectual tools to understand complex issues."  *See CFE*, 719 N.Y.S.2d 475, 485 (N.Y. Sup. Ct., N.Y. Cnty., 2001).  Continued development of these verbal and cognitive skills not only allows students to understand the information they receive and analyze its meaning critically, but also to be able to express their opinions persuasively.  *See* Danielle Allen, *Education and Equality* 40 (2016).

Other critical areas of civic learning include creating civic experiences for students, such as opportunities for volunteerism and community service, which enhance civic participation later in life, and inculcating civic values, such as tolerance and respect for others.  *See* Joseph E. Kahne & Susan E. Sporte, *Developing Citizens:  The Impact of Civic Learning Opportunities on Students' Commitment to Civic Participation*, 45 Am. Educ. Res. J. 738, 757 (2008); Peter Levine, *The Future of Democracy:  Developing the Next Generation of American Citizens* 134 (2007).  Learning to appreciate each other's differences and instilling shared democratic values, such as respect for rule of law and concern for the rights and welfare of others, is paramount to creating an environment for productive civic participation.

In sum, civic learning is vital to overcoming the apathy, distrust, and extreme polarization threatening our democracy, and is central to preserving our democratic system of self-

government.  "In a representative democracy, government is only as good as the citizens who elect its leaders, demand action on pressing issues, hold public officials accountable, and take action to help solve problems in their communities."  Campaign for the Civic Mission of Schools, *supra*, at 15.

## II. Consistent with the Supreme Court's Ruling in *Pierce v. Society of Sisters*, New York State Is Constitutionally Obligated to Provide a Sound Basic Education, Which Is Based on Civic Learning, to All Students.

The centrality of civic learning in all schools, including private schools, and the state's inherent authority to regulate and support civic education was recognized early on by the Supreme Court, in its 1925 ruling in *Pierce v. Soc'y of Sisters*.  *See* 268 U.S. 510.  In *Pierce*, two private schools, a Catholic school and military academy, challenged the constitutionality of an Oregon compulsory education law, which mandated that every child between the ages of eight and sixteen attend a public school.  *See id.* at 530-531.  The Court determined that the statute was unconstitutional, and enjoined its enforcement before it could take effect.  *See id.* at 536.  In doing so, the court described the state's breadth of power with respect to education, including the primacy of teaching "good citizenship:"

> No question is raised concerning the power of the state to regulate *all schools*, to inspect, supervise and examine them, their teachers and pupils; to require that all children of proper age attend some school, that teachers shall be of good moral character and patriotic disposition, that certain studies *plainly essential to good citizenship must be taught*, and that nothing be taught which is manifestly inimical to the public welfare.

*Id*. at 534.

As the ruling in *Pierce* made clear almost a century ago, while private schools are exempt from many state regulations, they must still adhere to basic requirements of civic preparation, which the state is tasked to enforce.

In the decades since *Pierce*, the Supreme Court has continued to reaffirm the critical role that schools play in educating students to become capable citizens.  *See Tinker v. Des Moines*

8

*Indep. Sch. Dist.*, 393 U.S. 503, 507 (1969) ("[The] schools are educating the young for citizenship."); *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (School are where the "fundamental values necessary for the maintenance of a democratic political system" are conveyed.); *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 230 (1963) ("Americans regard the public schools as a most vital civic institution for the preservation of a democratic system of government.") (Brennan, J., concurring); *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 683 (1986) ("The process of educating our youth for citizenship in public schools is not confined to books, the curriculum, and the civics class; schools must teach by example the shared values of a civilized social order.").

What is more, in many of these and other cases, the Court has referenced the importance of schools providing particular civic skills, among them, basic knowledge of how government functions, *see Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 876 (1982) (Blackmun, J., concurring); *see also W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 631 (1943); exposure to a marketplace of ideas, differing viewpoints, and controversial issues, *see Tinker*, 393 U.S. at 512; *see also Island Trees*, 457 U.S. at 869; *Barnette*, 319 U.S. at 644 (Black, J., & Douglas, J., concurring); *Weiman v. Updegraff*, 344 U.S.186, 196 (1952) (Frankfurter, J., & Douglas, J, concurring); *Schuette v. Coal. to Defend Affirmative Action*, 134 S. Ct. 1623, 1626 (2014); and the inculcation of basic civic values. *See Ambach v. Norwick*, 441 U.S. 689, 676 (1979).

Consistent with the intent of *Pierce* and this Supreme Court jurisprudence, New York State courts have taken an active role to ensure that children are prepared for citizenship by its schools. In the seminal *CFE* litigation on school funding, the New York Court of Appeals explicitly linked its definition of a "sound basic education" to civic preparedness, stating, "[s]uch

an education should consist of the basic literacy, calculating, and verbal skills necessary to enable children to *eventually function productively as civic participants capable of voting and serving on a jury*." 86 N.Y.2d 307, 316 (N.Y. 1995) (emphasis added); *see also CFE*, 100 N.Y.2d at 905-908. As described below, the decisions published by both the trial court and the New York Court of Appeals throughout the *CFE* litigation further underscore the New York courts' particular attention to issues of civic learning, and to the state's constitutional obligation to provide this education.

The plaintiffs in *CFE*, a combination of a not-for-profit corporation (comprised of school boards, individuals, and parent advocacy organizations), a number of New York City school districts,[1] and New York City school students and parents, sought declaratory relief against state defendants, claiming that the state's school financing system violated, among other things, the Education Article of New York's Constitution.[2]  *CFE*, 86 N.Y.2d at 312-13. Relying on its previous decision in *Board of Educ. v. Levittown*, the Court of Appeals stated, "[w]e [have] recognized . . . that the Education Article imposes a duty on the Legislature to ensure the availability of a sound basic education to all children of the State." *Id.* at 315. The court went on to determine that there was a "constitutional floor with respect to educational adequacy," and that the court was "responsible for adjudicating the nature of [the Legislature's] duty." *Id.* Holding that plaintiffs had stated a claim, the Court of Appeals sent the case to trial to determine the types of skills that students would need to function productively as civic participants, and

---

[1]     The Court of Appeals later ruled that the community boards were not proper parties. *See CFE*, 86 N.Y.2d at 312.

[2]     Article 11, §1 of the New York State Constitution reads:  "The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated."  N.Y. Const. art. XI, §1 (McKinney).

whether the state was providing an opportunity for students to develop these skills.  *Id.* at 317-18.

Following a lengthy trial in front of Justice Leland DeGrasse, the trial court produced a comprehensive decision, ultimately ruling that the state's school funding system violated the Education Article of the N.Y. Constitution.  *CFE*, 719 N.Y.S.2d at 540.  In his opinion, Justice DeGrasse expounded upon the requirements of capable citizenship:

> Productive citizenship means more than just being *qualified* to vote or serve as a juror, but to do so capably and knowledgeably.  It connotes civic engagement.  An engaged, capable voter needs the intellectual tools to evaluate complex issues, such as campaign finance reform, tax policy, and global warming, to name only a few.  Ballot propositions in New York City, such as a charter reform proposal that was on the Ballot in November 1999, can require a close reading, and a familiarity with the structure of local government.  Similarly, a capable and productive citizen doesn't simply show up for jury service.  Rather she is capable of serving impartially on trials that may require learning unfamiliar facts and concepts and new ways to communicate and reach decisions with her fellow jurors.

*Id.* at 485 (emphasis in original).

Beginning with a "unanimous recognition of the importance of education in our democracy," the New York Court of Appeals roundly affirmed Justice DeGrasse's determination that "productive citizenship means more than just being *qualified* to vote or serve as a juror, but to do so capably and knowledgeably – to have skills appropriate to the task."  *CFE*, 100 N.Y.2d at 901, 906 (internal citations and quotation marks omitted) (emphasis in original).  The court also flatly rejected the notion that civic skills were acquired at a particular grade level, stating, "the mandate of the Education Article for a sound basic education should not be pegged to the eighth or ninth grade, or indeed to any particular grade level.  In *CFE* we pointed to voting and jury service because they are civic responsibilities *par excellence*."  *Id.* at 906-07.  In framing its determinations, the Court of Appeals made explicit that a sound basic education means one

11

which "affords New York City schoolchildren the opportunity for a meaningful high school education" and "prepares them to function productively as civic participants." *Id.* at 908.

As the New York courts' decisions in *CFE* make plain, New York State's obligation to afford all of its students with a constitutionally adequate level of education is inextricably tied to providing the knowledge and developing the skills necessary for meaningful civic participation.

Equally clear, consistent with *Pierce* and as set forth by the courts in *CFE*, the same sound basic education standard applies with equal force in the context of private schools. Indeed, New York State's compulsory education law directs that "[i]nstruction given to a minor elsewhere than at a public school shall be at least *substantially equivalent* to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."  N.Y. Educ. Law § 3204.2 (McKinney 2009) (emphasis added); *see also* New York State Education Department, *Guidelines for Determining Equivalency of Instruction in Nonpublic Schools*, http://www.p12.nysed.gov/nonpub/guidelinesequivofinstruction.html (last updated Aug. 12, 2015) ("If a child attends a nonpublic school or is being educated at home, the board of education of the school district in which the child resides must be assured that the child is receiving instruction which is *substantially equivalent* to that provided in the public school.") (emphasis added).

In addition, the New York State legislature has demonstrated its focus on civic education by creating mandatory courses of instruction in disciplines such as "patriotism and citizenship," which "promote a spirit of patriotic and civic service and obligation to foster in the children . . . moral and intellectual qualities which are essential in preparing to meet the obligations of citizenship in peace or in war . . . ." and by pursuing civic educational initiatives.  *See* N.Y. Educ. Law § 801 (McKinney 2009).

Most recently, in July of 2018, the New York State Board of Regents[3] incorporated a "civic readiness index" into the state's Every Student Succeeds Act ("ESSA") plan, designed "to measure school's success in providing life-long skills to support student success."  New York State Education Department, *Civic Readiness Index*, http://www.regents.nysed.gov—/common/regents/files/ProgramUpdatesAll.pdf.  The New York State Department of Education ("NYSED") described the new civic measure:

> The civic readiness index reflects our commitment to equity by empowering all students to make informed decisions for the public good as members of a culturally diverse, democratic society in an interdependent world.  Through civic readiness, students learn how to demonstrate respect for the rights of others, respectfully disagree with other viewpoints, and provide evidence for counterargument.  These skills can help stimulate and motivate students to excel in other academic areas.  Civic readiness strengthens the relationships of schools and students with parents, families, civic leaders, and organizations and community partners.

*Id.*

The NYSED reported that the civic readiness index will be used to encourage school-level actions and programs, including certifications and assessments related to civic engagement, such as capstone projects, a state seal of civic engagement, service learning, and voter registration awareness.  *See* Cathy Woodruff, *Regents Focus on Equity, Civic Readiness* (July 23, 2018) https://www.nyssba.org/news/2018/07/20/on-board-online-july-23-2018/regents-focus-on-equity-civic-readiness/; New York State Education Department, *Civic Readiness Index*, http://www.regents.nysed.gov/common/regents/files/ProgramUpdatesAll.pdf.

Importantly, Regent Roger Tilles declared that the new measure "should be for all students," and specifically noted that state officials should include charter and private schools in the program as it developed.  *See* Zacary Matson, *State Ed Moves Toward 'Civic Readiness'*

---

3   The Board of Regents supervises all educational activities in New York State, and presides over the University and the NYSED.  Available online at https://www.regents.nysed.gov/.

*Measure*, The Daily Gazette (July 16, 2018), https://dailygazette.com/article/2018/07/16/sed-moves-toward-civic-readiness-measure.  Another Regent, Luis Reyes, explicitly acknowledged the connection between the readiness initiative and the language articulated by the Court of Appeals in *CFE*, stating, "[s]tudents need to get sound basic education that prepares them to serve on juries and to vote.  So it's action that's important."  *Id.*  He added, "knowledge and engagement are the goals," explaining, students may register to vote in school, but many do not actually end up voting.  *Id.*

As described in detail below, the Felder Amendment undermines the foundational civic principles of a sound basic education, with potentially detrimental effects for our political system.

## III.    The Felder Amendment Is Inimical to the Civic-Minded Purposes of a Sound Basic Education.

The current state of education at New York's yeshiva schools not only fails to meet the substantially equivalent standard for a sound basic education, but falls woefully short of providing its students with even the most basic skills necessary for meaningful civic participation.  A study compiled by Plaintiff reports that the average yeshiva student is taught only basic English[4] reading, writing, spelling and math for 90 minutes a day, four days a week from the age of 7 to 12.  Moster Decl. Ex. 1, at 7, ECF 19-1.[5]  Women receive slightly more secular education than men (because women are not religiously obligated to study Jewish texts), but because women are expected to become homemakers, academic education is discouraged

---

[4]    Yeshiva students are taught in Yiddish and occasionally in Hebrew and Aramaic.   Moster Decl. Ex. 1, at 7, ECF 19-1.

[5]    In elementary school, New York State requires instruction in:  arithmetic, English language, reading, spelling, writing, music, geography, health education, physical education, science, U.S. history, N.Y. history, and visual arts.

and not taken seriously.  Moster Decl. Ex. 1, at 34-35, ECF 19-1.  For boys, after the age of 12 or

13, as they prepare for bar mitzvah, the majority receive only religious training.  Moster Decl.

Ex. 1, at 37, ECF 19-1.

According to the same study, a survey of just over one hundred yeshiva graduates and

parents of students reported that less than 25 percent of them learned U.S. history, 2 percent

learned New York history, 8 percent of boys received instruction in science, and 10 percent

learned geography.  Moster Decl. Ex. 1, at 35, ECF 19-1.  27 percent reported not receiving

instruction in any secular studies at all in elementary school, and a sizable 75 percent did not

receive secular education at all in high school.  Moster Decl. Ex. 1, at 35-37, ECF 19-1.

Anecdotally, former yeshiva students, including YAFFED founder, Naftuli Moster,

described not knowing the system of U.S. checks and balances, or fundamental aspects of U.S.

history, such as slavery, the civil war, or the American Revolution.   Bridges Decl. Ex. 5, ECF

22-5; Bridges Decl. Ex. 8, ECF 22-8.  One former student said the only reason he knew the 50

states was from his baseball card collection, and as a student, he did not know who the president

was.  Bridges Decl. Ex. 5, ECF 22-5.  Another said he did not know how many zeroes were in

the number "1,000,000," and others reported not knowing basic math skills like multiplication

and algebra, or areas of science, such as chemistry.  Bridges Decl. Ex. 5, ECF 22-5.  And with

respect to learning English, a former student said yeshiva students were "technically illiterate."

Bridges Decl. Ex. 5, ECF 22-5.

When compared to the civic skills and knowledge that are essential for an educated

citizenry (as discussed above), the average yeshiva education is sorely deficient.  Of particular

concern, most children lack an understanding of even the most fundamental concepts of

American government, structures, and processes.  "Democratic citizenship is all but impossible if

citizens fail to understand basic concepts such as separation of powers, federalism, individual rights, and the role of government." Campaign for the Civic Mission of Schools, *supra*, at 16. And without a working knowledge of critical disciplines such as history, geography, economics, math, or science, students are likely unable to understand or assess issues of public policy, critically analyze one-sided or false information, or intelligently engage with others who share differing political and social views. *See CFE*, 86 N.Y.2d at 307; *CFE*, 100 N.Y.2d at 893; *CFE*, 719 N.Y.S.2d at 475; Campaign for the Civic Mission of Schools, *supra*, at 16; Martha Nussbaum, *Not for Profit:  Why Democracy Needs the Humanities* 81 note 21(2010); Benjamin R. Barber, *Strong Democracy:  Participatory Democracy for a New Age* 178-98 (1984).

Against this backdrop, the Felder Amendment all but ensures that yeshiva students never receive the essential education to become thoughtful and capable citizens. As described in detail by Plaintiff's papers, the Amendment further limits the subjects required to be taught in elementary school, and for high school students, directs the state to consider whether the curriculum, taken as a whole, meets the sound basic education standard. *See* Notice of Mot. for Prelim. Inj. Ex. 1, at 12-14, ECF 18-1; Bridges Decl. Ex. 1, ECF 22-1 (Felder Amendment). By codifying the notion that a predominately religious education can satisfy the requirements of a sound basic education, yeshivas are given legal protection to maintain the status quo. Without incentive to alter their courses of instruction, yeshivas will likely continue to deprive their students of the civic education that is vital to our democratic system.

The effect of the Felder Amendment becomes even more troubling given the number of yeshiva-educated students it is likely to affect. According to Plaintiff's study, as of 2013, there were approximately 240,000 Hasidim across the New York metropolitan area and over 57,000 students in yeshiva schools. Moster Decl. Ex. 1, at 44, ECF 19-1. By 2030, the number will

16

grow considerably, and between 23 percent and 37 percent of Brooklyn's school-aged children will be Hasidic and up to 13 percent of all of New York City students.  Moster Decl. Ex. 1, at 44, ECF 19-1.  These numbers equate to nearly one-eighth of all New York City schoolchildren. Moster Decl. Ex. 1, at 44, ECF 19-1.

But the Amendment has far greater civic consequences than simply permitting yeshiva schools to deny thousands of students the ability to engage meaningfully as citizens.  Notably, Hasidim in New York have historically high voting rates, and communities are known to form powerful voting blocs.  For instance, in 2013, the New York Times reported that Hasidic Jews made up a prime voting bloc in areas of Borough Park, Williamsburg and Crown Heights in Brooklyn, and are "known to vote with near unanimity."  *See* Ford Fessenden and Josh Keller, *The Voting Blocs of New York City*, N.Y. Times, Sept., 2013, http://www.nytimes.com/ newsgraphics/2013/09/06/voting-blocs; *see also* Colby Hamilton, *Little-Known Hasidic Sect Emerges as Political Powerbroker in Mayor's Race* (Oct. 16, 2013), https://www.dnainfo. com/new-york/20131016/williamsburg/little-known-hasidic-sect-emerges-as-political-powerbroker-mayors-race/ (describing the effects of Brooklyn's Hasidic voting blocs on the 2013 New York primary election).  Worse yet, Hasidim in certain New York communities report voting without exercising independent decision making; according to one Hasidic man, "[w]e make a bloc vote.  Whatever they say, we vote.  It's not for us to decide.  The [supervising body] decides."  *See* Uriel Heilman, *The Hasidic Bloc Vote, Bernie and Hillary's Empire State of Mind and Other NY Campaign Notes*, Jewish Telegraphic Agency (Apr. 12, 2016), https://www.jta.org/2016/04/12/news-opinion/politics/the-hasidic-bloc-vote-bernie-and-hillarys-new-york-state-of-mind-and-other-notes-from-the-ny-primary-campaign.  As a result, to the

extent that yeshiva-educated students *do* engage in political activities, such as voting, they may be affecting the larger social and political world they are taught so little about.

Given the relatively high frequency of voting among Hasidim in New York, combined with the fact that Hasidim typically live within predominately homogenous and insulated communities, the imperative to provide the skills for capable citizenship arguably becomes greater.  For yeshiva-educated students, schools may provide their only opportunity to learn about American political systems and processes, to understand the important context of history and the diversified social and cultural environment in which they participate, or to comprehend the greater ramifications of their political actions.  Without adequate instruction in courses such as math, science, and economics, yeshiva students may not have the tools to analyze and thoughtfully confront pressing issues of global and domestic public policy, such as the climate, environment or healthcare.  And without exposure to the diverse political, social, and cultural viewpoints that create our pluralistic society, children may not learn to appreciate core civic values like tolerance of dissimilar worldviews and perspectives, equality, due process, and the rule of law, which are the foundation of a sustainable democracy.

In short, the Felder Amendment not only disregards the civic intent of *Pierce*, it ignores the civic purpose of New York's sound basic education mandate, and undermines the state's public initiative to promote and foster civic learning.  In concrete terms, the Felder Amendment may deny tens of thousands of yeshiva-educated students of the opportunity to learn the knowledge and tools to act as thoughtful and responsible civic participants within our culturally and politically diverse democratic system.

## CONCLUSION

*Amicus* does not advocate for state regulations that interfere with the teaching of religious texts or religious values in private schools.  Rather *amicus* advocates that yeshivas, like all

private schools, adhere to the basic civic preparation requirements of a sound basic education.

Because their students, like all students, must be in a position to contribute productively to the

maintenance of our democratic system.

For the foregoing reasons, *amicus* urges the Court to enjoin enforcement of the Felder

Amendment.

Dated:  New York, New York                     Respectfully submitted,
        November 9, 2018



Of Counsel:                                   By:  ___/s/ Andrew J. Ceresney_____
                                                   Andrew J. Ceresney
Jillian L. Trezza                                  aceresney@debevoise.com

                                              DEBEVOISE & PLIMPTON LLP
                                              919 Third Avenue
                                              New York, New York 10022
                                              Tel:  (212) 909-6947
                                              Fax:  (212) 909-6836

                                              *Counsel for Amicus Curiae the Center for*
                                              *Educational Equity*



cc:  All counsel of record, by ECF